**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

MARVELLE J. BALLENTINE,

  *Plaintiff,*

   v.      Case No. 1:26cv2331-RDA-IDD

KATIE HALL, individually;
NATIONAL CENTER FOR MISSING & EXPLOITED CHILDREN;
META PLATFORMS, INC.;
and JOHN/JANE DOES 1–6,

  *Defendants.*

## COMPLAINT

### DEMAND FOR JURY TRIAL

### PRELIMINARY STATEMENT

1. This case is about two letters and the lawyer who wrote them. On April 22, 2026, Katie Hall — Corporate Counsel of the National Center for Missing & Exploited Children, the organization this country trusts to track crimes against children — tied my name to "two CyberTipline reports." She chose the words. She signed both letters. She sent them. Each one opened by telling me it was answering a subpoena. No subpoena had been served. Not one. There was no process, no court order, and no obligation of any kind behind the words Hall put on that letterhead.

2. The CyberTipline exists to catch people who hurt children. Federal law requires companies to report to it. Law enforcement can be given what it holds. Everyone understands what it means when that name appears above a man's name. That is why those letters landed on me the way they did.

3.      I was not a defendant. I was the plaintiff — one man, without a lawyer, suing Meta Platforms, Inc. and others in the Middle District of Florida. Case No. 6:26-cv-00376-AGM-DCI. Case No. 6:26-cv-00286-AGM-DCI. I had asked one question in both: did anyone connected to the July 4, 2022 shutdown of my account send a CyberTipline report about me? I had noticed depositions for April 28, 29, and 30 to ask it under oath. One of those notices told Accenture, in writing, that its witness would have to answer that very question.

4.      On April 21, 2026, every defendant in both cases moved to shut the discovery down and stop the depositions. The letters came the next day. Each one carried the caption and case number of one of my lawsuits. Each one answered the exact question my depositions were set to ask — outside discovery, unsworn, with no one to cross-examine. And each one left out everything a man would need to test it: who reported, when, what number, which identifier, which platform, what came of it. The letters came to me alone. No court was copied. No lawyer was copied.

5.      Consider what was true on April 22. No subpoena had been served. No court had ordered Hall to do anything. I had not asked for an early answer, and I had not waived service. The motions filed the day before were undecided. The ruling dates the movants themselves demanded had not come. The depositions they were trying to stop had not happened. Nothing required Hall to send those letters that day. Nothing required Hall to send them at all.

6.      I had told NCMEC's Legal Department in writing that subpoenas were coming, and that I would serve them when the notice period ran. A notice is not a subpoena. Mail is not service. Hall is a lawyer who handles subpoenas, and she knows the difference. The brief Hall and NCMEC filed to end the action captioned Ballentine v. National Center for Missing & Exploited Children and Katie Hall, Case No. 1:26-cv-01341-MSN-WBP (E.D. Va.) (the "1341 Action")

2

states that NCMEC "did not await formal service of the subpoenas." She did not wait. She answered a subpoena that was never served.

7.     And Hall knew who she was writing to. Before those letters went out, she had either read the pleadings in the 286 Action or been handed what was in them. Those pleadings said, on their face, that I am a survivor of childhood sexual abuse. They said that putting my name next to the language of child exploitation had already hurt me. Hall is the lawyer for the clearinghouse this country built to track crimes against children. She knows what that name does to a man. She sent the letters anyway. Who told her to send them, and what was said before they went out, are answers kept in NCMEC's files and Meta's, not mine.

8.     I read the letters on April 28, 2026 — the day my first deposition was supposed to go forward, and did not. I understood what I was reading: that federal records now tied my name to the sexual exploitation of children, and that law enforcement could come for me. I was afraid of being arrested. I was afraid of being searched. I was afraid of being prosecuted. I believed that if I kept litigating, and kept asking about that report, those things would happen to me. My first thought was to dismiss both of my cases. In the days that followed, it took deliberate effort not to.

9.     I bring six counts. Counts I and II are for defamation — per se, and by implication — against Hall and NCMEC, for publishing each letter to third parties, including the employees of the mail service that opened, scanned, and filed them in the ordinary course of business. Count III is against Hall and NCMEC for intentional infliction of emotional distress; Hall did what she did knowing what she knew, and she did it as NCMEC's Corporate Counsel, on NCMEC's letterhead, from NCMEC's offices. Count IV is brought under the first clause of 42 U.S.C. § 1985(2), and Count V for common-law conspiracy under Virginia law, against Hall, NCMEC, Meta Platforms, Inc., and the Doe Defendants — against those who agreed the letters would go

3

out, and who prepared, approved, and transmitted them, to frighten me out of attending my own lawsuits and out of testifying freely, fully, and truthfully in them. Count VI is pleaded in the alternative under Virginia Code § 8.01-45, for the insulting words Hall directed to me.

## JURISDICTION AND VENUE

10. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and 1343(a)(1) because this action arises under 42 U.S.C. § 1985(2).

11. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over Plaintiff's claims for defamation, intentional infliction of emotional distress, common-law conspiracy, and insulting words because those claims arise from the same nucleus of operative fact — the preparation, approval, issuance, transmission, and publication of the April 22, 2026 letters — and form part of the same case or controversy.

12. This Court has independent subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) over Counts I, II, III, and VI, which are asserted only against Hall and NCMEC. Plaintiff is a citizen of the State of Florida. On information and belief, Defendant Hall is domiciled in, and therefore is a citizen of, a state other than Florida. Defendant NCMEC is a Virginia non-profit corporation with its principal place of business in Alexandria, Virginia, and is a citizen of Virginia. Complete diversity of citizenship exists between Plaintiff and each Defendant against whom Counts I, II, III, and VI are asserted. The amount in controversy exceeds $75,000, exclusive of interest and costs.

13. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims occurred in this district. The April 22, 2026 letters were prepared or approved, signed, and issued by Hall from NCMEC's office in Alexandria, Virginia,

within the Alexandria Division of this district, and were transmitted to Plaintiff's commercial mail-receiving address in Alexandria, Virginia, where they were opened and processed.

14.    This Court has specific personal jurisdiction over Defendant Hall under Virginia Code § 8.01-328.1(A)(3). Hall performed the challenged acts in Virginia: she prepared or approved, signed, issued, and caused the transmission of the April 22, 2026 letters from NCMEC's Alexandria headquarters. The first third-party publication alleged in this Complaint occurred in Alexandria when the commercial mail-receiving agency opened, reviewed, and scanned the letters. Each claim against Hall arises directly from her Virginia conduct.

15.    This Court has general personal jurisdiction over Defendant NCMEC, a Virginia corporation with its principal place of business in Alexandria, Virginia. This Court also has specific personal jurisdiction over NCMEC under Virginia Code § 8.01-328.1(A)(3) because the April 22, 2026 letters were prepared or approved, signed, and issued from NCMEC's Alexandria headquarters, and each claim against NCMEC arises from that Virginia conduct.

16.    This Court has specific personal jurisdiction over Defendant Meta Platforms, Inc. under Virginia Code § 8.01-328.1(A)(3) and the conspiracy-based attribution of forum contacts. As alleged in Sections N through Q, a conspiracy existed; Meta knowingly participated through one or more authorized representatives or intermediaries; and Defendants NCMEC and Hall committed the Virginia acts alleged in this Complaint in furtherance of that conspiracy. Meta received the April 9, 2026 materials directed to NCMEC's Legal Department in Alexandria, Virginia, and the understanding alleged in Section N contemplated issuance of the case-specific correspondence by Hall at that Virginia office. Plaintiff's claim against Meta arises directly from those Virginia acts.

5

17.     The exercise of personal jurisdiction over each Defendant comports with the Due Process Clause of the Fourteenth Amendment.

**PARTIES**

18.     Plaintiff Marvelle J. Ballentine, also known as Jay Ballentine, is an adult citizen of the State of Florida. At all times relevant to this Complaint, Plaintiff maintained a mailing address at 1520 Belle View Blvd, Ste. #5847, Alexandria, Virginia 22307, through a commercial mail-receiving agency authorized to receive and process mail on Plaintiff's behalf.

19.     Defendant National Center for Missing & Exploited Children ("NCMEC") is a Virginia non-profit corporation with its principal place of business at 333 John Carlyle Street, Suite 125, Alexandria, Virginia 22314. NCMEC operates the CyberTipline under federal authorization in connection with 18 U.S.C. § 2258A. At all times relevant to this Complaint, NCMEC employed Defendant Katie Hall as its Corporate Counsel, with responsibility for legal correspondence issued by NCMEC in response to claimed legal process. NCMEC is sued for its own conduct, undertaken through Hall and one or more additional personnel, and vicariously for the conduct of Hall committed within the scope of her employment.

