# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF VIRGINIA
### Alexandria Division

| | | |
|---|---|---|
| MARVELLE J. BALLENTINE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 1:26-CV-02331-RDA-IDD |
| | ) | |
| THE NATIONAL CENTER FOR | ) | |
| MISSING & EXPLOITED CHILDREN, | ) | |
| *ET AL.*, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM IN SUPPORT OF MOTION TO DISMISS
## OF DEFENDANT THE NATIONAL CENTER FOR MISSING & EXPLOITED CHILDREN

Defendant the National Center of Missing & Exploited Children ["NCMEC"], by and through undersigned counsel and pursuant to the Rules and Orders of this Honorable Court, hereby respectfully set forth the following Memorandum in Support of NCMEC's Motion to Dismiss Plaintiff's First Amended Complaint. The Motion should be granted, on the grounds that Plaintiff's claims are barred by litigation privilege, as the allegedly-defamatory language was set forth in a response to a subpoena; because NCMEC enjoys qualified statutory immunity under federal law; because Plaintiff fails to plausibly allege that the language in question is not true; because the language utilized cannot support a defamation by imputation claim; because Plaintiff has failed to plausibly allege that the subpoena response was sufficiently outrageous to support a claim of intentional infliction of emotional distress; and because Plaintiff's claims of conspiracy are predicated on conclusory, illogical allegations. In further support, NCMEC states as follows:

I.      FACTUAL SETTING/BACKGROUND

The above-captioned lawsuit is Plaintiff's second effort as to NCMEC, having previously filed and voluntarily dismissed a prior lawsuit based on the same facts while a motion to dismiss was pending.  *See Ballentine v. The National Center for Missing & Exploited Children,* et al., Case No. 1:26-cv-01341 (E.D. Va.).[1]

Plaintiff alleges that on April 9, 2026, Plaintiff sent two letters to NCMEC's legal department, which contained subpoenas seeking documents from NCMEC.  *See* First Amended Complaint ["FAC"] at ¶¶ 55, 56.  Copies of those letters are attached hereto as Exhibits A and B. In the identical schedules of requested documents that were attached to the subpoenas, Plaintiff instructed NCMEC

> [t]o produce a document sufficient to show whether [NCMEC] received or maintains any CyberTipline report, referral, or submission concerning (1) Marvelle J. Ballentine; (2) Jay Ballentine; and/or (3) the account-level identifier jaychizza@icloud.com for the period July 2, 2022 through the date of compliance.

Ex. A and B at Schedule A.  Schedule A to the subpoenas went on to instruct that NCMEC was not to produce:

> (a) the contents of any CyberTipline Report;
> (b) any narrative text;
> (c) attachments;
> (d) images, video, or media;
> (e) investigative materials; or
> (f) any material beyond what is necessary to show the existence or non-existence of a CyberTipline report, referral, or submission.

*Id.*  On April 22, 2026, NCMEC responded to the subpoenas without awaiting formal service via two substantively-identical letters signed by Defendant Hall, in her capacity as in-house counsel for NCMEC.  In those letters, NCMEC represented:

> Dear Mr. Ballentine:

---

[1] A hearing on the Motion to Dismiss was scheduled to occur on August 7, 2026.

> In response to your subpoena issued April 9, 2026, the National Center for Missing & Exploited Children ("NCMEC") provides its written responses as detailed below.
> NCMEC has received two (2) CyberTipline reports concerning (1) Marvelle J. Ballentine, (2) Jay Ballentine, and/or (3) the account-level identifier jaychizza@icloud.com between July 1, 2022 and the present.

*See* Letters from NCMEC to Plaintiff (4/22/206) (attached hereto as Exhibits C and D).  In other words, NCMEC responded precisely as requested, mirroring the language utilized by Plaintiff in the Schedules accompanying the subpoenas.  Notwithstanding that the information was requested in precisely the manner requested, Plaintiff alleges that the letters were defamatory, and that he vomited and experienced recollections of childhood sexual abuse, lived in "acute fear of imminent arrest and prosecution, [*etc.*]" upon receipt of the letters.  FAC at ¶ 231.

Plaintiff further alleges that NCMEC and counsel for Defendant Meta Platforms, Inc. engaged in a conspiracy "to deter Plaintiff, by intimidation, from continuing to attend [two other federal lawsuits he has filed] … as a party and from testifying freely, fully, and truthfully as a prospective witness in those pending federal proceedings…"  *Id.* at ¶ 158.

