FILED
8/20/2026
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VA

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

MARVELLE J. BALLENTINE,

*Plaintiff,*

v.

Case No. 1:26-cv-02331-RDA-IDD
The Honorable Judge
Rossie D. Alston Jr.

KATIE HALL, individually;
NATIONAL CENTER FOR MISSING & EXPLOITED CHILDREN;
META PLATFORMS, INC.;
and JOHN/JANE DOES 1–6,

*Defendants.*

# PLAINTIFF'S PROTECTIVE OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANT NATIONAL CENTER FOR MISSING & EXPLOITED CHILDREN

Plaintiff Marvelle J. Ballentine files this opposition protectively: it demonstrates that the First Amended Complaint ("FAC") states its claims on the facts already pleaded, without awaiting, and without prejudice to, Plaintiff's forthcoming motion for leave to file a supplemental pleading under Rule 15(d). Citations to "Mem." refer to NCMEC's August 12, 2026 Memorandum in Support.

## I. INTRODUCTION

"You got exactly what you asked for."

Counsel for the National Center for Missing & Exploited Children wrote those words to Plaintiff on August 13, 2026. That same day, Plaintiff had asked three closed questions: whether

the two CyberTipline reports NCMEC invoked identified him by his legal name, by the name he uses, or by an email identifier. Counsel answered none of them. What counsel wrote instead went to a Plaintiff whose pleaded injuries NCMEC had recited in its own memorandum one day earlier.

The refusal matters because it is the motion. NCMEC's April 22 letters stated that two CyberTipline reports concerned "Marvelle J. Ballentine," "Jay Ballentine," "and/or" an email identifier. NCMEC's motion says less. It tells the Court the reports may be linked to Plaintiff, "a person with the same name," or an email address—while emphasizing that Plaintiff "does not have access to those reports." NCMEC holds the records that resolve that ambiguity. NCMEC declines to resolve it. NCMEC now asks the Court to convert Plaintiff's lack of access to NCMEC's own records into dismissal with prejudice.

The same posture appears on the other coast. In Plaintiff's California action, Meta Platforms, Inc. filed a motion the same day invoking its child-safety enforcement policy while omitting that Meta is a named and served defendant here under the first clause of 42 U.S.C. § 1985(2). Meta cites this case but omits its role in it. NCMEC invokes the reports but will not say whom they concern. Each defendant claims the protection of the same child-safety apparatus. Neither will answer the identity question their own positions have made dispositive.

*The answer NCMEC will not give is the answer its truth argument requires.* Without it, the motion reduces to one question: whether the First Amended Complaint states claims on the facts actually pleaded. It does. The motion should be denied.

## II. ISSUES TO BE DECIDED

1. NCMEC asks the Court to dismiss this case on litigation privilege and statutory immunity. Those defenses depend on facts. May NCMEC obtain dismissal under Rule 12(b)(6)

when the First Amended Complaint does not establish the predicates those defenses require — and pleads facts bringing the April 22, 2026 letters within the statutory exceptions?

2. NCMEC says its letters were true. May NCMEC establish truth at the pleading stage with the letters alone, when the Complaint pleads that their imputation is false and the letters never identify which person or identifier either report concerns?

3. Do the pleaded facts — what the letters said, the CyberTipline context in which they said it, when they issued, to whom they went, and what came before them — plausibly state Plaintiff's claims for defamation, intentional infliction of emotional distress, and conspiracy?

## III. LEGAL STANDARD

A motion under Rule 12(b)(6) tests the legal sufficiency of the complaint. The Court accepts well-pleaded factual allegations as true, draws all reasonable inferences in Plaintiff's favor, and does not resolve disputed facts. *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011).

An affirmative defense ordinarily cannot be resolved on a Rule 12(b)(6) motion. The exception is rare, and it exists only when all facts necessary to establish the defense clearly appear on the face of the complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). This Court applied that rule in *SkyBell Technologies, Inc. v. Alarm.com, Inc.*, No. 1:25-cv-01105-RDA-WBP (E.D. Va. Mar. 4, 2026), ECF No. 32, declining to resolve a defense that turned on facts the pleadings did not settle.

