FILED
8/23/2026
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VA

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

MARVELLE J. BALLENTINE,

*Plaintiff,*

v.

Case No. 1:26-cv-02331-RDA-IDD
The Honorable Judge
Rossie D. Alston Jr.

KATIE HALL, individually;
NATIONAL CENTER FOR MISSING & EXPLOITED CHILDREN;
META PLATFORMS, INC.;
and JOHN/JANE DOES 1–6,

*Defendants.*

**PLAINTIFF'S PROTECTIVE OPPOSITION TO THE MOTION TO DISMISS OF DEFENDANT META PLATFORMS, INC.**

Plaintiff Marvelle J. Ballentine files this opposition protectively: it demonstrates that the First Amended Complaint ("FAC") states its claims on the facts already pleaded, without awaiting, and without prejudice to, Plaintiff's forthcoming motion for leave to file a supplemental pleading under Rule 15(d). This opposition responds to the Motion to Dismiss of Defendant Meta Platforms, Inc. (ECF Nos. 21, 22).

## I. INTRODUCTION

Meta's memorandum recounts in detail the dockets of actions spanning three Circuits. It omits one filing. On August 13, 2026, Meta told the United States District Court for the Northern District of California that this action is one against NCMEC and its corporate counsel. Meta was then a named defendant in this action. It had been served on July 31. A conspiracy claim under 42

U.S.C. § 1985(2), arising from the same CyberTipline dispute, was pending against it. Meta disclosed none of that to the California court.

Eight days later, Meta moved to dismiss, asserting that NCMEC gave Plaintiff "exactly what he asked for." The sentence is not new. On August 13, 2026, Plaintiff put three questions to NCMEC's counsel: whether the two CyberTipline reports identify him by his legal name, by the name he uses, or by an email identifier. Counsel answered none of them. Counsel's reply ended instead with the sentence Meta now repeats: "You got exactly what you asked for." ECF No. 16-1. The sentence did not answer the question then. It does not answer the question now. Meta's own memorandum recounts that the letters identified no reporting provider, connected neither report to Plaintiff's Facebook account, and connected neither report to the July 2022 enforcement. The memorandum Meta adopts concedes more: the reports may concern Plaintiff, "a person with the same name," or an e-mail address, and the records that would resolve the question are records Plaintiff "does not have access to." ECF No. 11 at 9. What Plaintiff asked is not the question. Whom the reports concern is the question.

Each Defendant has answered for the other instead. NCMEC supplied Meta's legal defense before Meta appeared. Meta now supplies NCMEC's factual explanation after it did. Before Meta was named a defendant, NCMEC's counsel told the court in the prior action that the proposed claims against Meta would fail. No. 1:26-cv-01341, ECF No. 20. Meta's memorandum here calls the letters courtesy and states that NCMEC used the two weeks before issuing them to review the request and "collect responsive information." NCMEC's own memorandum gives no such account. It says NCMEC responded "precisely as requested, mirroring the language utilized by Plaintiff," and "without awaiting formal service." Mirroring a request is not collecting information. Neither Defendant has answered the question. Either could end it by producing the reports it holds.

Meta's motion offers arguments in place of the answer. They are of two kinds. The first kind asks the Court to find facts: that Meta acted independently, that the timing was coincidence, that the letters were responsive. The first two propositions turn on facts in Defendants' exclusive possession—who participated, what Meta and NCMEC communicated, and what occurred during the interval before the letters issued. The third requires Meta's characterization of the letters to prevail over the FAC's contrary allegation. The second kind asks the Court to weigh facts: to take the docket history Meta recounts across three Circuits and measure it against Plaintiff's pleaded injury. Rule 12(b)(6) permits neither. The First Amended Complaint pleads the agreement, its object, and the resulting injury through particular facts. That is what the Rule requires, and it is all the Rule requires. The motion should be denied.

## II. ISSUES TO BE DECIDED

1. Whether Meta may obtain dismissal under Rule 12(b)(6) by substituting factual characterizations for the allegations actually pleaded in the First Amended Complaint.

2. Whether the specific circumstantial facts pleaded in Section N of the First Amended Complaint plausibly suggest an agreement among Meta, Hall, and NCMEC.

3. Whether the First Amended Complaint plausibly alleges intimidation and injury under the first clause of 42 U.S.C. § 1985(2).

4. Whether Count V plausibly alleges Virginia common-law conspiracy through an agreement, unlawful predicate conduct, concerted action, and resulting damage.

## III. LEGAL STANDARD

Rule 12(b)(6) tests the legal sufficiency of the complaint. The Court accepts well-pleaded factual allegations as true, views the complaint in the light most favorable to the plaintiff, and draws reasonable inferences in the plaintiff's favor. *E.I. du Pont de Nemours & Co. v. Kolon*

*Industries, Inc.*, 637 F.3d 435, 440 (4th Cir. 2011); *King v. Rubenstein*, 825 F.3d 206, 212, 214 (4th Cir. 2016). Ordinarily, the Court's review is limited to the complaint and documents attached to or incorporated into it. *Goines v. Valley Community Services Board*, 822 F.3d 159, 165–66 (4th Cir. 2016).