20.     Defendant Katie Hall is an individual who served as Corporate Counsel of NCMEC at its principal place of business at 333 John Carlyle Street, Suite 125, Alexandria, Virginia 22314, at all times relevant to this Complaint. On information and belief, Hall is domiciled in, and therefore is a citizen of, a state other than Florida. Hall prepared or approved, signed, issued, and caused the transmission of the April 22, 2026 letters. Hall is sued individually for her own tortious conduct.

21.     Defendant Meta Platforms, Inc. ("Meta") is a Delaware corporation with its principal place of business in Menlo Park, California. Meta was a defendant in both the 376 Action

and the 286 Action at all times relevant to this Complaint, and is an electronic service provider subject to the reporting duties of 18 U.S.C. § 2258A.

22.    Defendants John/Jane Does 1–6 are presently unidentified persons who participated in the communications, authorization, approval, preparation, or transmission alleged in this Complaint. Their respective roles include: the Meta representative or representatives who communicated with NCMEC concerning Plaintiff, the identifiers, the intended subpoenas, or the two federal actions; any Accenture representative who knowingly joined or implemented the understanding alleged in this Complaint; the NCMEC personnel who approved the issuance of the April 22, 2026 letters; and any intermediary — including counsel or other agents acting on behalf of Meta, Accenture, or NCMEC — through whom the communications alleged in this Complaint occurred. The identities of the Doe Defendants are maintained within the records of Meta, Accenture, NCMEC, and their respective representatives. Plaintiff will seek leave to amend to identify the Doe Defendants when their identities are ascertained.

### SCOPE OF ALLEGATIONS

23.    No liability asserted in this Complaint is predicated on the filing of any motion, brief, or other paper in any court. Court filings identified in this Complaint are alleged solely as facts establishing timing, notice, knowledge, coordination, and admissions. The claims do not challenge NCMEC's receipt, maintenance, or lawful referral of CyberTipline reports. They challenge the alleged extra-judicial agreement and the preparation, approval, issuance, transmission, and publication of external legal correspondence that falsely invoked compulsory process and was used for the litigation-directed purposes alleged below. No claim against Meta Platforms, Inc. seeks liability for the July 4, 2022 account-level enforcement, any content-related decision, any failure to restore Plaintiff's account, or any treatment of third-party content. Those

matters are alleged solely to establish the subject matter of the pending federal actions, Defendants' knowledge, Meta's interest in the CyberTipline report-existence question, and the testimony Defendants sought to deter.

## FACTS

### A.    The Federal Proceedings and Plaintiff's Role as Party and Prospective Witness

24.    Plaintiff filed the 286 Action on February 9, 2026, and the 376 Action on February 17, 2026. Both actions were pending in a court of the United States at all times relevant to this Complaint.

25.    The defendants in the 376 Action included Meta, Accenture, TaskUs, Inc., and Genpact Limited. Accenture is a limited liability partnership that provides platform policy enforcement services to Meta. The defendants in the 286 Action included Meta, Devin S. Anderson, and Christopher W. Keegan. Anderson and Keegan were represented by Kirkland & Ellis LLP ("Kirkland"). Accenture, Anderson, Keegan, TaskUs, Inc., Genpact Limited, Kirkland, Orrick, Herrington & Sutcliffe LLP ("Orrick"), Diana M. Fassbender, and Mariana Chapleau are not defendants in this action. Their conduct is alleged only insofar as it establishes the chronology, notice, knowledge, or conduct of the Defendants, including the Doe Defendants.

26.    Both actions arise from Meta's July 4, 2022 issuance of an account-level enforcement notice that interrupted Plaintiff's ability to perform third-party contracts through Plaintiff's Facebook account.

27.    Plaintiff proceeded pro se in both actions. Every act of prosecution — discovery, deposition examination, briefing, and appearance — depended on Plaintiff's personal capacity and participation.

8

28.    Plaintiff was a prospective witness in both actions concerning his account history, the July 4, 2022 enforcement event, the absence of any law-enforcement contact with Plaintiff, and his damages. Plaintiff expected to testify under oath at deposition and at trial concerning those subjects.

29.    The dockets of the 376 Action and the 286 Action were publicly accessible through the federal Public Access to Court Electronic Records system.

**B.    The Contested CyberTipline Question**

30.    Whether Meta or any person acting in connection with the July 4, 2022 account-enforcement event transmitted a CyberTipline report under 18 U.S.C. § 2258A concerning Plaintiff or his account identifiers has been contested since October 2025.

31.    Before April 22, 2026, no CyberTipline report had been identified, produced, or attributed to any provider, in any forum, in connection with Plaintiff.

32.    Plaintiff's first substantive act in the 376 Action was a motion for leave to serve a single early request for admission directed to whether Meta filed a CyberTipline report regarding Plaintiff's account. The court denied the motion.

33.    From that denial forward, the defendants in the 376 Action knew that the existence or non-existence of a CyberTipline report was the specific target of Plaintiff's contemplated discovery.

34.    The operative complaint in the 376 Action alleged that Meta filed no CyberTipline report, and its prayer sought a declaration that no CyberTipline report was filed regarding the July 4, 2022 enforcement event.

35.    In its motion to dismiss filed April 9, 2026 in the 376 Action (ECF No. 85), Meta described Plaintiff's allegation that a CyberTipline report had been submitted and disseminated

9

as "hypothetical (and elsewhere contradicted)," and cited as the contradiction Plaintiff's allegation that "Meta filed no CyberTipline report."

36. In the 286 Action, the existence or non-existence of a CyberTipline report bore on claims then pending, including the falsity and factual basis of statements challenged in that action.

### C. Plaintiff's Disclosed Survivor Status

37. On September 9, 2025, Plaintiff filed a complaint in the action captioned Ballentine v. Meta Platforms, Inc., et al., Case No. 3:25-cv-07671-CRB (N.D. Cal.) (the "California Action").

38. That complaint contained a single footnote. The footnote states: "As a CSA survivor, Plaintiff gratefully acknowledges the unwavering support of his wife, whose steady presence made the psychological recovery, and subsequent preparation of this Complaint possible. He further acknowledges his children, especially his eldest, who endured his distance during the preparation of this filing after once celebrating his NRVTA graduation with pride. This work now returns to them, just as their father and husband does."

39. The footnote states that Plaintiff is a survivor of childhood sexual abuse and describes the psychological recovery that made the preparation of the complaint possible.

40. Before April 22, 2026, Plaintiff had disclosed that he is a survivor of childhood sexual abuse; had described having undergone psychological recovery; and retained the functional capacity to prepare and to prosecute his pending actions.

41. The publicly filed pleadings in the 286 Action disclosed on their face that Plaintiff is a survivor of childhood sexual abuse, and alleged that the placement of Plaintiff's name in proximity to child-sexual-exploitation terminology had already caused Plaintiff emotional injury.

10

42. Meta, Anderson, and Keegan, through their respective counsel, received and litigated against the 286 Action pleadings containing those disclosures before April 21, 2026.

43. Kirkland attorneys appearing for Accenture in the 376 Action also represented Anderson and Keegan in the 286 Action and therefore possessed the 286 Action pleadings before April 21, 2026. Accenture's authorized representatives were aware of the disclosures before April 21, 2026.

### D.    Meta's Reporting Relationship with NCMEC

44. Meta is an electronic service provider subject to the reporting duties of 18 U.S.C. § 2258A. Meta regularly submits CyberTipline reports to NCMEC through an established reporting system and has an existing institutional channel through which it communicates with NCMEC concerning such reports.

### E.    Counsel Operating Across Both Actions

45. Fassbender, an attorney at Orrick, was counsel of record for Meta in the 286 Action and for Meta and Genpact Limited in the 376 Action.

46. Chapleau and Anderson, attorneys at Kirkland, were counsel of record for Accenture in the 376 Action. Kirkland, through Chapleau, also represented Anderson and Keegan in the 286 Action.

47. Anderson simultaneously occupied two roles across the two actions: an individual defendant and noticed deposition witness in the 286 Action, and counsel of record for Accenture in the 376 Action.

### F.    The Deposition Program

48.     On April 7, 2026, Plaintiff served a Rule 30(b)(6) deposition notice on Accenture in the 376 Action, noticing a two-day examination for April 29 and April 30, 2026. The notice was served on Chapleau and Anderson.

49.     Matter for Examination No. 5 of the Rule 30(b)(6) notice is captioned "CyberTipline Reporting and Reportability Status" and encompasses "whether any CyberTipline Report was Transmitted to NCMEC in connection with the Account-Level Enforcement Event."

50.     On April 7, 2026, Plaintiff noticed the deposition of Anderson in the 286 Action for April 28, 2026, and re-served the notice on April 10, 2026 with logistical details.