Plaintiff alleges six counts: Defamation Per Se and Defamation by Implication (Count I, as to Defendants NCMEC and Hall); Defamation Per Se and Defamation by Implication (Count II, as to Defendants NCMEC and Hall); Intentional Infliction of Emotional Distress (Count III, as to Defendants NCMEC and Hall); Conspiracy to Deter a Party and Witness, by Intimidation, from Attending and Testifying in Courts of the United States—42 U.S.C. § 1985(2) (Count IV, as to all Defendants); Common-Law Conspiracy (Count V, as to all Defendants); and Insulting Words—Va. Code § 8.01-45 (as to Defendants NCMEC and Hall).  Plaintiff seeks $42,820,260.00 (Forty Two Million Dollars) in compensatory damages, and punitive damages.

II.     STANDARD OF REVIEW

A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests the legal sufficiency of a complaint to determine whether a plaintiff has properly stated a claim. In reviewing a dismissal for failure to state a claim, the Court is to accept as true all factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011). To survive a motion to dismiss, a complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim has facial plausibility "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that defendant is liable for the misconduct alleged." *Id.* While Courts are to construe *pro se* complaints liberally, a *pro se* plaintiff must nevertheless allege sufficient facts to state a plausible cause of action. *Hardnett v. M&T Bank*, 204 F. Supp. 3d 851, 856 (E.D. Va. 2016) (internal citations omitted).  Further, conclusory allegations are not entitled the presumption of truth, nor is the Court required to "accept as true unwarranted inferences, unreasonable conclusions, or arguments."  *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599, 616 FN26 (4th Cir. 2009) (quoting *Kloth v. Microsoft Corp.*, 444 F.3d 312, 319 (4th Cir. 2006)).

Where a plaintiff fails to introduce a pertinent document as part of his complaint, the defendant may attach the document to a motion to dismiss, and the Court may consider the same without converting the motion into a motion for summary judgment, especially where the plaintiff has referred to the document in the complaint.  *See Goines v. Valley Cmty. Servs. Bd.*,

4

822 F.3d 159, 166 (4th Cir. 2016); *Davis v. George Mason Univ.*, 395 F.Supp.2d 331, 335 (E.D. Va. 2005); *Hoffman v. Daimler Trucks N. Am., LLC*, 940 F. Supp. 2d 347, 354 (W.D. Va. 2013); *Orlando v. Smith*, 2024 U.S. Dist. LEXIS 210073, *5 FN 1 (W.D. Va 2024) (internal citations omitted) (same).

III.     ARGUMENT

    A. *Counts I, II, III, and VI are Barred by the Litigation Privilege.[2]*

At a minimum, Plaintiff's defamation and intentional infliction of emotional distress claims are barred by the litigation privilege.  Under Virginia law, litigation privilege "is broad in scope and applies to communications made in proceedings pending in a court or before a quasi-judicial body." *Lindeman v. Lesnick*, 268 Va. 532, 537 (2004).  It is an absolute privilege, meaning "the maker of an absolutely privileged communication is accorded complete immunity from liability [even if] the communication is made maliciously and with knowledge that it is false." *Id.* (quoting *Spencer v. Looney*, 116 Va. 767, 774 (1914)). The reason for the rule is "to encourage unrestricted speech in litigation." *Lindeman*, 268 Va. at 537 (internal citations omitted). Virginia courts have "extended the application of the absolute privilege well beyond the actual courtroom," such as applying the privilege to protect a third party whose statements were republished by another during a deposition. *Id.* (citing *Watt v. McKelvie*, 219 Va. 645, 651 (1978)). "Words spoken or written in a judicial proceeding that are relevant and pertinent to the matter under inquiry are absolutely privileged." *Donahoe Constr. Co. v. Mt. Vernon Assocs.*, 235 Va. 531, 537 (1988).

While undersigned counsel has not identified any clear holding by the Fourth Circuit or

---

[2] It does not appear that Defendant Hall has been served with the FAC in this matter.  As such, the Motion is filed by NCMEC, only.  However, unless otherwise specified, the arguments set forth apply equally to Defendant Hall, as she at all times relevant was an employee of NCMEC.

its member districts as to whether subpoena responses are subject to absolute privilege, this

Court has recognized that the privilege would apply to comments made in response to a police

investigation. *Fields v. Sprint Corp.*, 2017 U.S. Dist. LEXIS 147654, *18 (E.D. Va. 2017).