## IV. ARGUMENT

### A. NCMEC Cannot Establish Privilege, Statutory Immunity, or Truth on This Pleading.

NCMEC's first three arguments share one structure: each asks the Court to adopt a predicate that the Rule 12 record does not establish. The subsections below identify each predicate in turn.

**1. Litigation Privilege**

Virginia's absolute judicial privilege reaches some communications made outside the courtroom and can reach qualifying communications preliminary to contemplated litigation. *Mansfield v. Bernabei*, 284 Va. 116, 727 S.E.2d 69 (2012). A court in this district has resolved the privilege at the pleading stage. *Daniczek v. Spencer*, 156 F. Supp. 3d 739 (E.D. Va. 2016). The question is whether, accepting the FAC's facts as true, Virginia law establishes that these particular communications fall within the absolute privilege. It does not.

NCMEC acknowledges that its counsel has identified no clear holding of the Fourth Circuit or its member districts extending absolute privilege to subpoena responses. Mem. at 5. And on the pleaded facts, the letters were not part of compelled judicial process: no subpoena had been served, no court order required a response, Plaintiff had not waived service or requested an early answer, and the announced notice period had not run. FAC ¶¶ 71, 73. The letters were voluntary correspondence sent to Plaintiff alone, filed with no tribunal, and copied to no counsel of record, FAC ¶ 78; each opened by invoking compulsory force that did not then exist, FAC ¶ 70; and each issued while motions directed at the same discovery remained pending, FAC ¶ 72. The FAC predicates no liability on any court filing. FAC ¶ 25. The absence of service matters not because service is an element of the privilege, but because it separates these letters from compelled judicial process — and from the subpoena-response authorities NCMEC assembles from other jurisdictions.

NCMEC answers with waiver: recipients may respond to a subpoena without formal service, and a failure to serve "is not a prohibition against response." Mem. at 6. That answers a different question. Permission to respond is not the question. Absolute immunity from tort liability is. The proposition that NCMEC was free to volunteer information does not establish the separate proposition that Virginia law makes the resulting communication absolutely privileged. On the pleaded facts, and on the authority NCMEC itself describes, the privilege is not established.

**2. Statutory Immunity**

Immunity under 18 U.S.C. § 2258D is qualified, as NCMEC's own Memorandum recognizes. Mem. at 7. It reaches claims arising from the performance of CyberTipline responsibilities or functions, and it yields to exceptions for intentional misconduct; for actual malice or reckless disregard of a substantial risk of causing injury without legal justification; for action taken for a purpose unrelated to the specified statutory functions; and for ordinary business activity. 18 U.S.C. § 2258D(a)–(c).

The FAC does not concede the predicate. It pleads that neither letter was a CyberTipline report, a referral or disclosure to law enforcement, or any reporting, preservation, or disclosure function described in 18 U.S.C. §§ 2258A–2258C — that the challenged act was voluntary legal correspondence issued without any served subpoena or court order. FAC ¶ 79. It pleads, in the alternative, facts within the statutory exceptions: a knowingly false invocation of compulsory process, issuance without obligation of any kind, wording Hall selected and controlled, and timing keyed to pending motions and imminent depositions. FAC ¶¶ 70–74, 79, 85–86.

The sequence matters. NCMEC must show that the challenged conduct falls within the protected statutory function. The FAC pleads facts distinguishing that function from the correspondence at issue and pleads exception facts in the alternative. NCMEC's contrary

characterization requires the Court to choose NCMEC's version of the letters over the version pleaded. *Goodman* forecloses that choice. The Court need not classify the conduct now. It need only decline to accept NCMEC's classification as fact.