A complaint must contain factual content permitting the reasonable inference that the defendant is liable. Plausibility requires more than a sheer possibility of liability, but it is not a probability requirement. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A well-pleaded claim may proceed even when actual proof appears improbable. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The standard does not impose an evidentiary burden at the pleading stage.

Rule 12 does not permit the Court to select a defendant's preferred factual explanation merely because it may appear more probable than the inference pleaded. *Woods v. City of Greensboro*, 855 F.3d 639, 648–49 (4th Cir. 2017). Nor do defendant-authored factual assertions become true merely because a document may properly be considered; the Court may recognize that an assertion was made without accepting its truth. *Goines*, 822 F.3d at 166–67. The motion must therefore be tested against the FAC actually pleaded, with reasonable competing inferences resolved in Plaintiff's favor at this stage. *King*, 825 F.3d at 214; *Woods*, 855 F.3d at 648–49.

## IV. META'S MOTION DEPENDS ON FACTUAL PROPOSITIONS THE FAC DOES NOT PLEAD

Meta's memorandum supplies six factual propositions the FAC does not plead. Assertions in a memorandum are not pleaded facts, and a defendant-authored document considered at Rule 12 does not make the defendant's assertions true. *Goines*, 822 F.3d at 166–67. This section identifies each proposition and the portion of the motion that depends upon it.

### A. Meta requires the April 9 transmission to be both advance notice and an operative request

Meta's memorandum describes the April 9 transmission accurately when nothing turns on it. The transmission is "a notice of intended subpoenas." ECF No. 22 at 1. The enclosures are "proposed subpoenas." *Id.* The filing announcing it is a "Notice of Intent to Serve Subpoena." *Id.* at 4. The FAC paragraph Meta quotes is captioned "Advanced Notice of Intended Subpoenas." *Id.* at 6 (quoting FAC ¶ 55).

The description changes when the intimidation argument needs it to. There, Plaintiff "sent" NCMEC "subpoenas," and NCMEC "responded to subpoenas that he sent them." *Id.* at 11.

The FAC is explicit. The April 9 letter was captioned "Advanced Notice of Intended Subpoenas—Two Separate Matters"; Schedule A described the document to be produced after formal service; the transmission imposed no compulsory obligation; and Plaintiff "did not request or authorize a response before formal service, did not waive service, and did not authorize NCMEC or Hall to treat the advance notice as a served subpoena." FAC ¶¶ 55–57.

Meta therefore assigns one transmission two incompatible functions. The transmission is advance notice when voluntariness supports "courtesy." The same transmission is an operative request when responsiveness supports "exactly what he asked for." A notice that service will occur later and a request for performance now are different acts. The FAC pleads the first. Meta's argument requires the second. Meta's own qualifier concedes the gap: the response came, Meta writes, "albeit allegedly prematurely." ECF No. 22 at 11. The formal service Meta elsewhere acknowledges had not occurred. Whatever license NCMEC may claim to have volunteered correspondence, permission to respond is not a request for a response. Meta's recharacterization

cannot replace the FAC's allegations at Rule 12. *King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016); *Goines*, 822 F.3d at 166–67.

**B. "Exactly what he asked for" is not an admission contained in the FAC**

Meta describes FAC ¶ 77 as "admitting that NCMEC provided two letters that provided exactly that information." ECF No. 22 at 11. Paragraph 77 expressly alleges that the April 22 letter "did not produce the document that Schedule A described" and instead "substituted an assertion." FAC ¶ 77. Paragraph 78 alleges that the three identifiers stated in the letter "were quoted from Plaintiff's own April 9, 2026 notice." FAC ¶ 78. Schedule A had requested "a document sufficient to show whether" NCMEC maintained a report concerning the identified search criteria. FAC ¶ 56.

The FAC does not admit that the letters satisfied Schedule A. It expressly alleges the opposite. FAC ¶ 77. Meta calls paragraph 77 an admission that NCMEC supplied exactly what Plaintiff requested, but paragraph 77 expressly alleges non-production and substitution of an assertion. Repeating the three search identifiers identified in paragraph 78 is not producing the document requested. FAC ¶¶ 77–78. "Exactly that information" is Meta's factual equivalence, not Plaintiff's admission.