51.     Plaintiff retained a court reporter and a videographer for the noticed depositions.

### G.     The April 9, 2026 Transmissions

52.     On April 9, 2026, Plaintiff transmitted to NCMEC's Legal Department a letter captioned "Advanced Notice of Intended Subpoenas – Two Separate Matters." The letter identified the 376 Action and the 286 Action by caption and case number, enclosed the draft subpoenas, and stated that formal service, with clerk-signed subpoenas, would occur after the notice period had run.

53.     Schedule A to each draft subpoena commanded a single item: a document sufficient to show whether NCMEC received or maintains any CyberTipline report concerning (1) Marvelle J. Ballentine, (2) Jay Ballentine, and/or (3) the account-level identifier jaychizza@icloud.com. Schedule A expressly excluded the contents of any report.

54.     The transmission to NCMEC was a courtesy copy of a notice of intended subpoenas. It imposed no compulsory obligation on NCMEC. Plaintiff did not request or authorize a response before formal service, did not waive service, and did not authorize NCMEC or Hall to treat the advance notice as a served subpoena.

55.    On April 9, 2026, Plaintiff served the same materials, under Federal Rule of Civil Procedure 45(a)(4), on counsel for the parties in both actions, including Orrick on behalf of Meta and Kirkland on behalf of Accenture.

56.    As of April 9, 2026: NCMEC had received the advance notice and its enclosures; counsel for Meta and counsel for Accenture had received identical materials on behalf of their clients; and the materials identified the same two federal actions, the same three identifiers, and the same discovery objective. Each recipient knew from the face of the materials that formal service on NCMEC was announced to occur only after the notice period had run.

57.    Hall possessed or reviewed the case-specific materials no later than her approval, signature, and authorization of the April 22, 2026 letters.

58.    Before preparing the two case-keyed letters, Hall either reviewed the publicly filed pleadings in the 286 Action or received from one or more participants in the two actions case-specific materials reproducing or describing those pleadings. Those materials disclosed that Plaintiff is a survivor of childhood sexual abuse and described the psychological recovery that made the preparation of the California Action possible. The source, transmission, and contents of the materials Hall reviewed or received are maintained within Defendants' records and are not accessible to Plaintiff without discovery.

59.    Hall, as Corporate Counsel of the federally designated clearinghouse for CyberTipline reporting, knew the ordinary criminal and law-enforcement significance of associating a named individual with CyberTipline reports.

60.    On the same day, April 9, 2026, Meta filed a motion to dismiss and a motion to transfer in the 376 Action.

**H.    The April 21, 2026 Filings**

13

61.     On April 21, 2026, Meta, Anderson, and Keegan filed a Joint Motion to Stay Discovery and Hold Rule 26(f) Requirements in Abeyance in the 286 Action (ECF No. 49). Chapleau signed the motion on behalf of Anderson and Keegan; Fassbender signed on behalf of Meta.

62.     On April 21, 2026, Anderson and Keegan filed a Time-Sensitive Motion for Protective Order in the 286 Action (ECF No. 50), seeking to prevent the April 28, 2026 deposition of Anderson and requesting a ruling by April 24, 2026. The motion stated: "This motion must be decided by April 24 because Plaintiff noticed Anderson's deposition on April 28, 2026."

63.     On April 21, 2026, Meta, Accenture, TaskUs, Inc., and Genpact Limited filed a Joint Motion to Stay Discovery in the 376 Action (ECF No. 92). Fassbender signed and filed the motion on behalf of Meta and Genpact Limited; Chapleau signed with permission on behalf of Accenture. The motion recited that Plaintiff had sought leave to serve a Request for Admission relating to "whether Meta filed a CyberTipline report regarding Plaintiff's account." The motion further stated that Plaintiff had served "'advance notices' and actual notices of specific discovery that Plaintiff intends to seek such as Rule 30(b)(6) depositions and third-party subpoenas."

64.     On April 21, 2026, Accenture filed a Time-Sensitive Motion for Protective Order in the 376 Action (ECF No. 93), seeking to prevent the April 29–30, 2026 Rule 30(b)(6) deposition and requesting a ruling by April 27, 2026. Accenture attached the deposition notice, including Matter for Examination No. 5, as Exhibit 1 to that motion. The motion stated: "This time-sensitive motion must be decided by April 27 because Plaintiff noticed Accenture's deposition for April 29-30."

65.    The relief sought by the April 21, 2026 motions encompassed the Anderson deposition, the Accenture Rule 30(b)(6) deposition, and Plaintiff's contemplated third-party discovery, and was sought before either court had ruled on any of the motions.

**I.    The April 22, 2026 Letters: Issuance and the Absent Subpoena**

66.    On April 22, 2026 — one day after the filings described in Section H, and thirteen days into the notice period NCMEC had been told would precede service — Hall issued two letters on NCMEC letterhead, each keyed by caption and case number to one of the two federal actions. One letter references on its face Case No. 6:26-cv-00376-AGM-DCI; the other references on its face Case No. 6:26-cv-00286-AGM-DCI. Hall's issuance of two letters, each keyed to a separate action, reflects the processing of two separate matters keyed to two specific case captions and case numbers.

67.    Each of the two letters is identical in substantive text. References in this Complaint to "the April 22, 2026 letter" refer to the content shared by each of the two letters. Each letter identified Plaintiff by the names "Marvelle J. Ballentine" and "Jay Ballentine" and by the email address jaychizza@icloud.com.

68.    The April 22, 2026 letter stated, in its opening sentence: "In response to your subpoena issued April 9, 2026, the National Center for Missing & Exploited Children ('NCMEC') provides its written responses as detailed below."

69.    No subpoena had been served on NCMEC in connection with Plaintiff. No process server had delivered a subpoena to NCMEC. No subpoena return, proof of service, certificate of service, or process-server affidavit existed. No court order required Hall or NCMEC to respond. The announced notice period had not run.

15

70.     When the letters issued, none of the April 21, 2026 motions had been decided. Neither court had ruled on any motion to stay discovery or any motion for protective order. The ruling dates the movants had requested in their motions for protective order — April 24, 2026 in the 286 Action and April 27, 2026 in the 376 Action — had not arrived.

71.     Hall did not await formal service of any subpoena before issuing the April 22, 2026 letters. Hall did not await adjudication of the pending motions.

72.     Each of the requested ruling dates and each of the noticed depositions fell after April 22, 2026. The ruling date requested in the 286 Action fell two days after the letters issued, and the ruling date requested in the 376 Action fell five days after the letters issued. The Anderson deposition was noticed for April 28, 2026, six days after the letters issued. The Accenture Rule 30(b)(6) deposition was noticed for April 29 and 30, 2026, seven and eight days after the letters issued. No rule, order, or obligation required Hall to issue the letters before those dates.

73.     On April 27, 2026, the magistrate judge in the 286 Action granted the motion for protective order and temporarily stayed discovery. On April 30, 2026, the magistrate judge in the 376 Action entered a report recommending that the joint motion to stay discovery be granted (ECF No. 103). On May 1, 2026, the magistrate judge in the 376 Action granted Accenture's motion for protective order and ordered: "Discovery is temporarily stayed pending resolution of the motion to stay discovery" (ECF No. 104).

74.     The April 22, 2026 letter did not produce the document that Schedule A described. It substituted an assertion, stating: "NCMEC has received two (2) CyberTipline reports concerning (1) Marvelle J. Ballentine, (2) Jay Ballentine, and/or (3) the account-level identifier jaychizza@icloud.com between July 1, 2022 and the present."

75.    The three identifiers stated in the April 22, 2026 letter were quoted from Plaintiff's own April 9, 2026 notice.

76.    Each letter was addressed to Plaintiff alone, at Plaintiff's commercial mail-receiving address in Alexandria, Virginia, and contained no notation showing that it was copied to any court or counsel of record. Neither letter was filed in either action.

77.    Neither of the April 22, 2026 letters was a CyberTipline report. Neither letter was a referral or disclosure to any law-enforcement agency. Neither letter was made under, or implemented, any reporting, preservation, referral, or disclosure function described in 18 U.S.C. §§ 2258A, 2258B, or 2258C. Each letter was voluntary correspondence, issued in the absence of any served subpoena, court order, or other legal obligation. The challenged conduct did not arise from the performance of any responsibility or function described in 18 U.S.C. § 2258D(a), 18 U.S.C. §§ 2258A or 2258C, or 34 U.S.C. § 11293, and was not undertaken as part of any effort to identify a child victim. In the alternative, the conduct alleged was intentional, was undertaken with actual malice and reckless disregard of a substantial risk of injury without legal justification, and served a purpose unrelated to any responsibility or function identified in 18 U.S.C. § 2258D(a).

78.    Hall was NCMEC's Corporate Counsel when she drafted, signed, and transmitted the April 22, 2026 letters. Hall signed both letters in the course of her work at NCMEC's Alexandria, Virginia headquarters.