Other courts have extended the privilege in that manner. *See, e.g., United States Dep't of Educ.*

*v. NCAA*, 481 F.3d 936, 939 (7th Cir. 2007) (noting that "[d]efamation based on material

contained in a response to a subpoena, as in other statements made in a judicial proceeding, is

absolutely privileged.") (internal citations omitted); *Parrino v. SunGard Availability Servs. LP*,

2012 U.S. Dist. LEXIS 32137, *9 (E.D.N.Y. 2012) (noting that "certain communications, such as

the act of responding to a subpoena, may not serve as the basis for a defamation action")

(internal citations omitted, applying New York law); *Willis v. Centennial Mortg. & Funding, Inc.*,

2004 U.S. Dist. LEXIS 18666, *25 (D. Minn. 2004) (holding that defendant's actions, in

responding to subpoena, were absolutely privileged in defamation suit); *Farooq v. Std. Chtd.*

*Bank*, 2026 U.S. Dist. LEXIS 10392, *7-8 (E.D. Tex. 2026) (noting that "[u]nder Texas law, the

bank's response to the subpoena is shielded by an absolute privilege and could not form the basis

of a tort claim"); *United States v. Westinghouse Elec. Corp.*, 638 F.2d 570, 574 FN4 (3rd Cir.

1980) (noting absolute privilege extends to disclosure of records in response to subpoena).

The FAC emphasizes repeatedly that the subpoenas in question were not formally

served pursuant to Rule 45.  However, this Court may take judicial notice of the fact that

parties routinely waive formal service of subpoenas, and routinely produce information in

response to a subpoena without requiring formal service. To wit, in both Virginia state courts

and the Fourth Circuit, even service of process can be waived, despite the service requirements

set forth under the relevant frameworks.  A failure to serve is not a prohibition against response;

6

it simply means that compliance may not be compelled, unless service is waived. *See, e.g.,*

*Hanwha Azdel, Inc. v. C&D Zodiac, Inc.*, 2013 U.S. Dist. LEXIS 96690, *13 (W.D. Va. 2013)

(noting that objections as to formal service of a subpoena can be waived).

> B.  *NCMEC Has Statutory Immunity to Several of Plaintiff's Claims.*

Second, NCMEC enjoys qualified statutory immunity that bars Counts I, II, and

V.  18 U.S.C. § 2258D provides that in light of NCMEC's

> clearinghouse role as a private, nonprofit organization and its mission to help find missing children, reduce online sexual exploitation of children and prevent future victimization… a civil claim… against NCMEC, including any director, officer, employee, or agent of NCMEC, arising from the performance of any CyberTipline responsibilities or functions of NCMEC… may not be brough in any Federal or State Court.

18 U.S.C. § 2258D(a).  The statutory immunity is not absolute—it does not apply where

NCMEC engaged in intentional misconduct (§ 2258D(b)(1)), or acted with actual malice,

reckless disregard a substantial risk of causing injury without legal justification, or for a

purpose unrelated to the performance of any responsibility or function under § 2258D, § 2258A

(requiring reports to CyberTipline), or Section 404 of the Missing Children's Assistance Act (§

2258D(b)(2)). Further, the statutory immunity does not apply to an act or omission relating to an

"ordinary business activity, including general administration or operations, the use of motor

vehicles, or personnel management."  § 2258D(c).

Additionally, 34 U.S.C. § 20505 provides that unless a plaintiff can show actual malice,

or that NCMEC provided information or took action for a purpose unrelated to an activity

mandated by federal law, NCMEC "including any of its officers, employees, or agents, shall not

be liable for damages in any civil action for defamation, libel, slander, or harm to reputation

arising out of any action or communication by [NCMEC]… in connection with any

clearinghouse, hotline, or complaint intake or forwarding program…"