Immunity under 34 U.S.C. § 20505 is worded differently and must be answered on its own terms. It bars specified reputational claims arising from actions or communications "in connection with" a clearinghouse, hotline, or complaint intake or forwarding program, unless the plaintiff shows actual malice or that the information or action was provided or taken for a purpose unrelated to an activity mandated by federal law. 34 U.S.C. § 20505. It contains no ordinary-business exception and no separately stated reckless-disregard exception. The FAC pleads facts within both of the exceptions it does contain. It alleges actual malice: Hall invoked a subpoena that had not been served and that compelled nothing, and she selected wording associating Plaintiff personally with the reports although the identifiers were supplied by Plaintiff, linked disjunctively, and accompanied by no report-specific match or disambiguation. FAC ¶¶ 85, 191–192. And it alleges a purpose unrelated to any activity mandated by federal law: the letters implemented no reporting, referral, preservation, or disclosure function, and their alleged purpose was to deter Plaintiff from attending and testifying in the two federal actions. FAC ¶¶ 79, 156, 162. On those allegations, § 20505, like § 2258D, is not established on the face of the pleading.

**3. Truth**

NCMEC reframes the falsity alleged. The FAC does not depend on proving that NCMEC possessed no records responsive to any one of three search terms. It alleges that NCMEC falsely published a person-level association between Plaintiff and child-exploitation reports. FAC ¶¶ 99–101, 189, 210.

The letters stated that NCMEC had received two CyberTipline reports "concerning" Plaintiff's legal name, the name he uses, "and/or" an email identifier. They did not identify which listed identifier corresponded to either report. FAC ¶ 92. They did not state whether any identifier appeared in a provider-submitted report or was instead drawn from Plaintiff's own April 9 materials. FAC ¶¶ 77, 95. They did not state that the three identifiers describe one person, and "Jay Ballentine" is not alleged to be unique. FAC ¶¶ 94, 96. The FAC pleads that the personal imputation each letter conveyed is false. FAC ¶ 101.

At this stage, the Court credits a pleaded allegation of falsity unless it is conclusory or contradicted by a document properly before the Court. *See Dangerfield v. WAVY Broadcasting, LLC*, 228 F. Supp. 3d 696, 701–02 (E.D. Va. 2017). No underlying CyberTipline report is before the Court. The April 9 materials NCMEC attaches establish what Plaintiff asked; the April 22 letters establish what NCMEC published; neither establishes which person or identifier actually appears in either source report. And *Goines* forecloses the use NCMEC makes of the letters. Consideration of a document at Rule 12 does not mean the plaintiff adopts the truth of its contents — a rule that exists precisely because treating every attached writing as true would let the allegedly libelous publication plead the plaintiff out of court. *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 167–69 (4th Cir. 2016). The letters establish what NCMEC published. They do not establish that what NCMEC published was true. NCMEC's own Memorandum states that Plaintiff "does not have access to those reports" while describing the possible referent as Plaintiff, "a person with the same name," or an email address. Mem. at 9. The truth theory presents a disputed factual predicate, not a basis for Rule 12 dismissal.

### B. The Pleaded Words and Context State Defamation and Insulting-Words Claims.

The letters state:

> "NCMEC has received two (2) CyberTipline reports concerning (1) Marvelle J. Ballentine, (2) Jay Ballentine, and/or (3) the account-level identifier jaychizza@icloud.com between July 1, 2022 and the present."

The question is whether those words, read in the pleaded context, are reasonably capable of the meaning the FAC alleges. The FAC supplies that context. Reports to the CyberTipline concern apparent violations of enumerated federal child-exploitation statutes. FAC ¶¶ 97–98. The statement says the reports are "concerning" the listed names and identifier; it does not say that a search of records produced results. Plaintiff's full legal name appears first on the list. The disjunctive "and/or" never identifies the actual match, and nothing in either letter separates Plaintiff from the reports or attributes them to a different person. FAC ¶¶ 92, 95–96. The FAC pleads the resulting imputation and its falsity. FAC ¶¶ 99–101.