Meta's own Background recounts that the letters did not state that Meta submitted either report, that either report concerned Plaintiff's Facebook account, or that either report concerned the July 2022 enforcement. ECF No. 22 at 7 (reciting FAC ¶ 92). Those omissions leave the source, referent, and enforcement relationship unresolved. A court may recognize that a document contains an assertion without accepting the assertion as established truth. *Goines*, 822 F.3d at 166–67. The letters assert. Whom the asserted reports concern remains unanswered on Meta's own pages.

### C. Meta supplies a two-week "review" and "collection" process from no allegation at all

Meta's agreement argument explains the letters' timing this way: the thirteen-day interval was "a reasonable amount of time for NCMEC to review the subpoena's discrete request and collect responsive information." ECF No. 22 at 10.

Meta cites FAC ¶¶ 126 and 130. Paragraph 126 alleges common receipt of identical, case-specific materials as of April 9. Paragraph 130 alleges that Hall issued two separate, case-keyed instruments one day after the April 21 motions. Neither paragraph alleges that NCMEC conducted a review, collected responsive information, or performed any particular activity during the interval. Neither identifies when the decision to issue the letters was made or why April 22 was selected.

Meta's cited paragraphs establish the endpoints of the chronology. Meta supplies the activity allegedly occurring between them. That supplied account is Meta's innocent explanation for timing the FAC pleads as coordinated. A defendant's preferred explanation does not defeat a plausible competing inference merely because the defendant considers its explanation more probable. *Woods v. City of Greensboro*, 855 F.3d 639, 648–49 (4th Cir. 2017).

### D. Meta reduces Section N to "contradictory conduct" by removing most of Section N

Meta tells the Court that the FAC rests "solely" on contradictory actions, Meta's knowledge of the subpoenas, and NCMEC's knowledge of the two actions, from which the FAC "jumps to the conclusion" of agreement. ECF No. 22 at 9–10.

That is not Section N. The FAC alleges the agreement at paragraph 124 and introduces its factual support at paragraph 125. It then pleads nine numbered supporting circumstances: common receipt of identical case-specific materials, FAC ¶ 126; April 21 motions directed at the same

discovery, FAC ¶ 127; imminent sworn examinations, FAC ¶ 128; the absence of any compulsory obligation, FAC ¶ 129; two separate case-keyed letters the next day, FAC ¶ 130; issuance before the notice period expired, FAC ¶ 131; omission of source, report, identifier, platform, account, and disposition information, FAC ¶ 132; an unsworn and source-free substitution for the subject of imminent examination, FAC ¶ 133; and issuance while the motions remained pending, FAC ¶ 134. The FAC further alleges substitution for sworn examination, FAC ¶ 135; the location of the participants' communications in Defendants' records, FAC ¶ 136; and Hall's and NCMEC's knowing participation, FAC ¶¶ 137–138.

Meta may argue in due course that these facts prove no agreement. It may not compress the pleaded sequence into a few generalized propositions and then dismiss its own reconstruction as conclusory. The Rule 12 question is whether the facts plausibly suggest agreement. *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011).

**E. "Contradictory conduct" depends on a proposition already removed**

Meta's asserted contradiction is that Meta tried to stop the discovery while NCMEC provided it. ECF No. 22 at 9. The second half of that sentence is the premise removed in Section IV.B: that the letters supplied the discovery.

The FAC pleads a different relationship between the two acts. The depositions covering the report-existence question were imminent. FAC ¶ 128. The April 21 motions targeted that discovery. FAC ¶ 127. The next day, Hall issued two unsworn, source-free assertions concerning the same subject while omitting the source and referent information and exposing no witness to examination. FAC ¶¶ 130, 132–135. On those allegations, the letters did not deliver the discovery. They displaced it.

Independence and coordination are competing reasonable inferences from the pleaded sequence. Rule 12 does not permit selection of Meta's preferred inference merely because Meta considers it more probable. *Woods*, 855 F.3d at 648–49. Meta cannot establish independence by first characterizing the letters as the very discovery the FAC alleges they displaced.

### F. Meta converts later docket activity into proof of unimpaired participation

Meta asks the Court to notice filings made months later in other courts and to conclude that Plaintiff "continued to aggressively pursue both actions." ECF No. 22 at 12 & n.2. The noticed documents establish continued participation. The FAC pleads continued participation despite acute impairment, through deliberate effort, while performing identified litigation functions at materially diminished capacity. FAC ¶ 178. The documents therefore contradict nothing; they corroborate an allegation the FAC already makes.

Judicial notice of the existence of filings does not establish Plaintiff's functional capacity while making them. Judicially noticed materials must remain within the Rule 12 posture and may not be used to resolve disputed facts against the complaint. *Zak v. Chelsea Therapeutics International, Ltd.*, 780 F.3d 597, 607–08 (4th Cir. 2015). What the filings cannot establish—Plaintiff's condition and capacity while participating—is addressed in Section VII.