79.    As Corporate Counsel, Hall was responsible for legal correspondence issued by NCMEC in response to claimed legal process.

80.    On information and belief, NCMEC maintains ordinary legal-intake records sufficient to reflect whether subpoenas have been served on NCMEC.

17

81.    On information and belief, Hall reviewed or had access to NCMEC's ordinary legal-intake records sufficient to determine, before issuance, that no subpoena had been served on NCMEC.

82.    Hall's signature appears on each of the April 22, 2026 letters. Hall is identified on each of the April 22, 2026 letters as the sender.

83.    Hall controlled or approved the wording of the April 22, 2026 letters. Hall selected the language characterizing the April 22, 2026 letters as a response to a subpoena. Hall authorized the letters' transmission.

84.    Hall nevertheless drafted and transmitted the April 22, 2026 letters.

85.    Hall reviewed or had access to the docket of Case No. 6:26-cv-00376-AGM-DCI and the docket of Case No. 6:26-cv-00286-AGM-DCI before drafting, signing, and transmitting the April 22, 2026 letters.

86.    Hall had reason to know that the docket of Case No. 6:26-cv-00376-AGM-DCI and the docket of Case No. 6:26-cv-00286-AGM-DCI each contained publicly filed claims brought by Plaintiff, and that the docket of Case No. 6:26-cv-00286-AGM-DCI contained publicly filed claims predicated on the linkage of Plaintiff's name to child-sexual-exploitation terminology.

87.    Hall has not withdrawn, corrected, or retracted either letter. Hall has instead affirmatively defended the letters as accurate and proper.

**J.    The April 22, 2026 Letters: Content Defects**

88.    The April 22, 2026 letter did not identify any report number, report date, or reporting electronic service provider.

18

89.    The April 22, 2026 letter did not state that Meta Platforms, Inc. submitted either report, that either report concerned Plaintiff's Facebook account, or that either report concerned Meta's July 4, 2022 contract interference.

90.    The April 22, 2026 letter linked Plaintiff's three identifiers in the disjunctive using "and/or" without establishing that any single identifier corresponded to either report.

91.    The April 22, 2026 letter did not include a custodian-of-records declaration or a certification under Federal Rule of Evidence 902(11) or 902(12).

92.    The name "Jay Ballentine," standing alone, is not uniquely identifying. The April 22, 2026 letter did not state that NCMEC used any disambiguation process to determine that any CyberTipline report associated with the name "Jay Ballentine" concerned Plaintiff rather than another person using the same or similar name.

93.    The April 22, 2026 letter did not state whether the identifiers "Marvelle J. Ballentine," "Jay Ballentine," or jaychizza@icloud.com appeared in any CyberTipline report, appeared in any electronic-service-provider submission, appeared in NCMEC's internal records, or were derived from any source independent of the April 22, 2026 letter.

94.    The April 22, 2026 letter did not state that NCMEC had determined that "Marvelle J. Ballentine," "Jay Ballentine," and jaychizza@icloud.com referred to the same person.

### K.    Statutory Imputation and Defamatory Meaning

95.    Under 18 U.S.C. § 2258A, an electronic service provider must report to NCMEC's CyberTipline after obtaining actual knowledge of facts or circumstances from which there is an apparent violation of specified federal child-exploitation statutes. The CyberTipline also receives reports from other sources concerning suspected child exploitation.

96.     The enumerated statutes referenced in 18 U.S.C. § 2258A include 18 U.S.C. § 2251 (sexual exploitation of children), § 2251A (selling or buying of children), § 2252 (certain activities relating to material involving the sexual exploitation of minors), § 2252A (certain activities relating to material constituting or containing child pornography), and § 2422(b) (coercion and enticement of minors).

97.     In the context alleged, a reader of the April 22, 2026 letter would understand the statement that NCMEC had received two CyberTipline reports "concerning" Plaintiff's full legal name and identifiers to convey that NCMEC had received two reports associating Plaintiff personally with suspected child-exploitation conduct and that the reported matter could be made available to law enforcement.

98.     The April 22, 2026 letter, by linking Plaintiff's full legal name to two CyberTipline reports, imputes to Plaintiff conduct constituting offenses involving moral turpitude for which Plaintiff, if the imputation were true, could be indicted and punished.

99.     The imputation conveyed by each of the two April 22, 2026 letters is false. Plaintiff has not engaged in conduct constituting, or reasonably appearing to constitute, a violation of any statute enumerated in 18 U.S.C. § 2258A.

**L.      Transmission, Publication, and Continuing Exposure**

100.    Each of the two April 22, 2026 letters was transmitted to Plaintiff's commercial mail-receiving agency address at 1520 Belle View Blvd, Ste. #5847, Alexandria, Virginia 22307.

101.    The address is operated by a commercial mail-receiving agency. In connection with the creation and maintenance of the mailbox account, Plaintiff was required to provide identifying information, including Plaintiff's full legal name and photographic identification. USPS Form

1583 authorizing the commercial mail-receiving agency to receive and process mail on Plaintiff's behalf was on file.

102. The commercial mail-receiving agency maintains a mail-management system. The mail-management system associates incoming mail, scanned mail images, account records, Plaintiff's verified identity, Plaintiff's full legal name, and Plaintiff's photographic identification with Plaintiff's mailbox account.

103. The commercial mail-receiving agency opens incoming envelopes, scans contents, and uploads digital images to the mail-management system in the ordinary course of business.

104. On or about April 28, 2026, a commercial mail-receiving agency employee opened the envelope containing the two letters, necessarily reviewed the contents of each letter to perform the agency's scan service, scanned each letter, and uploaded a digital reproduction of each letter to the mail-management system.

105. The employee who reviewed, scanned, and uploaded each letter was an independent commercial mail-processing employee authorized only to perform routine mail-processing services. The employee had no role in Plaintiff's litigation or legal affairs and had no attorney-client, fiduciary, or personal relationship with Plaintiff.

106. The employee viewed, handled, and scanned the contents of each letter in the ordinary course of the agency's commercial mail-processing business.

107. Hall, as the Corporate Counsel who selected the transmission channel, knew or had reason to know that the address was operated by a commercial mail-receiving agency and that delivery through that channel necessarily required third-party employees to open, review, scan, digitize, and process the contents before Plaintiff could access them.

21

108. Hall directed transmission of the letters to the commercial mail-receiving agency address rather than to the clerk of court in either Middle District of Florida action, to any party's counsel of record, or to a secure transmission channel.

109. Following the scanning and upload, the commercial mail-receiving agency forwarded the physical envelope containing both letters to Plaintiff's designated local mailbox in the ordinary course of its mail-forwarding operations.

110. The administrator of both the commercial mail-receiving agency account and the local mailbox account opened the forwarded envelope and read both letters in the ordinary course of her administrative duties.

111. The administrator who later opened and read the forwarded letters was a person distinct from Plaintiff and did so while administering the two mailbox accounts. That additional reading was not necessary to establish the first publication in Virginia, which had already occurred when the commercial mail-receiving agency employee reviewed and scanned the letters.

112. The digital reproductions of the April 22, 2026 letters remain stored in the commercial mail-receiving agency's mail-management system outside Plaintiff's possession or control.

113. The mail-management system associates the digital reproductions of the April 22, 2026 letters with Plaintiff's verified identity, Plaintiff's full legal name, Plaintiff's mailbox account, and Plaintiff's photographic identification.

114. On information and belief, administrators, employees, contractors, or other persons with system-level access to the commercial mail-receiving agency's mail-management system can access account records and scanned mail images associated with Plaintiff's mailbox account.

22

115. Plaintiff does not know the identities of all persons with administrative or system-level access to the commercial mail-receiving agency's mail-management system.

116. Plaintiff does not control the commercial mail-receiving agency's mail-management system, including access permissions, administrative access, audit logs, retention practices, or internal dissemination of scanned mail images associated with Plaintiff's mailbox account.

## M.    Receipt and Reading

117. On April 27, 2026, the magistrate judge in the 286 Action granted the motion for protective order and temporarily stayed discovery. The April 28, 2026 deposition of Anderson did not proceed.

118. On April 28, 2026, Plaintiff's commercial mail-receiving agency opened and scanned the letters, making digital images accessible to Plaintiff through the mail-management system. Plaintiff opened, viewed, and read both letters that day — the noticed date of the Anderson deposition, and the eve of the noticed Accenture Rule 30(b)(6) deposition.

119. Plaintiff accessed and read the letters while physically present in Osceola County, Florida, and sustained the emotional and functional consequences of the letters there.