7

NCMEC respectfully submits that the statutory immunity applies, at a minimum, to Plaintiff's defamation counts (Counts I, II, and VI).  Plaintiff sent subpoenas to NCMEC seeking information it received and maintains pursuant to its statutory charge, and NCMEC responded precisely as requested.  None of the exceptions are applicable; no facts are alleged, nor can any reasonable inference be derived from any factual allegations, that NCMEC engaged in "intentional misconduct," or acted with "actual malice" or "reckless disregard."  "Actual malice," in the context of a defamation claim, requires "knowledge that [the statement] was false or with reckless disregard of whether it was false or not." *Fleming v. Moore*, 221 Va. 884, 891 (1981) (quoting *New York Times Co. v. Sullivan*, 376 U.S. 254, 280 (1964)).  Plaintiff's allegations as to malice are conclusory; no factual allegations are set forth to establish that NCMEC or its employee, Defendant Hall, acted with actual malice, and the complained-of activity clearly relates to NCMEC's clearinghouse role.  As such, Plaintiff's defamation counts should be dismissed.

Further, given the lack of factual support for Plaintiff's claims of intentional misconduct, NCMEC respectfully submits that its statutory immunity should properly apply to all counts.

C.  *The Statements are True, and Thus Not Actionable.*

Third, assuming *arguendo* that no privilege or immunity applies, the Complaint fails to state a claim upon which relief may be granted, as Plaintiff does not assert that the factual representations in the letter are inaccurate, and Plaintiff's theory of defamation by implication is not actionable. Under Virginia law, "a private individual asserting a claim of defamation first must show that a defendant has published a *false* factual statement…" *Dangerfield v. WAVY Broadcasting, Inc.*, 228 F. Supp. 3d 696, 701 (E.D. Va. 2017) (quoting *Hyland v. Raytheon Tech. Servs. Co.*, 277 Va. 40, 46 (2009) (emphasis added)).

8

Plaintiff has not alleged that the allegedly-defamatory statements are not, in fact, true—that NCMEC received two CyberTipline reports relating to any of the three search terms specified in the subpoena. In other words, Plaintiff would need to establish that the statement was false; that NCMEC did not, in fact, receive two CyberTipline reports for the search terms specified by Plaintiff during the time period specified by Plaintiff. He cannot plausibly assert that is the case, because he does not have access to those reports. While it is certainly understandable that a person would be upset to learn that they, or a person with the same name, or their e-mail address—is linked with a report to NCMEC, that does not render an accurate factual recitation of that fact actionable.

Plaintiff asserts in the Complaint that he "has not engaged in conduct constituting, or reasonably appearing to constitute, a violation of any statute enumerated in 18 U.S.C. § 2258A." FAC at ¶ 102. NCMEC takes no position on that allegation, as it cannot know whether or not that is true. However, the fact remains that NCMEC did not accuse Plaintiff of any such conduct; NCMEC simply responded that two reports were received regarding the identifiers requested by Plaintiff in the subpoenas. Plaintiff has not, and cannot, plausibly allege that statement is false, and as such, the statement is not actionable.

D. *The Allegedly-Defamatory Meaning Cannot be Imputed from the Language Used.*

Further, Plaintiff's defamation claims are not actionable, because his theory of defamation by implication relies on a tortured interpretation of the allegedly-defamatory letters. Virginia recognizes the theory of defamation by implication, so long as the implication is "reasonably drawn from the words actually used." *Webb v. Virginian-Pilot Media Cos.*, 287 Va. 84, 49 (2014). Whether such an implication may reasonably be drawn is a question of law. *Id.* at 90. The meaning of the allegedly defamatory language "cannot, by innuendo, be extended

beyond its ordinary and common acceptation." *Id.* at 89 (quoting *Carwile v. Richmond Newspapers, Inc.*, 196 Va. 1, 9 (1954)).

In the case at hand, Plaintiff attempts to do just that—impermissibly extend the language in the letters, by arguing that NCMEC, by advising of the existence of the reports, was implying that Plaintiff had violated child exploitation statutes that gave rise to those reports. That is not an implication that can reasonably be drawn. All NCMEC stated was that it had received two CyberTipline reports relating to the search terms provided by Plaintiff; NCMEC did not express any opinion as to the validity of those reports, nor express in any way those reports were or were not credible (and as noted *supra*, Plaintiff expressly instructed NCMEC to not provide any information beyond what NCMEC provided).

*Dangerfield* is instructive. In that matter, the plaintiff sued a news organization for, *inter alia*, reporting that Plaintiff had been accused of rape. The court concluded that was factually accurate, and noted "Defendants' broadcast stated that Plaintiff was 'accused of rape.' Plaintiff may not extrapolate beyond the 'plain and natural' meaning of words to claim that Defendants' broadcast stated that Plaintiff was a 'rapist.'" *Dangerfield,* 228 F. Supp. 3d at 702 (internal citations omitted).