*Dangerfield* does not carry the weight NCMEC assigns it. There, the court could determine what the words "accused of rape" communicated, and the incorporated warrant materials showed that the accusation had in fact been made. 228 F. Supp. 3d at 701–02. Here, NCMEC's own Memorandum preserves the ambiguity the letters created, describing the referent as Plaintiff, a person with the same name, or an email address. Mem. at 9. That ambiguity does not itself establish liability. It defeats NCMEC's contention that the publication is incapable, as a matter of law, of the pleaded implication. As to authorial intent, the FAC alleges that Hall selected the wording; that she invoked a subpoena as the basis for the response when that subpoena had not been served and compliance had not been compelled; and that the identifiers were supplied by Plaintiff, linked disjunctively, and accompanied by no report-specific match or disambiguation — circumstances from which intent to convey the implication is inferred. FAC ¶¶ 85, 191–192, 212–213.

Count VI requires little more. NCMEC argues that the insulting-words claim rises or falls with the defamation theory. Mem. at 11. Accepting that premise for purposes of this Motion, the conclusion follows: because NCMEC has not established that the defamation theory fails, its derivative argument against Count VI fails with it.

### C. Count III Plausibly Alleges Intentional Infliction of Emotional Distress.

NCMEC reduces Count III to the act of "responding to the subpoenas." Mem. at 12. Rule 12 requires the Court to evaluate the conduct actually pleaded, and the FAC pleads a combination of circumstances, not a subpoena response.

Hall was NCMEC's Corporate Counsel. FAC ¶ 80. The FAC alleges that she understood the criminal and law-enforcement significance of associating a named individual with CyberTipline reports, FAC ¶¶ 61, 224; that before the letters issued she had reviewed, or received from participants in the two actions, materials disclosing that Plaintiff is a survivor of childhood sexual abuse who had already been injured by association with the language of child exploitation, FAC ¶¶ 39–45, 60, 225; and that she possessed the case-specific materials identifying the two actions, the identifiers, and the discovery at issue, FAC ¶¶ 59, 87. On that footing, the FAC alleges, Hall issued two case-keyed letters with no subpoena served, no waiver, no court order, and no request for an early answer — one day after motions directed at the same discovery and before any ruling on them — transmitted to Plaintiff alone, opening with a false invocation of compulsory process, and substituting an unsworn, source-free assertion for the sworn examination then days away. FAC ¶¶ 68, 70–73, 76, 78, 226.

The distress pleaded is concrete. Upon reading the letters, Plaintiff vomited, experienced recurrent involuntary recollections of his own childhood sexual abuse, lived in acute fear of imminent arrest and prosecution, distanced himself from his own children because he expected to

be taken into custody by law enforcement, could not maintain ordinary sleep or eating, could not sustain attention on litigation materials, and refrained from dismissing his two federal actions only by deliberate effort. FAC ¶¶ 171–173, 229, 231. That exceeds a bare assertion of severe distress.

Virginia confines this tort to conduct that is outrageous and intolerable, and the standard is not satisfied lightly. *SuperValu, Inc. v. Johnson*, 276 Va. 356, 370 (2008). But whether the pleaded combination — directing at a disclosed survivor of childhood sexual abuse a false, source-unidentified assertion tying his name to child-exploitation reporting, under color of compulsory force that did not then exist, timed to the same discovery then pending — crosses that threshold is answered on the allegations as pleaded, taken together, not on NCMEC's shortened description of them. FAC ¶¶ 226–227. Count III states a claim.

### D. The Conspiracy Counts Plead Agreement Through Particular Facts, Not Labels.

The rule NCMEC cites is not in dispute: parallel conduct plus a bare assertion of agreement does not state a conspiracy claim. *A Soc'y Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011). That rule does not describe this pleading.