### G. The consequence is mechanical

Setting aside the propositions identified above removes the factual predicates on which Meta's arguments depend:

| Fact Meta asks the Court to assume | What the FAC actually alleges | What Meta uses the assumption to argue |
|---|---|---|
| **The April 9 materials were an operative subpoena or request.** | The April 9 transmission was advance notice of intended subpoenas. Formal service was to occur later, and no compulsory obligation then existed. | NCMEC was simply responding to an existing request, a premise Meta carries into its arguments concerning agreement, intimidation, and injury. |

| Fact Meta asks the Court to assume | What the FAC actually alleges | What Meta uses the assumption to argue |
|---|---|---|
| **Plaintiff asked NCMEC to respond immediately and voluntarily before service.** | Plaintiff did not request or authorize a response before formal service, waive service, or authorize NCMEC to treat the advance notice as a served subpoena. | The April 22 letters were a 'professional courtesy,' rather than conduct capable of constituting intimidation. |
| **NCMEC spent the thirteen-day interval reviewing the request and collecting responsive information.** | The FAC pleads the endpoints of the chronology, not what NCMEC did between them. It alleges receipt on April 9, the April 21 motions, and issuance of the letters on April 22. | The timing has an innocent, independent explanation rather than supporting an inference of coordination. |
| **The April 22 letters supplied exactly the information Plaintiff requested.** | The FAC alleges that the letters produced no requested document and instead substituted an assertion using Plaintiff's three search identifiers while leaving the source and referent unresolved. | Meta's effort to characterize the conduct as 'contradictory': Meta sought to stop discovery while NCMEC supposedly supplied that discovery. The same premise also supports Meta's intimidation and injury arguments. |
| **The April 22 correspondence was a professional courtesy.** | The FAC alleges unsolicited, pre-service, case-specific, unsworn, source-free letters issued one day after motions directed at the same discovery, while those motions remained pending. | The correspondence was benign rather than intimidating. |
| **Plaintiff's later court filings establish that he suffered no impairment.** | The FAC expressly alleges continued participation despite acute impairment, through deliberate effort and at materially diminished capacity. | Plaintiff suffered no cognizable deterrence or injury. |

Setting those propositions aside does not itself decide Counts IV and V. It identifies the arguments that must be tested against the FAC as actually pleaded. The remainder of this opposition conducts that test.

## V. THE FAC PLAUSIBLY ALLEGES AN AGREEMENT

### A. Meta's own Rule 12 authority supplies the governing standard

Meta's principal pleading-stage authority states the correct question. In *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011), the Fourth Circuit asked whether the factual allegations "plausibly suggest agreement, rather than being merely consistent with agreement," and held that a plaintiff must plead more than "parallel conduct and a bare assertion of conspiracy." The complaint there failed because it offered the conclusion of agreement with little factual matter beneath it.

The FAC is built differently. It does not stop at the word "agreement." It pleads the circumstances from which the agreement is inferred, the participants through whom it operated, the acts that implemented it, and the location of the direct evidence. FAC ¶¶ 124–138. Meta's lead case does not present a problem to escape. It supplies the test the FAC should be measured against, and Section V.E measures it.

**B. Twombly supplies the agreement-pleading burden**

The governing agreement burden is the Rule 8 plausibility standard identified in Section V.A through *A Society Without a Name v. Virginia*, 655 F.3d 342, 346 (4th Cir. 2011): the factual allegations must "plausibly suggest agreement, rather than being merely consistent with agreement."

*Twombly* itself involved pleading an alleged conspiracy and holds that plausible grounds to infer agreement do not impose a probability requirement; the complaint need contain enough factual matter to raise a reasonable expectation that discovery will reveal evidence of agreement. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). The FAC therefore must plausibly suggest agreement. It need not prove the agreement or possess Defendants’ internal communications before discovery.

**C. Meta's Simmons quotation describes summary judgment, not pleading**

Meta describes the agreement burden as "high" because the Fourth Circuit has "rarely, if ever, found that a plaintiff has set forth sufficient facts to establish a section 1985 conspiracy." ECF No. 22 at 9 (quoting *Simmons v. Poe*, 47 F.3d 1370, 1377 (4th Cir. 1995)). Meta omits the continuation: "such that the claim can withstand a summary judgment motion." *Simmons*, 47 F.3d at 1377. *Simmons* adjudicated a § 1985(3) conspiracy on summary judgment after development of an evidentiary record. Meta thus uses a statement about the sufficiency of proof at summary judgment to characterize the Rule 12 pleading burden as unusually high. That observation does not heighten Rule 8 or replace the plausibility standard. *Simmons* remains relevant to the existence of the agreement element and to proof of conspiracy; *A Society Without a Name* and *Twombly* supply the governing pleading standard at Rule 12.