## N.    The Agreement

120. Between April 9 and April 22, 2026, Meta, acting through one or more authorized representatives or intermediaries, and Hall, acting individually and as Corporate Counsel of Defendant NCMEC, reached an understanding that Hall would issue correspondence asserting the existence of CyberTipline reports associated with one or more of Plaintiff's identifiers before service of the intended subpoenas and while motions directed at the same discovery remained pending. This allegation rests on the coordinated, case-specific sequence pleaded in the numbered

23

facts set forth below in this Section, including the absence of any compulsory obligation, the timing of the two letters, and their precise substitution of a source-free assertion for imminent sworn examination. On information and belief, one or more Doe Defendants participated in or implemented the understanding.

121.    The understanding alleged in the preceding paragraph is supported by the following facts, each pleaded above and incorporated here.

122.    First: as of April 9, 2026, NCMEC and counsel for Meta and Accenture had received identical materials identifying the same two federal actions, the same three identifiers, and the same discovery objective.

123.    Second: the April 21, 2026 motions were directed at the same discovery the April 9, 2026 materials described, and the joint motion filed in the 376 Action expressly identified Plaintiff's advance notices of intended subpoenas and Plaintiff's CyberTipline discovery.

124.    Third: the depositions covering the report-existence question were imminent, noticed for April 28, April 29, and April 30, 2026.

125.    Fourth: Hall and NCMEC were under no compulsory obligation of any kind. No subpoena had been served, and no court order existed.

126.    Fifth: one day after the motions were filed, Hall issued not one generalized communication but two separate instruments, each bearing the caption and case number of one of the two actions.

127.    Sixth: Hall issued the letters before expiration of the notice period that Plaintiff had stated would precede formal service.

24

128. Seventh: the letters stated the assertion that reports exist while omitting the reporting provider, report dates, report numbers, matched identifier, platform, account connection, and disposition.

129. Eighth: the letters supplied, outside the discovery process, an unsworn and source-free assertion concerning the precise subject scheduled for sworn examination, without exposing Meta, Accenture, NCMEC, or any witness to examination concerning the source, meaning, or basis of that assertion.

130. Ninth: Hall issued the letters while the April 21, 2026 motions remained pending, and before any court had determined whether the discovery those motions targeted would proceed.

131. The assertion supplied by the April 22, 2026 letters purported to answer the same report-existence question identified in Matter for Examination No. 5 of Accenture's noticed Rule 30(b)(6) deposition without requiring Accenture to designate a witness, testify under oath, disclose its own knowledge, or submit to examination concerning the source and basis of the assertion supplied by NCMEC.

132. The identities of all persons who participated in any communications between or among Meta, Accenture, NCMEC, and their respective representatives concerning Plaintiff, the identifiers, the reports, the subpoenas, or the two federal actions — and the media and contents of those communications — are maintained within the records of Meta, Accenture, NCMEC, and their respective representatives, and are not accessible to Plaintiff without discovery.

133. Hall knowingly joined and implemented the understanding by signing the April 22, 2026 letters and, on information and belief, preparing or approving their wording and authorizing their transmission.

134. On information and belief, NCMEC, acting through Hall and one or more additional personnel who approved the issuance of the April 22, 2026 letters, knowingly joined and implemented the understanding.

**O.    Defendants' Subsequent Statements Concerning the Letters and Discovery**

135. Plaintiff commenced the 1341 Action on May 19, 2026, asserting claims arising from the April 22, 2026 letters.

136. On June 16, 2026, NCMEC and Hall jointly moved to dismiss the complaint in the 1341 Action. The memorandum filed in support of that motion (1341 Action, ECF No. 5) stated that NCMEC "did not await formal service of the subpoenas."

137. As of July 15, 2026, Plaintiff had served no interrogatory, no request for production, no request for admission, and no deposition notice in the 1341 Action. No discovery response was due from any party. The only discovery-related activity pending in the 1341 Action was planning under Federal Rule of Civil Procedure 26(f).

138. On July 15, 2026, NCMEC and Hall jointly moved to stay pre-answer discovery and Rule 26 obligations in the 1341 Action (1341 Action, ECF No. 11).

139. Among the grounds stated in the motion was the following: NCMEC "has reason to be concerned that information provided in discovery in this matter could give rise to further litigation from Mr. Ballentine."

140. The motion was accompanied by no declaration or affidavit. It identified no specific discovery request and no particularized burden associated with responding to any request.

141. Plaintiff filed an opposition to the motion on July 16, 2026. By order dated July 17, 2026, the Court granted the motion and stayed discovery pending resolution of Defendants' motion to dismiss. (1341 Action, ECF Nos. 13, 15).

142. Plaintiff thereafter voluntarily dismissed the 1341 Action without prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(i).

**P.      The Objective and the Means of Intimidation**

143. The purpose of the understanding was to deter Plaintiff, by intimidation, from continuing to attend the 376 Action and the 286 Action as a party, and from testifying freely, fully, and truthfully as a prospective witness in those pending federal proceedings, including concerning the CyberTipline-reporting question.

144. The intimidation was directed both at Plaintiff's continued attendance as a party in the two pending federal actions and at Plaintiff's own prospective sworn testimony concerning his account, the July 4, 2022 enforcement event, the absence of any law-enforcement contact with Plaintiff, and his damages.

145. Defendants knew that Plaintiff was pro se; that the noticed depositions depended on Plaintiff's personal preparation and examination; that the CyberTipline issue was central to the noticed examinations; and that Plaintiff was a prospective witness concerning his account, the enforcement event, and his damages.

146. The letters bore the letterhead of the federally designated clearinghouse for CyberTipline reporting; carried the signature of its Corporate Counsel; invoked and purported to respond to compulsory legal process even though no subpoena had been served; associated Plaintiff's full legal name, alternate name, and email identifier with CyberTipline reports; omitted the reporting provider, report dates, report numbers, matched identifier, platform, account

connection, and disposition; were keyed to the two federal actions by caption and case number; were issued while the depositions remained imminent and the protective motions remained pending; and were addressed to Plaintiff alone.

147.    The letters were reasonably understood to communicate that NCMEC possessed reports generated in connection with apparent violations of federal child-exploitation statutes, associating one or more of Plaintiff's identifiers with the reported matter, and that those reports could be available to law enforcement.

148.    Plaintiff understood the letters to mean that federal reporting records connected his identity to suspected child-exploitation conduct and that law enforcement could treat him as a subject of investigation.

149.    Defendants intended that fear of investigation, arrest, or prosecution cause Plaintiff to dismiss or withdraw from the two federal actions and thereby deter Plaintiff, as a party, from continuing to attend those proceedings, and deter Plaintiff, as a prospective witness, from testifying freely, fully, and truthfully. The abandonment of the contemplated CyberTipline discovery and the impairment of Plaintiff's preparation were intended and foreseeable consequences of that deterrence. Defendants' intent is alleged generally and rests on the facts pleaded in this Complaint.

### Q.    Overt Acts

150.    In furtherance of the understanding, Hall signed each of the two April 22, 2026 letters, and, on information and belief, prepared or approved their wording and authorized their transmission.

151.    In furtherance of the understanding, Hall issued and caused the mailing of the two case-keyed letters to Plaintiff.

152.    The letters were issued and mailed before service of any subpoena, before the announced notice period had run, and before adjudication of the April 21, 2026 motions.

153.    In furtherance of the understanding, NCMEC, acting through Hall and one or more additional personnel, approved the issuance of the two April 22, 2026 letters and authorized the use of NCMEC's name, letterhead, and institutional identity in each letter.

### R.    Injury

154.    Plaintiff's injury began on April 28, 2026, upon reading the two letters. Upon reading the letters, Plaintiff vomited and wept.

155.    Plaintiff understood the letters to mean that federal reporting records connected his identity to suspected child-exploitation conduct and that law enforcement could treat him as a subject of investigation. Plaintiff, who has engaged in no conduct constituting or appearing to constitute a violation of any statute enumerated in 18 U.S.C. § 2258A, lived in acute fear of imminent governmental investigation, arrest, search, and prosecution, and believed that continuing the two actions and pressing the CyberTipline issue could expose him to those consequences. That fear persisted in acute form in the days following April 28, 2026.

156.    Plaintiff feared that Hall and NCMEC had transmitted copies of the letters to counsel for the defendants in the two actions and that the letters, each bearing a federal caption and case number, would be filed on the public dockets of those actions — placing on a public federal docket a statement from the federally designated clearinghouse for CyberTipline reporting associating Plaintiff's legal name with two CyberTipline reports. Plaintiff further feared that family members following the public dockets of the two actions, including family members with children, would distance themselves from Plaintiff if the letters were filed.

157.   Because each letter was created specifically for one pending action, bore that action's caption and case number, and purported to answer discovery directed at the CyberTipline issue, Plaintiff understood the asserted reports as consequences connected to his continued pursuit of that issue in the two actions. Plaintiff believed that dismissing the actions and abandoning the contemplated discovery would end the proceedings through which the asserted reports had surfaced and reduce the perceived risk of further governmental attention.