Here, Plaintiff is attempting to do precisely what the Court prohibited in *Dangerfield*; extend factually-accurate representations that the identifiers he identified had been referenced to the CyberTipline to claim that NCMEC stated he had engaged in child exploitation or other conduct that would be appropriately reported to NCMEC. NCMEC advised of reports; NCMEC took no position as the validity of the reports, or expressed anything relating to the conduct that lead to the reports. Rather, NCMEC provided only the information requested—the

existence or nonexistence of any CyberTipline reports as to the search terms identified by Plaintiff.

Further, defamation by implication requires Plaintiff to plausibly allege "that the challenged language not only imparts a 'false innuendo' but also suggests that the author intends or endorses the inference." *Malone v. WP Co.*, *LLC,* 2023 U.S. Dist. LEXIS 176018, *18 (W.D. Va. 2023) (quoting *Chapin v. Knight-Ridder, Inc.*, 993 F.2d 1087, 1092 (4th Cir. 1993)).[3]  That element is clearly missing in this matter; NCMEC reported a factual statement in response to the subpoenas, and did not add any narrative or context (as instructed by Plaintiff).  Again, NCMEC simply responded to Plaintiff's subpoena, in the manner requested.

E.   Count VI *(Insulting Words) Fails for the Same Reasons.*

Virginia's insulting words statute was originally enacted to prevent duels.  *Malone*, 2023 U.S. Dist. LEXIS 176018 at *19.  The statute is treated "the same as 'an action for slander or libel, for words actionable *per se*, with one exception, namely that no publication is necessary.'" *Id.* (quoting *Carwile*, 196 Va. at 1).  As such, defamation and insulting words claims "must ineluctably rise or fall together." *Potomac Valve & Fitting Inc. v. Crawford Fitting Co.*, 829 F.2d 1280, 1284 (4th Cir. 1987).

Defendants do not impute to Plaintiff any serious crime involving moral turpitude; nor that he has a contagious disease, nor that the is unfit to perform his duties, nor that prejudice him in his profession or trade.  Again, Defendants simply responded to Plaintiff's subpoenas, and accurately advised him of the existence of two CyberTipline reports using search terms selected

---

[3] *See also White v. Fraternal Order of Police*, 909 F.2d 512, 520 (D.C. Cir. 1990) (noting that "if a communication, viewed in its entire context, merely conveys materially true facts from which a defamatory inference can reasonably be drawn, the libel is not established.  But if the communication… supplies additional, affirmative evidence suggesting that the defendant *intends* or *endorses* the defamatory inference," the communication is actionable.) (emphasis in original).

by Plaintiff.  That fact is not actionable, any more than accurately stating that a person has been accused of a crime.

F.  *Plaintiff Has Failed to Allege Intentional Infliction of Emotional Distress.*

In Count III, Plaintiff alleges that NCMEC intentionally inflicted emotional distress on Plaintiff by responding to the subpoenas using the language instructed.  Plaintiff fails to plausibly state a claim as to Count III.

In order to establish intentional infliction of emotional distress under Virginia law, a plaintiff must show four elements of proof: (1) the conduct was intentional or reckless; (2) the conduct was "outrageous or intolerable;" (3) there was a casual connection between the conduct and the resulting emotional distress; and (4) the resulting emotional distress was severe.  *SuperValu, Inc. v. Johnson*, 276 Va. 356, 370 (2008); *Almy v. Grisham*, 273 Va. 68 (2007); *Young v. Wilson*, 2026 U.S. Dist. LEXIS 147023, *10 (E.D. Va. 2026) (quoting *Almy*).  "[O]nly where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community" can a claim survive.  *Young*, 2026 U.S. Dist. LEXIS at *10 (quoting *Russo v. White*, 241 Va. 23, 27 (1991)).  This is an exacting standard—as noted by the Virginia Supreme Court in *Russo v. White*, even if a defendant *intended* to inflict emotional distress, and acted in a fashion that could support an award of punitive damages for another tort, the conduct must still be utterly intolerable.  241 Va. 23, 27 (1991).