The FAC alleges particulars. As of April 9, 2026, NCMEC and counsel for Meta and Accenture had received identical case-specific materials identifying the same two federal actions, the same three identifiers, and the same discovery objective. FAC ¶¶ 57–58, 124. On April 21, the defendants in those actions moved to stop the identified discovery. FAC ¶¶ 63–67, 125. Depositions covering the report-existence question were noticed for April 28 through April 30. FAC ¶¶ 50–52, 126. On April 22 — under no compulsion of any kind — Hall issued two separate letters, each keyed by caption and case number to one of the two actions, before service, before the requested ruling dates, and before the depositions. FAC ¶¶ 68, 127–129. The letters supplied,

outside the discovery process, an unsworn and source-free assertion on the exact question scheduled for sworn examination. FAC ¶¶ 131, 133. And the identities and communications that would establish the details of the agreement rest in Defendants' records, not Plaintiff's. FAC ¶ 134.

These allegations do not prove agreement, and at this stage they need not. They are concrete circumstances from which agreement may plausibly be inferred. NCMEC's argument asks the Court to select NCMEC's innocent explanation over the inference Rule 12 requires the Court to draw in Plaintiff's favor.

The FAC also pleads the statutory object of Count IV. It alleges that the purpose of the agreement was to deter Plaintiff, by intimidation, from continuing to attend the two federal actions as a party and from testifying freely, fully, and truthfully as a prospective witness in them, with the April 22, 2026 letters as the means. FAC ¶¶ 156–157, 162, 235.

The common-law count follows. The FAC pleads combination, underlying tortious conduct, overt acts, time and sequence, purpose, and resulting injury. FAC ¶¶ 156, 163–166, 243–248. Because the underlying defamation claims survive this Motion, NCMEC cannot obtain dismissal of Count V by declaring the alleged agreement implausible. *See Almy v. Grisham*, 273 Va. 68, 80 (2007).

**E. Dismissal With Prejudice Would Be Unwarranted.**

NCMEC requests dismissal with prejudice, citing the prior action and the single amendment here. Mem. at 17. The prior action ended in a voluntary dismissal without any merits adjudication. The present FAC reflects one amendment, not repeated failures to cure deficiencies identified by any court. NCMEC's claim that amendment would be futile depends on the same Rule 12 arguments addressed above. If the Court were to identify a curable deficiency, dismissal with prejudice would require a recognized basis under Rule 15 — such as repeated failure to cure

by amendments previously allowed — that this record does not present. *Foman v. Davis*, 371 U.S. 178, 182 (1962).

## V. CONCLUSION

The Motion should be denied. In the alternative, any dismissal should be without prejudice and with leave to amend.

Date: August 20, 2026

Respectfully submitted,

Marvelle J. Ballentine
*Plaintiff, pro se*
1520 Belle View Blvd, Ste. #5847
Alexandria, Virginia 22307
(407) 794-6503
jayballentine@protonmail.com

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 83.1(N)**

Pursuant to Local Civil Rule 83.1(N), I declare under penalty of perjury that no attorney has prepared, or assisted in the preparation of, the foregoing Plaintiff's Opposition to the Motion to Dismiss of Defendant National Center for Missing & Exploited Children.

Name of Pro Se Litigant: Marvelle J. Ballentine

Signature of Pro Se Litigant

Executed on: August 20, 2026

**CERTIFICATE OF SERVICE**

I certify that on August 20, 2026, I submitted the foregoing Plaintiff's Opposition to the Motion to Dismiss of Defendant National Center for Missing & Exploited Children, which contains the certification required by Local Civil Rule 83.1(N), to the Clerk of Court through the Court's Electronic Document Submission System for docketing on CM/ECF. Upon docketing, counsel for Defendant National Center for Missing & Exploited Children will receive notice through the Court's CM/ECF system. Pursuant to Federal Rules of Civil Procedure 5(a)(1) and 5(b)(2)(C), I served a true and correct copy of the foregoing by first-class mail, postage prepaid, addressed as follows: Katie Hall, c/o National Center for Missing & Exploited Children, 333 John Carlyle Street, Suite 125, Alexandria, Virginia 22314; and Meta Platforms, Inc., c/o CSC - Lawyers Incorporating Service, 2710 Gateway Oaks Drive, Suite 150N, Sacramento, California 95833.

Marvelle J. Ballentine