**D. Direct evidence of a meeting of the minds is not required**

An agreement may be established through specific circumstantial facts; direct evidence of an express meeting of the minds is unnecessary. *Hinkle v. City of Clarksburg*, 81 F.3d 416, 421 (4th Cir. 1996). *Hinkle* too arose on summary judgment, and its formulation describes proof, not pleading. Its use here is correspondingly narrow: conspiracies are ordinarily shown circumstantially. The pleading question remains the one *A Society Without a Name* states.

**E. The FAC alleges considerably more than parallel conduct**

The pleaded inference rests on the relationship among the facts, and the facts group naturally.

Common information and a common objective. By April 9, NCMEC and counsel for Meta and Accenture held identical case-specific materials identifying the same two federal actions, the same three identifiers, and the same discovery objective. FAC ¶¶ 123, 126.

An imminent evidentiary event. Sworn examinations covering the report-existence question were noticed for April 28, 29, and 30, with that question a designated matter for examination. FAC ¶ 128.

Intervening acts. On April 21, motions issued against that discovery. On April 22—with no compulsory obligation, no ruling on the motions, and the announced notice period unexpired—Hall issued two letters, each keyed by caption and case number to one of the two actions. FAC ¶¶ 127, 129–131, 134.

The substitution. The letters asserted that two reports exist while omitting the reporting provider, report dates, report numbers, matched identifier, platform, account connection, and disposition. They supplied that assertion outside discovery, unsworn, with no witness exposed to examination concerning its source or basis. FAC ¶¶ 132–135.

That is not one event happening near another. It is a coordinated, case-specific sequence pleaded fact by fact—factual matter that plausibly suggests agreement rather than merely coexisting with it.

**F. Meta's alternative explanation cannot be selected because Meta prefers it**

What remains of Meta's agreement argument is its own account: independent conduct, coincidental timing, an ordinary response interval. Section IV identified the portions of that account the pleadings do not contain. *Woods v. City of Greensboro*, 855 F.3d 639, 648–49 (4th Cir. 2017), answers what is left. A defendant's alternative explanation does not defeat a plausible pleaded inference merely because the defendant considers the alternative more probable. Plausibility, not probability, governs the pleading stage, and the choice between reasonable competing inferences awaits a factual record. The FAC's inference is plausible on the sequence

pleaded. Meta's preferred account may be tested on a factual record; it cannot displace the FAC's plausible inference at Rule 12.

**G. The unresolved Meta-report relationship does not render the agreement allegation deficient**

Meta's memorandum recounts that the letters did not state that Meta submitted either report, that either report concerned Plaintiff's account, or that either report concerned the July 2022 enforcement. ECF No. 22 at 7. The FAC separately pleads the established institutional channel through which Meta and NCMEC transmit and communicate concerning CyberTipline reports, FAC ¶ 123, and pleads that the identities, media, and contents of the participants' communications reside in Defendants' records, FAC ¶ 136.

The FAC need not possess Defendants' internal communications before discovery to plead a plausible circumstantial agreement. *Twombly* requires enough factual matter to raise a reasonable expectation that discovery will reveal evidence of agreement, not pre-discovery possession of the agreement's direct evidence. 550 U.S. at 556. The FAC pleads that factual matter through the sequence set out above. And Meta may not convert Plaintiff's lack of access to those communications into proof that no agreement exists. The relationship between Meta's enforcement and the two reports remains unresolved. Rule 12 does not resolve it against the pleader. *King*, 825 F.3d at 214; *Woods*, 855 F.3d at 648–49.

**VI. THE FAC PLAUSIBLY ALLEGES INTIMIDATION**

**A. Count IV rests on intimidation**

The first clause of § 1985(2) is disjunctive: it reaches conspiracies to deter "by force, intimidation, or threat." 42 U.S.C. § 1985(2). Meta briefs the claim as though it required "violent or threatening conduct." ECF No. 22 at 2, 11. The FAC pleads intimidation. The question is

whether the conduct alleged, in the circumstances alleged and for the purpose alleged, plausibly constitutes intimidation directed at Plaintiff's continued attendance and testimony. It is not whether Hall issued an ultimatum.

That statutory structure reflects a specific federal interest. *Kush* identifies the first portion of § 1985(2) as protection of federal judicial proceedings and explains that Congress acted to protect the processes of the federal courts against intimidation of parties and witnesses. 460 U.S. at 724–26. The statutory text supplies three alternatives—force, intimidation, or threat—and Count IV invokes intimidation.