158.   The fear caused Plaintiff an acute psychological and functional injury with onset on April 28, 2026, including disrupted sleep, disrupted eating, intrusive fear of contact by law enforcement, recurrent involuntary recollections of Plaintiff's own childhood sexual abuse, an inability to sustain attention on litigation materials, and lost productive and income-producing time.

159.   During the acute period, Plaintiff distanced himself from his own children because he expected to be taken into custody by law enforcement.

160.   Upon reading the letters, Plaintiff immediately considered dismissing both federal actions because he believed that continuing to litigate the CyberTipline issue exposed him to criminal investigation or prosecution. On multiple occasions in the days following April 28, 2026, Plaintiff refrained from dismissing the two actions only by deliberate effort.

161.   During the acute period, the letters' assertion that two CyberTipline reports existed dominated Plaintiff's attention, and Plaintiff did not examine the letters' stated procedural predicate. Days later, upon reviewing the letters again, Plaintiff recognized that no subpoena had been served and understood that the letters were voluntary correspondence rather than responses compelled or authenticated through judicial process. From that realization, the letters' perceived

official and compulsory force diminished, and Plaintiff's acute fear of imminent arrest began to subside.

162. The letters' assertion stands unretracted and uncorrected. The digital reproductions of the letters persist in the commercial mail-receiving agency's mail-management system outside Plaintiff's possession or control. Apprehension concerning the asserted reports recurred while the two actions remained pending.

163. Plaintiff continued prosecuting the two actions despite the acute impairment, through deliberate effort, while performing litigation functions at materially diminished capacity, including his responses to the then-pending stay and protective-order motions, his evaluation and pursuit of the contemplated NCMEC discovery, and the administration of the canceled deposition sittings, including communications with the court reporter and videographer he had retained.

164. Plaintiff's ultimate refusal to dismiss the two actions did not eliminate the deterrent effect of the intimidation or the injuries it caused.

165. The acts undertaken in furtherance of the understanding injured Plaintiff in his person, materially impaired his continued attendance as a party in the federal proceedings, and materially impaired his ability to testify freely, fully, and truthfully as a prospective witness. The injuries alleged in this Section, including the impairment of Plaintiff's litigation preparation, are consequences of that deterrence.

166. The conduct alleged in this Complaint caused Plaintiff humiliation, embarrassment, mental suffering, injury to reputation, and severe emotional distress.

31

**COUNT I**
**DEFAMATION PER SE AND DEFAMATION BY IMPLICATION**
**(Letter Referencing Case No. 6:26-cv-00376-AGM-DCI)**
*(Against Defendants Katie Hall and NCMEC)*

167.   Plaintiff incorporates by reference the allegations in the Preliminary Statement, Jurisdiction and Venue, Parties, and Scope of Allegations sections, and Sections A, B, I, J, K, L, M, O, and R of the Facts, as if fully set forth herein.

168.   This Count is pleaded in the alternative under Federal Rule of Civil Procedure 8(d)(2).

169.   On or about April 22, 2026, Hall published the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI to third parties through the transmission and processing described in Section L of the Facts.

170.   Publication first occurred in Virginia when the commercial mail-receiving agency employee opened, reviewed, scanned, and uploaded the letter in the ordinary course of the transmission channel selected by Hall. Additional circulation occurred when the administrator of Plaintiff's mailbox accounts later opened and read the forwarded letter.

171.   The digital reproduction of the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI created by the commercial mail-receiving agency on April 28, 2026 remains associated in the commercial mail-receiving agency's mail-management system with Plaintiff's verified identity, Plaintiff's full legal name, Plaintiff's mailbox account, and Plaintiff's photographic identification.

172.   The April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI is of and concerning Plaintiff. The letter identifies Plaintiff by the names "Marvelle J. Ballentine" and "Jay Ballentine" and by the email address jaychizza@icloud.com.

32

173. The April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI is defamatory per se. The letter imputes to Plaintiff the commission of a criminal offense involving moral turpitude for which Plaintiff, if the imputation were true, could be indicted and punished.

174. The defamatory sting of the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI is that Hall, writing as NCMEC's Corporate Counsel and on NCMEC letterhead, associated Plaintiff's full legal name with two CyberTipline reports. The CyberTipline receives reports concerning suspected online child sexual exploitation, including mandatory electronic-service-provider reports under 18 U.S.C. § 2258A. A reasonable reader would understand the association to convey that NCMEC had received reports linking Plaintiff personally to suspected child-exploitation conduct and that the reported matter could be available to law enforcement.

175. In the alternative, to the extent the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI is not defamatory per se on its face, the letter is defamatory by implication. Hall used the verb "concerning" and placed Plaintiff's full legal name in the same sentence as "two CyberTipline reports." The letter does not include limiting language stating that the reports might match only one identifier, might concern a different person, might have been submitted by a non-Meta provider, might be unrelated to Plaintiff's Facebook account, or might not have resulted in any law-enforcement referral. The omission of those limitations caused the letter to convey that the reports concern Plaintiff personally. The circumstances alleged above support a reasonable inference that Hall intended the letter to convey that the reports concerned Plaintiff personally. The letter conveyed that meaning to the third-party recipients who reviewed and read it.

176.   The imputation conveyed by the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI, whether per se or by implication, is false. Plaintiff has not engaged in conduct constituting, or reasonably appearing to constitute, a violation of any statute enumerated in 18 U.S.C. § 2258A.

177.   Hall acted with at minimum negligence in issuing the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI without verifying the existence of the asserted subpoena and without an internal review process adequate to detect the absence of compulsory process.

178.   Hall knowingly made the false procedural representation that the letter was issued "[i]n response to" a subpoena when no subpoena had been served and Plaintiff had not waived service or requested an early response. That knowing falsehood is circumstantial evidence of Hall's intent in selecting and presenting the accompanying report assertion.

179.   Hall acted with actual malice as to the defamatory implication. Hall had obvious reasons to doubt that the information available established that two reports concerned Plaintiff personally: the three identifiers were supplied by Plaintiff, the letter linked them disjunctively, and the letter identified no report-specific match or disambiguation. Hall nevertheless selected wording that placed Plaintiff's full legal name in the same sentence as "two CyberTipline reports" and omitted any clarification that a report might match only a different identifier, person, provider, platform, or event. These facts support the inference that Hall knew the implication was false or recklessly disregarded whether it was false, and intended the recipients to understand that the reports concerned Plaintiff personally.

180.   Hall performed every act alleged in this Count within the scope of her employment as NCMEC's Corporate Counsel and in performance of her responsibility for legal

correspondence issued by NCMEC in response to claimed legal process. Hall acted under her NCMEC title, on NCMEC letterhead, and from NCMEC's Alexandria offices. NCMEC is liable for Hall's conduct alleged in this Count.

181.   NCMEC, acting through Hall and one or more additional personnel, approved the wording of the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI and authorized its issuance and transmission.

182.   Under Virginia defamation per se doctrine, Plaintiff is entitled to presumed damages without proof of actual injury. Plaintiff is a private-figure plaintiff.

183.   Plaintiff has suffered actual damages including humiliation, embarrassment, mental suffering, and injury to reputation.

184.   The digital reproduction of the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI persists in the commercial mail-receiving agency's mail-management system outside Plaintiff's possession or control.

185.   The mail-management system associates the digital reproduction of the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI with Plaintiff's verified identity, Plaintiff's full legal name, Plaintiff's mailbox account, and Plaintiff's photographic identification.

186.   Plaintiff does not control the mail-management system's access permissions, administrative access, audit logs, retention practices, or internal dissemination of scanned mail images associated with Plaintiff's mailbox account.

187.   Hall acted willfully, wantonly, and in conscious disregard of Plaintiff's rights by issuing the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI with knowledge of the false process characterization and with knowledge or reckless disregard of the defamatory implication. Hall has refused correction and has affirmatively defended the letter as accurate and

35

proper. NCMEC approved the issuance of the letter and has not withdrawn, corrected, or retracted it. NCMEC's filings in the 1341 Action are alleged only as evidence that, after receiving notice of Plaintiff's claims, NCMEC continued to maintain that the letter was accurate and proper. Plaintiff is entitled to punitive damages against Hall and NCMEC to the extent permitted by law, subject to Va. Code § 8.01-38.1.

**COUNT II**
**DEFAMATION PER SE AND DEFAMATION BY IMPLICATION**
**(Letter Referencing Case No. 6:26-cv-00286-AGM-DCI)**
*(Against Defendants Katie Hall and NCMEC)*

188.    Plaintiff incorporates by reference the allegations in the Preliminary Statement, Jurisdiction and Venue, Parties, and Scope of Allegations sections, and Sections A, B, I, J, K, L, M, O, and R of the Facts, as if fully set forth herein.