Plaintiff cannot plausibly claim that the conduct was intentional or reckless.  Plaintiff sent subpoenas to NCMEC, and NCMEC responded *precisely as instructed.*  That is not reckless; and Plaintiff's theory that the conduct was intentional requires a tortured journey through conclusory allegations that are unsupported by any factual allegations (as discussed *infra* under the

12

"outrageous" element).  Regardless of Plaintiff's alleged response to the letters, the Complaint does not plausibly allege that the act of responding to the subpoenas, in the matter requested by Plaintiff, is outrageous in character, utterly intolerable in a civilized community, *etc.*

Plaintiff's theory for intentionality, or outrageousness, appears to be as follows: in September of 2025, Plaintiff filed a complaint in federal court in the Northern District of California in which, in a footnote, he advised that he was a survivor of childhood sexual abuse. FAC at ¶ 41.  NCMEC, in turn, is alleged to have "either" reviewed the Northen District of California complaint or received the complaint from another source, and thus knew that Plaintiff was a victim of childhood sexual abuse.  *Id.* at ¶ 61.  Additionally, NCMEC either reviewed the Northern District of California complaint or received the complaint from another source, prior to transmitting the allegedly-defamatory letters.  *Id.* at ¶¶ 60, 61.[4]  No facts, whatsoever, are provided to establish these allegations; they are simply what Plaintiff imagines happened, or what he hopes occurred in order to better position potential claims.  However, that conclusory and imaginary chain of events is what Plaintiff deems shows that sending the letters was outrageous.  As the Court is not bound by conclusory allegations, there is *nothing* in the FAC to provide so much as a hint of an inference that NCMEC, in responding to the subpoenas, acted in a manner that was "intolerable in a civilized community."

While it is not clear from the FAC, Plaintiff may attempt to argue that the "content defects" in the April 22, 2026 subpoena responses show intent, or outrageous conduct beyond all possible bounds of decency.  However, each identified "content defect" tracks Plaintiff's subpoena exactly.  For example, Plaintiff complains that the letters "did not identify any report

---

[4] Plaintiff offers no facts explaining why NCMEC, in responding to a subpoena, would have found it necessary to carefully review the pleadings in the matter in order to respond to what seemed to be two simple subpoenas.

13

number, report date, or reporting electronic provider." FAC at ¶ 91. That is true—likely because Plaintiff instructed as much in the subpoenas. *See, e.g.,* Ex. A at Schedule A, exclusion (f) (prohibiting the production of "any material beyond what is necessary to show the existence or nonexistence of a CyberTipline report, referral, or submission." Plaintiff complains that the letters "linked Plaintiff's three identifiers in the disjunctive using 'and/or'…" FAC at ¶ 93. That again is true—because Plaintiff's subpoenas linked the identifiers using "and/or." Ex. A at Schedule A.

G. *Plaintiff's Conspiracy Claims are Void of Any Factual Support.*

Finally, Plaintiff has two conspiracy claims. Count IV alleges a conspiracy by all defendants to intimidate him from participating in/testifying in federal court in violation of 42 U.S.C. § 1985(2), while Count V alleges common-law conspiracy to cause Plaintiff "presumed damages, humiliation, embarrassment," *etc.* Both counts are predicated exclusively on conclusory allegations, with no factual support whatsoever, and should be dismissed as such.

Where a conspiracy is alleged, a plaintiff "must plead facts amounting to more than 'parallel conduct and a bare assertion of conspiracy… Without more, parallel conduct does not suggest conspiracy, and a conclusory allegation of agreement at some unidentified point does not supply facts adequate to show illegality." *A Society Without a Name, for People Without a Home, Millenium Future-Present v. Virginia*, 655 F.3d 342, *346 (4th Cir. 2011), *cert. denied,* 2012 U.S. LEXIS 3028 (U.S. 2012) (quoting *Twombly*, 550 U.S. at 556-57). Put another way, "[t]he factual allegations must plausibly suggest agreement, rather than being merely consistent with agreement." *Society Without a Name*, 655 F.3d at 346. "Indeed, we have specifically rejected section 1985 claims whenever the purported conspiracy is alleged in a merely conclusory manner, in the absence of concrete supporting facts." *Simmons v. Poe*, 47 F.3d 1370,

14

1377 (4th Cir. 1995); *Davidson v. Whitbeck*, 2026 U.S. Dist. LEXIS 58977, *18 (E.D. Va. 2026) (dismissing § 1985 conspiracy claim predicated on "conclusory assertions of conspiracy unsupported by factual allegations").