**B. Scott's Third-Party Accusation Does Not Foreclose the Intimidation Alleged Here**

Meta invokes *Scott* through *Kegege*. ECF No. 22 at 11. In *Scott*, the plaintiff alleged that a defendant attempted to intimidate him by falsely telling his foster mother that he had accepted a $30,000 bribe to testify falsely, thereby attempting to create animosity and contempt toward him. *Scott v. Mountain Mission School, Inc.*, 809 F.2d 786, 1987 WL 36169, at *2 (4th Cir. 1987) (unpublished table decision). The Fourth Circuit held that the particular allegation, although it might have created animosity between the plaintiff and his foster mother, did not allege the force, intimidation, or threats § 1985(2) requires. *Id. Scott* did not hold that intimidation invariably requires violence or an express threat. *Haddle* expressly left unresolved whether first-clause intimidation claims are limited to conduct involving force or a threat of force. *Haddle v. Garrison*, 525 U.S. 121, 125 n.3 (1998). Meta therefore cannot present such a limitation as settled Supreme Court law. The affirmative textual point remains that Congress wrote the first clause disjunctively: "force, intimidation, or threat," and the FAC pleads intimidation.

The FAC pleads materially different conduct. It alleges two case-specific communications directed to Plaintiff himself, a party and prospective witness. Each communication bore NCMEC letterhead and the signature of its Corporate Counsel, invoked compulsory process that had not been served, associated Plaintiff's identifiers with CyberTipline reports while withholding the source and referent information, addressed the precise subject of imminent sworn examinations, issued while motions directed at that discovery remained pending, and was sent to Plaintiff alone. FAC ¶¶ 69–72, 79, 128, 130, 132–134, 158–164. The FAC further alleges that the communications were intended to cause fear of investigation, arrest, or prosecution and thereby deter Plaintiff's continued participation and testimony, and that they caused Plaintiff immediately to consider dismissal and materially impaired his preparation, attendance, and testimony. FAC ¶¶ 162, 169–180.

*Scott* involved an accusation communicated to a third party that allegedly produced personal animosity toward the plaintiff. The FAC alleges communications directed to the federal litigant and prospective witness himself, bearing NCMEC's institutional identity and its Corporate Counsel's signature, keyed to the pending proceedings, and directed at the subject of imminent testimony. Those allegations plausibly plead intimidation at Rule 12.

**C. "Professional courtesy" falls with the premises removed in Section IV**

Meta's syllogism runs: Plaintiff asked; NCMEC gave exactly what he asked for; therefore courtesy, not threat. ECF No. 22 at 11. Section IV removed the first two propositions. "Professional courtesy" is what remains — a characterization without a premise. It supplies no fact, and it resolves nothing.

**D. Glynn concerns litigation conduct the FAC expressly disclaims**

*Glynn v. Impact Science & Technology, Inc.*, 807 F. Supp. 2d 391, 422 (D. Md. 2011), held on summary judgment that counterclaims possessing a reasonable basis are not the "force or intimidation" § 1985(2) requires. The conduct there was litigation conduct: claims filed and pursued in the case itself. The FAC disclaims that theory in terms: no liability asserted "is predicated on the filing of any motion, brief, or other paper in any court." FAC ¶ 26. The conduct alleged here is extra-judicial correspondence—two letters sent to Plaintiff alone, framed as responses to compulsory process although formal service had not occurred. FAC ¶¶ 69–72, 79. *Glynn* answers a theory the FAC does not plead.

**E. Meta's lack of direct communication with Plaintiff does not defeat the conspiracy alleged**

Meta observes that the FAC does not allege that Meta communicated with Plaintiff about the subpoenas or the responses. ECF No. 22 at 11. Meta's observation is true but irrelevant to the claim pleaded. Count IV does not allege that Meta personally transmitted the letters. It alleges that Meta joined the agreement, that one or more Defendants committed the acts in furtherance, and that Hall and NCMEC joined and implemented the agreement through the letters. FAC ¶¶ 236, 238, 240.

**F. The letters are evaluated in the circumstances the FAC pleads**

The FAC gathers the relevant intimidation purpose and circumstances in Section P. FAC ¶¶ 158–164. Paragraph 161 alleges that the letters bore NCMEC letterhead and the signature of its Corporate Counsel; invoked compulsory process although no subpoena had been served; associated Plaintiff's three identifiers with CyberTipline reports while omitting the source and referent information; were keyed to the two federal actions by caption and case number; issued

while the depositions remained imminent and the protective motions remained pending; and were addressed to Plaintiff alone. FAC ¶ 161.

Whether those facts will ultimately establish intimidation is a merits question. Whether they plausibly allege intimidation is the Rule 12 question, and they do under the standard stated in Section III.

## VII. THE FAC PLAUSIBLY ALLEGES INJURY

### A. Meta's own authority states the injury standard the FAC satisfies

Meta states the injury standard through its own authority: a plaintiff must plead facts showing he "was actually hindered from providing truthful testimony or that the intimidation had any impact at all on his potential testimony or the federal proceeding." ECF No. 22 at 12 (quoting *Kimberlin v. Hunton & Williams LLP*, No. GJH-15-723, 2016 WL 1270982, at *6 (D. Md. Mar. 29, 2016), aff'd, 671 F. App'x 127 (4th Cir. 2016) (per curiam)).