189.    This Count is pleaded in the alternative under Federal Rule of Civil Procedure 8(d)(2).

190.    On or about April 22, 2026, Hall published the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI to third parties through the transmission and processing described in Section L of the Facts.

191.    Publication first occurred in Virginia when the commercial mail-receiving agency employee opened, reviewed, scanned, and uploaded the letter in the ordinary course of the transmission channel selected by Hall. Additional circulation occurred when the administrator of Plaintiff's mailbox accounts later opened and read the forwarded letter.

192.    The digital reproduction of the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI created by the commercial mail-receiving agency on April 28, 2026 remains associated in the commercial mail-receiving agency's mail-management system with Plaintiff's

36

verified identity, Plaintiff's full legal name, Plaintiff's mailbox account, and Plaintiff's photographic identification.

193.    The April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI is of and concerning Plaintiff. The letter identifies Plaintiff by the names "Marvelle J. Ballentine" and "Jay Ballentine" and by the email address jaychizza@icloud.com.

194.    The April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI is defamatory per se. The letter imputes to Plaintiff the commission of a criminal offense involving moral turpitude for which Plaintiff, if the imputation were true, could be indicted and punished.

195.    The defamatory sting of the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI is that Hall, writing as NCMEC's Corporate Counsel and on NCMEC letterhead, associated Plaintiff's full legal name with two CyberTipline reports. The CyberTipline receives reports concerning suspected online child sexual exploitation, including mandatory electronic-service-provider reports under 18 U.S.C. § 2258A. A reasonable reader would understand the association to convey that NCMEC had received reports linking Plaintiff personally to suspected child-exploitation conduct and that the reported matter could be available to law enforcement.

196.    In the alternative, to the extent the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI is not defamatory per se on its face, the letter is defamatory by implication. Hall used the verb "concerning" and placed Plaintiff's full legal name in the same sentence as "two CyberTipline reports." The letter does not include limiting language stating that the reports might match only one identifier, might concern a different person, might have been submitted by a non-Meta provider, might be unrelated to Plaintiff's Facebook account, or might not have resulted in any law-enforcement referral. The omission of those limitations caused the letter to

convey that the reports concern Plaintiff personally. The circumstances alleged above support a reasonable inference that Hall intended the letter to convey that the reports concerned Plaintiff personally. The letter conveyed that meaning to the third-party recipients who reviewed and read it.

197.    The imputation conveyed by the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI, whether per se or by implication, is false. Plaintiff has not engaged in conduct constituting, or reasonably appearing to constitute, a violation of any statute enumerated in 18 U.S.C. § 2258A.

198.    Hall acted with at minimum negligence in issuing the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI without verifying the existence of the asserted subpoena and without an internal review process adequate to detect the absence of compulsory process.

199.    Hall knowingly made the false procedural representation that the letter was issued "[i]n response to" a subpoena when no subpoena had been served and Plaintiff had not waived service or requested an early response. That knowing falsehood is circumstantial evidence of Hall's intent in selecting and presenting the accompanying report assertion.

200.    Hall acted with actual malice as to the defamatory implication. Hall had obvious reasons to doubt that the information available established that two reports concerned Plaintiff personally: the three identifiers were supplied by Plaintiff, the letter linked them disjunctively, and the letter identified no report-specific match or disambiguation. Hall nevertheless selected wording that placed Plaintiff's full legal name in the same sentence as "two CyberTipline reports" and omitted any clarification that a report might match only a different identifier, person, provider, platform, or event. These facts support the inference that Hall knew the implication was false or

38

recklessly disregarded whether it was false, and intended the recipients to understand that the reports concerned Plaintiff personally.

201.    Hall performed every act alleged in this Count within the scope of her employment as NCMEC's Corporate Counsel and in performance of her responsibility for legal correspondence issued by NCMEC in response to claimed legal process. Hall acted under her NCMEC title, on NCMEC letterhead, and from NCMEC's Alexandria offices. NCMEC is liable for Hall's conduct alleged in this Count.

202.    NCMEC, acting through Hall and one or more additional personnel, approved the wording of the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI and authorized its issuance and transmission.

203.    Under Virginia defamation per se doctrine, Plaintiff is entitled to presumed damages without proof of actual injury. Plaintiff is a private-figure plaintiff.

204.    Plaintiff has suffered actual damages including humiliation, embarrassment, mental suffering, and injury to reputation.

205.    The digital reproduction of the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI persists in the commercial mail-receiving agency's mail-management system outside Plaintiff's possession or control.

206.    The mail-management system associates the digital reproduction of the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI with Plaintiff's verified identity, Plaintiff's full legal name, Plaintiff's mailbox account, and Plaintiff's photographic identification.

207.    Plaintiff does not control the mail-management system's access permissions, administrative access, audit logs, retention practices, or internal dissemination of scanned mail images associated with Plaintiff's mailbox account.

208.   Hall acted willfully, wantonly, and in conscious disregard of Plaintiff's rights by issuing the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI with knowledge of the false process characterization and with knowledge or reckless disregard of the defamatory implication. Hall has refused correction and has affirmatively defended the letter as accurate and proper. NCMEC approved the issuance of the letter and has not withdrawn, corrected, or retracted it. NCMEC's filings in the 1341 Action are alleged only as evidence that, after receiving notice of Plaintiff's claims, NCMEC continued to maintain that the letter was accurate and proper. Plaintiff is entitled to punitive damages against Hall and NCMEC to the extent permitted by law, subject to Va. Code § 8.01-38.1.

## COUNT III
## INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### (Against Defendants Katie Hall and NCMEC)

209.   Plaintiff incorporates by reference the allegations in the Preliminary Statement, Jurisdiction and Venue, Parties, and Scope of Allegations sections, and Sections A, B, C, G, H, I, J, M, and R of the Facts, as if fully set forth herein.

210.   On April 22, 2026, Hall directly targeted Plaintiff with two letters, each keyed by caption and case number to a pending federal action, each associating Plaintiff's legal name, alternate name, and account identifier with two CyberTipline reports, and each falsely characterizing itself as a response to a subpoena. No subpoena had been served, Plaintiff had not requested or authorized an early response, no court order required a response, and a motion to stay discovery had been filed in each referenced action on the preceding day. This Count rests on Hall's direct transmission of the targeted correspondence to Plaintiff and does not depend on third-party publication or reputational injury.

211.   Hall understood the criminal and law-enforcement significance of associating a named individual with CyberTipline reports, understood that the letters' false invocation of

compulsory process would give the assertion added official force, and knew or recklessly disregarded that directing that combination at a disclosed survivor of childhood sexual abuse created a high probability of acute emotional distress.

212.   Hall knew, before issuing the letters, that Plaintiff is a disclosed survivor of childhood sexual abuse, as alleged in Section C. Hall directed at Plaintiff a communication associating his legal name with reporting concerning child sexual exploitation, the subject matter of the abuse Plaintiff had disclosed. Hall knew that this association, directed at Plaintiff, was substantially certain to cause Plaintiff acute emotional distress. Hall acted with the intent to cause that distress, or in reckless disregard of the substantial certainty that it would result.

213.   Hall's conduct combined the following features. Hall knew Plaintiff was a disclosed survivor of childhood sexual abuse. Hall directed at Plaintiff a communication associating his legal name with reporting concerning child sexual exploitation. Hall presented that association as the product of compelled legal process when no subpoena had been served and no court order required a response. Hall issued the letters when no rule, order, or obligation required their issuance, before the ruling dates the movants had requested and before the noticed depositions. Hall directed the case-keyed letters to Plaintiff alone.

214.   Directing at a disclosed survivor of childhood sexual abuse a false and unauthenticated association between that person and child-exploitation reporting offends against the generally accepted standards of decency and morality and exceeds the bounds of what a civilized community tolerates.

215.   Hall performed every act alleged in this Count within the scope of her employment as NCMEC's Corporate Counsel and in performance of her responsibility for legal correspondence issued by NCMEC in response to claimed legal process. NCMEC, acting through

Hall and one or more additional personnel, approved the wording of the letters and authorized their issuance and transmission. NCMEC is liable for the conduct alleged in this Count.

216. Hall's conduct directly and proximately caused Plaintiff severe emotional distress. Beginning on April 28, 2026, upon reading the letters, Plaintiff vomited, experienced recurrent involuntary recollections of his own childhood sexual abuse, lived in acute fear of imminent arrest and prosecution, and, expecting to be taken into custody, distanced himself from his own children. Plaintiff's sleep and eating were disrupted, and he was unable to sustain attention on his work. That distress persisted in acute form until Plaintiff recognized, days later, that no subpoena had been served. The distress was severe and beyond what a reasonable person could be expected to endure.

217. The severe emotional distress on which this Count rests arises from Hall's direct transmission of the letters to Plaintiff and from their content. It does not arise from any apprehension that the letters would be published to, or read by, any other person.