Here, Plaintiff's claimed conspiracy is entirely conclusory. Plaintiff alleges that at some point between April 9 and April 22, Defendant Meta Platforms, Inc. and Defendant Hall "reached an understanding that Hall would issue correspondence asserting the existence of CyberTipline reports associated with one or more of Plaintiff's identifiers before service of the intended subpoenas and while motions directed at the same discovery remained pending." FAC at ¶ 124. Plaintiff's support is exceedingly difficult to logically follow, but it seems as though Plaintiff concludes that an agreement must have been reached for a variety of reasons, including that NCMEC did not await formal service before responding to the subpoenas, provided separate responses (one for each subpoena), and because "depositions covering the report-existence question were imminent," *etc*. *See, e.g., id.* at ¶¶ 126-134. Such allegations are conclusory, and do not provide an inference, much less a logical conclusion, that an agreement existed with a common goal to intimidate Plaintiff. Plaintiff sent NCMEC subpoenas, NCMEC responded without awaiting formal service. It cannot be said that a logical conclusion follows that NCMEC and Meta Platforms, Inc. must have had a secret conspiracy to humiliate Plaintiff or intimidate him from testifying.

The same rationale applies to the common-law conspiracy claim. Under Virginia state law, conclusory or general allegations of conspiracy are insufficient to withstand a motion to dismiss. *Firestone v. Wiley*, 485 F. Supp. 2d 694, 703 (E.D. Va. 2007) (internal citations omitted). It is not enough to merely state that a conspiracy took place. *Id.* "… Virginia requires a plaintiff to allege 'some details of time and place and the alleged effect of the conspiracy.'" *Id.*

15

at 704; *Chipper Pro, LLC v. Bandit Indus.*, 616 F. Supp. 3d 525, 537 (W.D. Va. 2022) (same). Plaintiff has not alleged sufficient facts to plausibly assert the existence of a conspiracy; rather, Plaintiff has effectively hypothesized that such a conspiracy existed, based on illogical reasoning, such as (as noted above) that NCMEC did not require formal service of the subpoenas to respond, and responded exactly as instructed. At best, these allegations are parallelism, twisted to imply some sort of concerted action, and the Complaint fails to state a claim upon which relief may be granted as to the alleged conspiracy counts.[5]

Finally, Plaintiff's common law conspiracy fails if Plaintiff cannot establish that an underlying tort was committed. *See Almy v. Grisham*, 273 Va. 68, 80 (2007).

IV.    CONCLUSION

For the reasons set forth above, Defendant NCMEC respectfully submits that dismissal is necessary and appropriate in this matter. Counts I, II, III, and VI are barred by litigation privilege; Counts I, II, and V are barred by NCMEC's statutory privilege; Counts I, II, and VI are barred, as Plaintiff fails to plausibly allege that the allegedly-defamatory language is not true, and takes an indefensible position as to how the language represents defamation by imputation; Count III fails, as Plaintiff falls well short of the requisite standard for pleading intentional infliction of emotional distress; and Counts IV and V are barred because the Complaint fails to set forth any facts on which to establish the existence of any conspiracy.

At its core, this is a simple case. Plaintiff sent subpoenas to NCMEC; NCMEC responded, without waiting for formal service, in precisely the manner instructed, and using precisely the language instructed. Perhaps Plaintiff anticipated that NCMEC would respond that no such reports were received, and Plaintiff now regrets sending the subpoena/phrasing the

---

[5] While not relevant to the Court's determination of a Motion to Dismiss, NCMEC denies any conspiracy or even coordination with the alleged co-conspirators.

16

subpoenas as he did.  That regret is not a basis for liability on the part of NCMEC, and the matter should be dismissed.  Further, given that Plaintiff previously filed, and voluntarily dismissed, a highly-similar complaint, has already amended his Complaint in this action once, and given that amendment would be futile, NCMEC respectfully requests that dismissal be with prejudice, and Plaintiff not be granted leave to amend.

Respectfully submitted,

JORDAN COYNE LLP

 /s/ *Padraic K. Keane*
10201 Fairfax Boulevard, Suite 520
Fairfax, VA 22030
(703) 246-0900
Fax: (703) 591-3673
p.keane@jocs-law.com
*Counsel for Defendant the National Center*
*For Missing and Exploited Children*