The standard is disjunctive. Its second branch asks whether the intimidation had any impact at all on the testimony or the proceeding. The FAC pleads acute psychological and functional injury, disrupted sleep and eating, intrusive fear, inability to sustain attention on litigation materials, and lost productive time. FAC ¶ 173. It pleads immediate consideration of dismissing both actions and repeated deliberate effort not to dismiss. FAC ¶ 175. It pleads continued prosecution despite acute impairment, through deliberate effort, while performing specifically identified litigation functions at materially diminished capacity. FAC ¶ 178. It pleads that persistence did not eliminate the deterrent effect or injuries. FAC ¶ 179. And it pleads material impairment of continued attendance and of the ability to testify freely, fully, and truthfully. FAC ¶ 180.

Under the standard Meta itself invokes, the FAC pleads the injury that standard requires.

**B. The allegation Meta calls unsupported is supported by the allegations surrounding it**

Meta labels "materially diminished capacity" conclusory and unsupported. ECF No. 22 at 12. Paragraph 178 itself identifies the litigation functions Plaintiff performed during the impairment: responses to the pending discovery motions, evaluation and pursuit of the contemplated NCMEC discovery, and administration of the canceled depositions. FAC ¶ 178. Paragraph 173 pleads the functional consequences, including inability to sustain attention on litigation materials. Paragraph 175 pleads the resulting deterrent effect and contemplated dismissal. Paragraph 180 pleads the impairment of attendance and testimony.

Those are factual allegations, not a bare recital of an element. Taken as true and read together, they permit the reasonable inference that the alleged intimidation affected Plaintiff's participation and potential testimony. *Iqbal*, 556 U.S. at 678; *King*, 825 F.3d at 214.

**C. Continued prosecution does not negate pleaded injury**

The FAC affirmatively alleges that Plaintiff continued prosecuting both actions despite acute impairment and through deliberate effort. FAC ¶ 178. It further alleges that persistence did not eliminate the deterrent effect or injuries and that the acts materially impaired attendance and testimony. FAC ¶¶ 179–180. Meta therefore proves nothing by pointing to later filings; it corroborates continued participation already pleaded.

Meta substitutes failure to achieve the alleged ultimate objective for absence of injury from the alleged intimidation. The FAC alleges impairment, not surrender. Meta's own authority asks whether the intimidation had any impact at all—not whether it achieved complete abandonment of the proceeding. ECF No. 22 at 12; *Kimberlin*, 671 F. App'x 127.

Haddle confirms the separation between the prohibited conduct and the resulting injury. It identifies the gist of the first-clause § 1985(2) wrong as intimidation or retaliation against participants in federal-court proceedings and treats the "injured in his person or property" language as identifying the harm caused by the conspiracy. *Haddle v. Garrison*, 525 U.S. 121, 125–26 (1998). The Court assumed the existence of a prohibited conspiracy and confined its review to injury. It expressly left unresolved whether intimidation must involve force or a threat of force. *Id.* at 125 n.3. *Haddle* is therefore used here only for the injury proposition it decided. Meta collapses the prohibited conduct and resulting injury by treating failure to achieve abandonment as absence of injury. The FAC pleads both continued participation and resulting impairment.

**D. The noticed docket materials establish participation, not capacity**

The Court can notice that a motion was filed, that an appeal was pursued, and that a brief was submitted. Those documents establish participation. They do not establish Plaintiff's functional condition while participating, and "aggressively" is Meta's characterization, not a judicially noticeable fact. FAC ¶¶ 178–180 plead continued participation and impairment simultaneously.

Judicial notice does not permit using disputed assertions in public materials to contradict the complaint at Rule 12. *Zak*, 780 F.3d at 607–08. The noticed filings therefore establish a fact the FAC already alleges and say nothing about the fact Meta needs—capacity.

**E. The physical-attendance footnote does not reach the testimony branch**

Meta suggests, conditionally and on out-of-circuit district authority, that "attending court" might require physical presence at a proceeding. ECF No. 22 at 12 n.1. The FAC pleads Plaintiff's prospective-witness status, FAC ¶ 31, and Count IV alleges a purpose to deter testimony, acts in furtherance, and resulting impairment of attendance and testimony. FAC ¶¶ 237–239. Meta's own

injury authority speaks of impact on "potential testimony or the federal proceeding." The conditional physical-presence theory does not dispose of the testimony branch.

## VIII. COUNT V PLAUSIBLY ALLEGES VIRGINIA COMMON-LAW CONSPIRACY

### A. The agreement argument has already been answered

Meta incorporates its § 1985(2) agreement argument. ECF No. 22 at 13. Section V answers it. No repetition is required.