218. As a direct and proximate result of the conduct alleged in this Count, Plaintiff sustained compensatory damages for mental anguish, severe emotional distress, physical manifestation, functional impairment, lost productive capacity, and loss of capacity for the enjoyment of life. Count III seeks no recovery for reputational injury.

**COUNT IV**
**CONSPIRACY TO DETER A PARTY AND WITNESS, BY INTIMIDATION,**
**FROM ATTENDING AND TESTIFYING IN COURTS OF THE**
**UNITED STATES — 42 U.S.C. § 1985(2)**
*(Against All Defendants)*

219. Plaintiff incorporates by reference the allegations in the Preliminary Statement, Jurisdiction and Venue, Parties, and Scope of Allegations sections, and Sections A through J, Sections M and N, and Sections P through R of the Facts, as if fully set forth herein.

42

220. Meta and Hall are separate and legally distinct persons. Meta and NCMEC are separate and legally distinct entities. Hall is not an officer, employee, agent, or authorized representative of Meta, and NCMEC is not an affiliate, agent, or representative of Meta. The agreement alleged in Section N was reached between Meta, acting through one or more of its own officers, employees, agents, or authorized representatives, on the one side, and Hall and NCMEC on the other. The combination alleged in this Count comprises at least two separate and legally distinct persons.

221. Defendants reached the agreement alleged in Section N of the Facts.

222. The purpose of the agreement was to deter Plaintiff, by intimidation, from continuing to attend the 376 Action and the 286 Action as a party, and from testifying freely, fully, and truthfully as a prospective witness in those pending federal proceedings, as alleged in Section P of the Facts.

223. One or more Defendants committed the acts in furtherance of the agreement alleged in Section Q of the Facts.

224. The acts in furtherance of the agreement injured Plaintiff in his person and materially impaired his attendance and testimony as a party and prospective witness, as alleged in Section R of the Facts.

225. Meta knowingly joined the agreement through one or more authorized representatives or intermediaries. Hall knowingly joined and implemented the agreement by preparing or approving, signing, and authorizing transmission of the letters. NCMEC knowingly joined and implemented the agreement, acting through Hall and one or more additional personnel who approved the issuance of the letters. Each Doe Defendant is liable only to the extent the evidence establishes that the Doe knowingly joined or implemented the common plan.

43

226. Defendants' conduct directly and proximately caused the injuries alleged in this Complaint.

227. Defendants acted intentionally and with conscious disregard for Plaintiff's federally protected status as a party and prospective witness, warranting punitive damages.

## COUNT V
## COMMON-LAW CONSPIRACY
### (Against All Defendants)

228. Plaintiff incorporates by reference the allegations in the Preliminary Statement, Jurisdiction and Venue, Parties, and Scope of Allegations sections, and Sections A through N and Sections P through R of the Facts, as if fully set forth herein.

229. This Count arises under the common law of Virginia.

230. Hall, NCMEC, Meta, and one or more Doe Defendants combined together through the understanding alleged in Section N of the Facts. Meta is separate and legally distinct from Hall and from NCMEC, as alleged in this Complaint. The combination comprised at least two separate and legally distinct persons.

231. The means by which the combination was carried out included the preparation, approval, issuance, transmission, and publication of the two April 22, 2026 letters. The publication of each letter constituted the defamation alleged in Counts I and II.

232. The participants understood and intended that the letters would be transmitted through the selected commercial mail channel and that the third-party publication alleged in Counts I and II would occur in carrying out the understanding.

233. In furtherance of the combination, the participants committed the overt acts alleged in Section Q of the Facts, and the publications alleged in Counts I and II occurred.

234. The participants acted intentionally, purposefully, and without lawful justification.

235.   As a direct and proximate result of the combination and the acts in furtherance of it, Plaintiff sustained the damages alleged in Section R of the Facts and in Counts I and II, including presumed damages, humiliation, embarrassment, mental suffering, and injury to reputation. Each participant is jointly and severally liable for those damages.

236.   The participants acted willfully, wantonly, and in conscious disregard of Plaintiff's rights, warranting punitive damages subject to Va. Code § 8.01-38.1.

**COUNT VI**
**INSULTING WORDS — VA. CODE § 8.01-45**
*(Against Defendants Katie Hall and NCMEC)*

237.   Plaintiff incorporates by reference the allegations in the Preliminary Statement, Jurisdiction and Venue, Parties, and Scope of Allegations sections, and Sections A, B, C, G, H, I, J, K, M, and R of the Facts, as if fully set forth herein.

238.   This Count is pleaded in the alternative under Federal Rule of Civil Procedure 8(d)(2). This Count does not depend on publication of either April 22, 2026 letter to any third party, and it incorporates no allegation from Section L of the Facts.

239.   Hall directed each of the two April 22, 2026 letters to Plaintiff personally at Plaintiff's mailing address.

240.   The words of each letter — associating Plaintiff's full legal name, alternate name, and email identifier with two CyberTipline reports, on NCMEC letterhead, over the signature of NCMEC's Corporate Counsel, and framed as a response to compulsory legal process — are, in their usual construction and common acceptance, insults that tend to violence and breach of the peace. In the context alleged in Section K of the Facts, the words convey the imputation described in that Section.

241. The imputation conveyed by each letter is false. Plaintiff has not engaged in conduct constituting, or reasonably appearing to constitute, a violation of any statute enumerated in 18 U.S.C. § 2258A.

242. Hall selected the words of each letter, knowingly made the false representation that each letter responded to a subpoena when no subpoena had been served, and acted with knowledge or reckless disregard of the falsity of the imputation each letter conveyed.

243. Hall performed every act alleged in this Count within the scope of her employment as NCMEC's Corporate Counsel. NCMEC, acting through Hall and one or more additional personnel, approved the wording of the letters and authorized their issuance and transmission. NCMEC is liable for the conduct alleged in this Count.

244. As a direct and proximate result of the conduct alleged in this Count, Plaintiff sustained the damages alleged in Section R of the Facts, including humiliation, embarrassment, mental suffering, and severe emotional distress.

245. Hall and NCMEC acted willfully, wantonly, and in conscious disregard of Plaintiff's rights, warranting punitive damages subject to Va. Code § 8.01-38.1.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants and grant the following relief:

A. On Counts I and II, against Defendants Hall and NCMEC, jointly and severally: (1) compensatory damages in the amount of $42,820,260, including presumed damages and actual damages; and (2) punitive damages to the extent supported by actual malice findings, subject to the cap established by Va. Code § 8.01-38.1.

B. On Count III, against Defendants Hall and NCMEC, jointly and severally: compensatory damages.

C.      On Count IV, against all Defendants, jointly and severally: compensatory damages in an amount to be determined by the jury; and punitive damages.

D.      On Count V, against all Defendants, jointly and severally: compensatory damages in an amount to be determined by the jury; and punitive damages subject to Va. Code § 8.01-38.1.

E.      On Count VI, against Defendants Hall and NCMEC, jointly and severally: compensatory damages; and punitive damages subject to Va. Code § 8.01-38.1.

F.      Costs of suit.

G.      Pre-judgment and post-judgment interest at the legal rate.

H.      Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so triable.[1]

---

[1] *Nomination of Judge Clarence Thomas to be Associate Justice of the Supreme Court of the United States: Hearings Before the S. Comm. on the Judiciary*, 102d Cong. (1991) (statement of Judge Clarence Thomas, Oct. 11, 1991):

"…It's a national disgrace. And from my standpoint as a black American, as far as I'm concerned, it is a high-tech lynching…"

"I would have preferred an assassin's bullet to this kind of living hell that they have put me and my family through… I would rather die than withdraw."

48

Date: July 30, 2026

Respectfully submitted,

Marvelle J. Ballentine
Plaintiff, *pro se*
1520 Belle View Blvd, Ste. #5847
Alexandria, Virginia 22307
(407) 794-6503
jayballentine@protonmail.com

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA          DIVISION

Marvelle J. Ballentine
_____Plaintiff(s),

v.

Katie Hall, et al,
_____Defendant(s),

Civil Action Number: 1:26cv2331-RDA-IDD

## LOCAL RULE 83.1 (N) CERTIFICATION

I declare under penalty of perjury that:

No attorney has prepared or assisted in the preparation of COMPLAINT FOR DAMAGES
                                                          (Title of Document)

Marvelle J. Ballentine
Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: 7/30/26          (Date)

OR

The following attorney(s) prepared or assisted me in preparation of _____.
                                                                   (Title of Document)

_____
(Name of Attorney)

_____
(Address of Attorney)

_____
(Telephone Number of Attorney)
Prepared, or assisted in the preparation of, this document.

_____
(Name of *Pro Se* Party (Print or Type)

_____
Signature of *Pro Se* Party

Executed on: _____ (Date)