### B. Meta's "no overt act by Meta" argument identifies no missing element

Meta recites the elements: an agreement between two or more persons, an unlawful purpose or a lawful purpose by unlawful means, and resulting damage. ECF No. 22 at 13. The Supreme Court of Virginia describes the gist of civil conspiracy as “the damage caused by the acts committed in pursuance of the formed conspiracy,” rather than the mere combination standing alone. *CaterCorp, Inc. v. Catering Concepts, Inc.*, 246 Va. 22, 28, 431 S.E.2d 277, 281–82 (1993). Virginia common-law conspiracy generally requires commission of the underlying tort. *Almy v. Grisham*, 273 Va. 68, 80, 639 S.E.2d 182, 188 (2007).

Count V alleges the combination among legally distinct persons, FAC ¶ 245; preparation, approval, issuance, transmission, and publication of the letters as the means used, FAC ¶ 246; intended transmission and publication, FAC ¶ 247; overt acts and intent, FAC ¶¶ 248–249; and resulting damage, FAC ¶ 250. The underlying torts are the defamation claims alleged against Hall and NCMEC. FAC ¶ 246. The pleaded question is therefore whether the alleged acts were committed pursuant to the alleged combination and caused the alleged damage, not whether Meta personally signed or mailed the letters. Meta's observation identifies no missing element of the common-law conspiracy claim pleaded.

### C. The predicate-tort argument adds no independent Meta theory

Meta supplies no independent basis for dismissing the predicate torts; it adopts the litigation-privilege and § 2258D defenses asserted in NCMEC's memorandum. ECF No. 22 at 14. Those defenses are addressed in Plaintiff's opposition to NCMEC's motion. ECF No. 20. An affirmative defense supports Rule 12(b)(6) dismissal only when all facts necessary to the defense clearly appear on the face of the complaint. *Goodman v. Praxair, Inc.*, 494 F.3d 458, 464 (4th Cir. 2007) (en banc). Meta's derivative predicate-tort argument provides no independent basis for dismissal of Count V.

## IX. CONCLUSION

Meta’s motion rests on facts the FAC does not plead. Meta reads the April 9 notice as a demand for an immediate response. It reads NCMEC’s letters as the information Plaintiff sought. It calls the thirteen-day interval routine review and collection. It calls the letters a professional courtesy. And it treats Plaintiff’s continued litigation as proof that no actionable impairment occurred. Each of these is Meta’s account of the facts. None is a fact the Court may adopt against the pleaded allegations on a Rule 12 motion.

The open question is narrower still. NCMEC has said that the CyberTipline reports may concern Plaintiff, a person with the same name, or an e-mail address. Meta asks the Court to treat those same reports as the innocent explanation for the conduct the FAC alleges. Whether that explanation is correct is a question for a factual record. It is not a ground for dismissal before one exists.

The answer is a document Defendants hold. Producing it would show what the reports are, who submitted them, what identifiers they contain, and whether either concerns Plaintiff and the July 2022 event. That single act resolves the question either way. If the reports concern Plaintiff,

Defendants say so and attach them. If they do not, the letters linked Plaintiff to reports that were never about him. Defendants need only produce the record they already possess. They have filed three memoranda instead.

Rule 12 does not permit the absence of that record to become Meta's preferred inference. The FAC pleads a specific sequence of events. From that sequence, agreement, intimidation, and injury may plausibly be inferred. Whether Plaintiff can prove them comes later.

The letters issued in April. Three memoranda seeking dismissal have followed. Not one attaches the reports on which every memorandum depends. One question remains unanswered: whom do the reports concern?

The motion should be denied.

Date: August 23, 2026

Respectfully submitted,



Marvelle J. Ballentine
*Plaintiff, pro se*
1520 Belle View Blvd, Ste. #5847
Alexandria, Virginia 22307
(407) 794-6503
jayballentine@protonmail.com

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 83.1(N)**

Pursuant to Local Civil Rule 83.1(N), I declare under penalty of perjury that no attorney has prepared, or assisted in the preparation of, the foregoing Plaintiff's Protective Opposition to the Motion to Dismiss of Defendant Meta Platforms, Inc.

Name of Pro Se Litigant: Marvelle J. Ballentine

Signature of Pro Se Litigant

Executed on: August 23, 2026

**CERTIFICATE OF SERVICE**

I hereby certify that on August 23, 2026, I caused the foregoing to be submitted through the Court's Electronic Document Submission System for filing on the CM/ECF system, which will send a notice of electronic filing to all counsel of record, including counsel for Defendant National Center for Missing & Exploited Children and counsel for Defendant Meta Platforms, Inc. I further certify that a true and correct copy was served by United States Mail, first-class postage prepaid, upon: Katie Hall, 333 John Carlyle Street, Suite 125, Alexandria, Virginia 22314.

Date: August 23, 2026

Marvelle J. Ballentine
*Plaintiff, pro se*