# EXHIBIT C

Comparison of Plaintiff's Proposed Second Amended Complaint against the First Amended Complaint (ECF No. 5)

Additions are blue, bold and double-underlined. ~~Deletions~~ are red and struck through. Paragraph numbers are those of the proposed pleading and are not themselves marked.

UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF VIRGINIA

ALEXANDRIA DIVISION

MARVELLE J. BALLENTINE,

Plaintiff,

v. Case No. ~~1:26-cv-02331-RDA-IDD~~ **1:26-cv-02331**

~~The Honorable Judge~~

~~Rossie D. Alston Jr.~~

KATIE HALL, individually;

**PANAYIOTA SOURAS, also known as YIOTA G. SOURAS, individually;**

NATIONAL CENTER FOR MISSING & EXPLOITED CHILDREN;

META PLATFORMS, INC.;

and JOHN/JANE DOES 1-6,

Defendants.

~~FIRST~~ **PLAINTIFF'S PROPOSED SECOND** AMENDED COMPLAINT

DEMAND FOR JURY TRIAL

PRELIMINARY STATEMENT

1. **On July 4, 2022, Meta Platforms, Inc. invoked its Child Sexual Exploitation policy against my Facebook account and cut off the contracts I performed through it. I sued them in September 2025. Meta filed a motion to dismiss. Meta did not staple a CyberTipline report to the motion.**

2. **When Meta's co-defendants' lawyers asserted that a "legitimate violation by Ballentine is consistent with the facts" while repeatedly putting my name beside the words "child sexual exploitation" in their papers, I sued them in February 2026. Defendants filed motions to dismiss. Defendants did not staple a CyberTipline report to their motions.**

3. **I sent Advanced Notice of Intended Subpoenas to NCMEC in April concerning those two cases, and their attorney, Ms. Hall, sent me two letters associating my full legal name, "Marvelle J. Ballentine," with two CyberTipline reports. I sued them in May**

2026 because I have never even used my full legal name to operate any social media account. NCMEC and Hall filed motions to dismiss. NCMEC and Hall did not staple a CyberTipline report to their motions.

4. I served Meta on July 31, 2026 concerning its role in the drafting, transmission, and delivery of the letters. It filed a motion to dismiss. Once again, it did not staple a CyberTipline report to the motion. Meta substituted the CyberTipline report with a chronicle of my prior lawsuits, their captions, and their procedural history.

5. I have sworn that I never used my full legal name to create, register, identify, maintain, access, or operate any account on any Meta product or service that I used. The defense may move to dismiss this complaint. Whether or not they staple a CyberTipline report to the motions is to be determined.

6. That matters because the two letters signed by Hall on behalf of NCMEC stated: "In response to your subpoena issued April 9, 2026, the National Center for Missing & Exploited Children ('NCMEC') provides its written responses as detailed below. NCMEC has received two (2) CyberTipline reports concerning (1) Marvelle J. Ballentine, (2) Jay Ballentine, and/or (3) the account-level identifier jaychizza@icloud.com between July 1, 2022 and the present."

7. So, that leaves the remaining questions up for determination: Where did my legal name come from? How and why did it arrive on those letters? Did either of the two asserted CyberTipline reports, as originally received by NCMEC, actually identify "Marvelle J. Ballentine"? Did Meta submit either report? Why did NCMEC and Hall act before formal service? Why did they not wait the five days until April 27, when one court temporarily stayed discovery, or the nine days until May 1, when discovery in the other action was temporarily stayed? Where did the urgency come from?

8. I bring six counts: conspiracy under 42 U.S.C. § 1985(2) and Virginia law against all Defendants, for letters sent to frighten me out of my own lawsuits; defamation, intentional infliction of emotional distress, and insulting words against Hall and NCMEC, for what the letters said and to whom. This Complaint adds NCMEC's Chief Legal Officer, Panayiota Souras, who, on information and belief, approved the wording of the letters and authorized Hall to send them before formal service. The defamation and insulting-words counts are also asserted against Souras; Count III remains against Hall and NCMEC.

~~This case is about two letters and the lawyer who wrote them. On April 22, 2026, Katie Hall — Corporate Counsel of the National Center for Missing & Exploited Children, the organization this country trusts to track crimes against children — tied my name to "two CyberTipline reports." She~~

chose the words. She signed both letters. She sent them. Each one opened by telling me it was answering a subpoena. No subpoena had been served. Not one. There was no process, court order, or obligation behind the words Hall put on that letterhead.

The CyberTipline exists to catch people who hurt children. Federal law requires companies to report to it. Law enforcement can be given what it holds. Everyone understands what it means when that name appears above a man's name. That is why those letters landed on me the way they did.

I was not a defendant. I was the plaintiff — one man, without a lawyer, suing Meta Platforms, Inc. and others in the Middle District of Florida. Case No. 6:26-cv-00376-AGM-DCI. Case No. 6:26-cv-00286-AGM-DCI. I had asked one question in both: did anyone connected to the July 4, 2022 shutdown of my account send a CyberTipline report about me? I had noticed depositions for April 28, 29, and 30 to ask it under oath. One notice told Accenture, in writing, that its witness would have to answer that question.

On April 21, 2026, every defendant in both cases moved to shut down discovery and stop the depositions. The letters came the next day. Each one carried the caption and case number of one of my lawsuits. Each one answered the exact question my depositions were set to ask — outside discovery, unsworn, with no one to cross-examine. And each one left out everything a man would need to test it: who reported, when, what number, which identifier, which platform, what came of it. The letters came to me alone. No court was copied. No lawyer was copied.

Consider what was true on April 22. No subpoena had been served. No court had ordered Hall to do anything. I had not asked for an early answer or waived service. The motions filed the day before were undecided. The ruling dates the movants demanded had not come. The depositions they were trying to stop had not happened. Nothing required Hall to send those letters that day. Nothing required Hall to send them at all.

And Hall knew who she was writing to. Before those letters went out, she had either read the pleadings in the 286 Action or been handed what was in them. Those pleadings said that I am a survivor of childhood sexual abuse. They said that putting my name next to the language of child exploitation had already hurt me. Hall is the lawyer for the clearinghouse this country built to track crimes against children. She knows what that name does to a man.

She sent the letters anyway. Who told her to send them, and what was said before they went out, are answers kept in NCMEC's files and Meta's, not mine.

I read the letters on April 28, 2026 — the day my first deposition was supposed to go forward, and did not. I understood what I was reading: that federal records now tied my name to the sexual exploitation of children, and that law enforcement could come for me. I was afraid of being

arrested. I was afraid of being searched. I was afraid of being prosecuted. I believed that if I kept litigating and kept asking about that report, those things would happen to me. My first thought was to dismiss both cases. In the days that followed, it took deliberate effort not to.

I had told NCMEC's Legal Department in writing that subpoenas were coming and that I would serve them when the notice period ran. A notice is not a subpoena. Mail is not service. Hall is a lawyer who handles subpoenas, and she knows the difference. In the action I later brought over these letters — Ballentine v. National Center for Missing & Exploited Children and Katie Hall, Case No. 1:26-cv-01341-MSN-WBP (E.D. Va.) (the "1341 Action") — Hall and NCMEC told the Court, in their own filings, that the matter "arises out of two subpoenas sent, but not formally served," that Hall "was clearly acting in the course and scope of her employment in responding to the subpoenas," and that "NCMEC responded exactly as instructed in the subpoenas." By their own account, they did not wait. They answered a subpoena that was never served. In that same action, they moved to shut down discovery when no discovery had been served — telling the Court that what discovery might surface "could give rise to further litigation from Mr. Ballentine." A response that did nothing but follow instructions has nothing to fear from discovery.

When I moved to bring Meta into that action, Meta had not appeared and was not a party. Hall and NCMEC's lawyer opposed the motion anyway — not on the ground that adding Meta would burden them, but by arguing Meta's own defense: that the conspiracy I alleged was "conclusory and imaginary," and that "there would be no claim asserted as to ... Meta Platforms, Inc." Counsel for two defendants asked the Court to rule, before Meta appeared, that there was no case against Meta. Meta had signed nothing, appeared for nothing, and would be bound by nothing the Court decided on that motion.

I bring six counts. Counts I and II are for defamation — per se, and by implication — against Hall and NCMEC, for publishing each letter to third parties, including the employees of the mail service that opened, scanned, and filed them in the ordinary course of business. Count III is against Hall and NCMEC for intentional infliction of emotional distress; Hall did what she did knowing what she knew, as NCMEC's Corporate Counsel, on NCMEC's letterhead, from NCMEC's offices. Count IV is brought under the first clause of 42 U.S.C. § 1985(2), and Count V for common-law conspiracy under Virginia law, against Hall, NCMEC, Meta Platforms, Inc., and the Doe Defendants — against those who agreed the letters would go out, and who prepared, approved, and transmitted them, to frighten me out of attending my own lawsuits and out of testifying freely, fully, and truthfully in them. Count VI is pleaded in the alternative under Virginia Code § 8.01-45, for the insulting words Hall directed to me.

JURISDICTION AND VENUE

9. This Court has subject-matter jurisdiction under 28 U.S.C. §§ 1331 and ~~1343(a)(1) because this action~~ **1343(a)(1). Count IV** arises under 42 U.S.C. § 1985(2).

10. This Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over ~~Plaintiff's~~ **the** claims for defamation, intentional infliction of emotional distress, common-law conspiracy, and insulting ~~words because those~~ **words. Those** claims arise from the same nucleus of operative fact ~~—~~ **as Count IV:** the preparation, approval, issuance, transmission, and publication of the April 22, 2026 ~~letters — and~~ **letters. They** form part of the same case or controversy.

11. **In the alternative, this Court has original jurisdiction under 28 U.S.C. § 1332(a)(1) over Counts I, II, III, V, and VI if complete diversity exists. Plaintiff is a citizen of the State of Florida. NCMEC, a District of Columbia non-profit corporation with its principal place of business in Virginia, is a citizen of the District of Columbia and Virginia. Meta, a Delaware corporation with its principal place of business in California, is a citizen of Delaware and California. At all relevant times, Hall and Souras worked at NCMEC's headquarters in Alexandria, Virginia. On information and belief, each is domiciled in, and therefore is a citizen of, a State other than Florida. Plaintiff cannot presently allege the citizenship of John/Jane Does 1-6, whose identities are unknown. This basis applies only if no Defendant is a citizen of Florida and each Doe Defendant's citizenship is alleged or no Doe Defendant remains a party. The amount in controversy exceeds $75,000, exclusive of interest and costs.**

~~This Court has independent subject-matter jurisdiction under 28 U.S.C. § 1332(a)(1) over Counts I, II, III, and VI, which are asserted only against Hall and NCMEC. Plaintiff is a citizen of the State of Florida. On information and belief, Defendant Hall is domiciled in, and therefore is a citizen of, a state other than Florida. Defendant NCMEC is a Virginia non-profit corporation with its principal place of business in Alexandria, Virginia, and is a citizen of Virginia. Complete diversity of citizenship exists between Plaintiff and each Defendant against whom Counts I, II, III, and VI are asserted. The amount in controversy exceeds $75,000, exclusive of interest and costs.~~

12. Venue is proper in this district under 28 U.S.C. § ~~1391(b)(2) because a~~ **1391(b)(2). A** substantial part of the events giving rise to the claims occurred ~~in this district. The April 22, 2026 letters were~~ **here. Hall** prepared or approved, signed, and issued ~~by Hall~~ **the April 22, 2026 letters** from NCMEC's office in Alexandria, Virginia, within the Alexandria Division of this ~~district, and~~ **district. The letters** were transmitted to Plaintiff's commercial mail-receiving address in Alexandria, Virginia, where they were opened and processed.

13. This Court has specific personal jurisdiction over ~~Defendant~~ Hall under Virginia Code § 8.01-328.1(A)(3). Hall performed the challenged acts in ~~Virginia: she~~ **Virginia. She** prepared or approved, signed, issued, and caused the transmission of the April 22, 2026 letters

from NCMEC's Alexandria headquarters. The first third-party publication alleged in this Complaint occurred in ~~Alexandria~~ **Alexandria,** when the commercial mail-receiving agency opened, reviewed, and scanned the letters. Each claim against Hall arises ~~directly~~ from her Virginia conduct.

14. **This Court has specific personal jurisdiction over Souras under Virginia Code § 8.01-328.1(A)(3). Souras served as Chief Legal Officer of NCMEC at its Alexandria, Virginia headquarters. On information and belief, Souras reviewed, approved, and authorized the April 22, 2026 letters in the course of her work for NCMEC, and the letters issued from NCMEC's Alexandria office and were transmitted to Plaintiff's Alexandria address as a result. Each claim against Souras arises from that Virginia conduct.**

15. This Court has general personal jurisdiction over ~~Defendant~~ NCMEC, a ~~Virginia~~ corporation with its principal place of business in Alexandria, Virginia. This Court also has specific personal jurisdiction over NCMEC under Virginia Code § ~~8.01-328.1(A)(3) because the~~ **8.01-328.1(A)(3). The** April 22, 2026 letters were prepared or approved, signed, and issued from NCMEC's Alexandria headquarters, and each claim against NCMEC arises from that Virginia conduct.

16. This Court has specific personal jurisdiction over ~~Defendant~~ Meta Platforms, Inc. under Virginia Code § 8.01-328.1(A)(3) and the conspiracy-based attribution of forum contacts. ~~As alleged in~~ Sections ~~N~~ **O** through ~~Q, a conspiracy existed;~~ **R allege the conspiracy.** Meta knowingly participated through one or more authorized representatives or ~~intermediaries; and Defendants~~ **intermediaries.** NCMEC and Hall committed the Virginia acts alleged in this Complaint in furtherance of that conspiracy. Meta received the April 9, 2026 materials directed to NCMEC's Legal Department in Alexandria, ~~Virginia, and the~~ **Virginia. The** understanding alleged in Section ~~N~~ **O** contemplated ~~issuance of~~ **that Hall would issue** the case-specific correspondence ~~by Hall at~~ **from** that Virginia office. Plaintiff's claim against Meta arises ~~directly~~ from those Virginia acts.

17. The exercise of personal jurisdiction over each Defendant comports with the Due Process Clause of the Fourteenth Amendment.

PARTIES

18. Plaintiff Marvelle J. Ballentine, also known as Jay Ballentine, is an adult citizen of the State of Florida. At all **relevant** times ~~relevant to this Complaint,~~ Plaintiff maintained a mailing address at 1520 Belle View Blvd, Ste. #5847, Alexandria, Virginia ~~22307, through a~~ **22307. A** commercial mail-receiving agency **operates that address and is** authorized to receive and process mail on Plaintiff's behalf.

19. Defendant National Center for Missing & Exploited Children ("NCMEC") is a ~~Virginia~~ **District of Columbia** non-profit ~~corporation with its~~ **corporation. Its** principal place of business ~~at~~ **is** 333 John Carlyle Street, Suite 125, Alexandria, Virginia 22314. NCMEC operates the CyberTipline under federal authorization in connection with 18 U.S.C. § 2258A. At all **relevant** times ~~relevant to this Complaint,~~ NCMEC employed Defendant Katie Hall as its Corporate ~~Counsel, with responsibility~~ **Counsel. Hall was responsible** for legal correspondence **NCMEC** issued ~~by NCMEC~~ in response to claimed legal process. NCMEC is sued for its own conduct, undertaken through Hall and one or more additional ~~personnel, and~~ **personnel. NCMEC is also sued** vicariously for the conduct of Hall ~~committed~~ **and Souras** within the scope of ~~her~~ **their** employment.

20. Defendant Katie Hall is an ~~individual who~~ **individual. At all relevant times she** served as Corporate Counsel of NCMEC ~~at its principal place of business~~ at 333 John Carlyle Street, Suite 125, Alexandria, Virginia ~~22314, at all times relevant to this Complaint.~~ **22314.** On information and belief, Hall is domiciled ~~in,~~ **in a State other than Florida** and ~~therefore~~ is a citizen ~~of, a state other than Florida.~~ **of that State.** Hall prepared or approved, signed, issued, and caused the transmission of the April 22, 2026 letters. Hall is sued individually for her own tortious conduct.

21. **Defendant Panayiota Souras, known publicly as Yiota G. Souras, is an individual. At all relevant times she served as Chief Legal Officer of NCMEC at 333 John Carlyle Street, Suite 125, Alexandria, Virginia 22314. On information and belief, Souras is domiciled in a State other than Florida and is a citizen of that State. Souras was responsible for NCMEC's legal affairs, including litigation and compliance, and managed NCMEC's legal operations. Souras is sued individually for her own alleged participation in reviewing, approving, and authorizing the April 22, 2026 letters.**

22. Defendant Meta Platforms, Inc. ("Meta") is a Delaware corporation with its principal place of business in Menlo Park, California. Meta was a defendant in ~~both~~ the 376 Action and **in** the 286 ~~Action~~ **Action, each identified in Section A,** at all ~~times~~ relevant ~~to this Complaint, and~~ **times. Meta** is an electronic service provider subject to the reporting duties of 18 U.S.C. § 2258A.

23. Meta owns and operates Facebook, Instagram, and WhatsApp.

24. Defendants John/Jane Does 1-6 are ~~presently unidentified~~ persons **not yet identified** who participated in the communications, authorization, approval, preparation, or transmission alleged in this Complaint. Their ~~respective~~ roles include: the Meta representative or representatives who communicated with NCMEC concerning Plaintiff, the identifiers, the intended subpoenas, or the two federal actions; any Accenture representative who knowingly joined or

implemented the understanding alleged in this Complaint; ~~the~~ **any** NCMEC ~~personnel~~ **personnel, other than Hall and Souras,** who approved the issuance of the April 22, 2026 letters; and any ~~intermediary~~ **intermediary,** including counsel or other agents acting ~~on behalf of~~ **for** Meta, Accenture, or ~~NCMEC~~ **NCMEC,** through whom the **alleged** communications ~~alleged in this Complaint~~ occurred. ~~The identities of the Doe Defendants are maintained within the records of~~ Meta, Accenture, NCMEC, and their ~~respective representatives.~~ **representatives hold the records that identify the Doe Defendants.** Plaintiff will seek leave to amend ~~to identify the Doe Defendants~~ when ~~their~~ **those** identities are ascertained.

SCOPE OF ALLEGATIONS

25. ~~No~~ **This Complaint predicates no** liability ~~asserted in this Complaint is predicated~~ on the filing of any motion, brief, or other paper in any court. Court filings identified ~~in this Complaint~~ **here** are alleged solely as facts establishing timing, notice, knowledge, coordination, and admissions. The claims do not challenge NCMEC's receipt, maintenance, or lawful referral of CyberTipline reports. ~~They~~ **The claims** challenge the ~~alleged~~ extra-judicial agreement **alleged below** and the preparation, approval, issuance, transmission, and publication of external legal correspondence that falsely invoked compulsory process and ~~was used for~~ **served** the litigation-directed purposes alleged below. No claim against Meta ~~Platforms, Inc.~~ seeks liability for the July 4, 2022 account-level enforcement, **for** any content-related decision, **for** any failure to restore Plaintiff's account, or **for** any treatment of third-party content. Those matters are alleged ~~solely~~ **only** to establish the subject matter of the pending federal actions, Defendants' knowledge, Meta's interest in ~~the~~ **whether a** CyberTipline ~~report-existence question,~~ **report exists,** and the testimony Defendants sought to deter. ~~This includes~~ **The same is true of** the memorandum, motion to stay, and opposition filed in the 1341 Action and **the August 13, 2026 filing in the 376 Action, each** identified in Section ~~O, which are~~ **P. Each is** alleged as ~~admissions~~ **an admission** and as ~~facts~~ **a fact** establishing timing, coordination, and ~~knowledge, and not as~~ **knowledge. None is** conduct on which any claim ~~is predicated.~~ **rests.**

**FACTS**

**A.** The Federal Proceedings and Plaintiff's Role as Party and Prospective Witness

26. **Plaintiff filed Ballentine v. Accenture LLP, et al., Case No. 6:26-cv-00286-AGM-DCI (M.D. Fla.) (the "286 Action"), on February 9, 2026. Plaintiff filed Ballentine v. Meta Platforms, Inc., et al., Case No. 6:26-cv-00376-AGM-DCI (M.D. Fla.) (the "376 Action"), on February 17, 2026. Each action was pending in a court of the United States at all relevant times.**

~~Plaintiff filed the 286 Action on February 9, 2026, and the 376 Action on February 17, 2026. Both actions were pending in a court of the United States at all times relevant to this Complaint.~~

27. The defendants in the 376 Action included Meta, Accenture, TaskUs, Inc., and Genpact Limited. Accenture is a limited liability partnership that provides platform policy enforcement services to Meta. The defendants in the 286 Action included Meta, Devin S. Anderson, and Christopher W. Keegan. ~~Anderson and Keegan were represented by~~ Kirkland & Ellis LLP ~~("Kirkland").~~ **("Kirkland") represented Anderson and Keegan.** Accenture, Anderson, Keegan, TaskUs, Inc., Genpact Limited, Kirkland, Orrick, Herrington & Sutcliffe LLP ("Orrick"), Diana M. Fassbender, and ~~Mariana~~ **Marianna** Chapleau are not defendants ~~in this action.~~ **here.** Their conduct is alleged only ~~insofar as it establishes the~~ **to establish** chronology, notice, knowledge, or **the** conduct of the Defendants, including the Doe Defendants.

28. Both actions arise from ~~Meta's~~ **one event. On** July 4, ~~2022 issuance of~~ **2022, Meta issued** an account-level enforcement notice ~~that~~ **against Plaintiff's Facebook account. That notice** interrupted Plaintiff's ability to perform third-party contracts through ~~Plaintiff's Facebook~~ **the** account.

29. Plaintiff proceeded pro se in both actions. Every act of prosecution ~~— discovery, deposition examination, briefing, and appearance —~~ depended on Plaintiff's personal capacity and ~~participation.~~ **participation: discovery, deposition examination, briefing, and appearance.**

30. Plaintiff was a prospective witness in both ~~actions~~ **actions. He expected to testify under oath, at deposition and at trial,** concerning his account history, the July 4, 2022 enforcement event, the absence of any law-enforcement contact with ~~Plaintiff,~~ **him,** and his damages. ~~Plaintiff expected to testify under oath at deposition and at trial concerning those subjects.~~

31. The dockets of the 376 Action and the 286 Action were publicly accessible through the federal Public Access to Court Electronic Records system.

**B.** The Contested CyberTipline Question

32. ~~Whether Meta~~ **One question has been contested since October 2025: whether Meta,** or any person acting in connection with the July 4, 2022 account-enforcement ~~event~~ **event,** transmitted a CyberTipline report under 18 U.S.C. § 2258A concerning Plaintiff or his account ~~identifiers has been contested since October 2025.~~ **identifiers.**

33. Before April 22, 2026, no CyberTipline report **concerning Plaintiff** had been identified, produced, or attributed to any ~~provider,~~ **provider** in any ~~forum, in connection with Plaintiff.~~ **forum.**

34. Plaintiff's first substantive act in the 376 Action was a motion for leave to serve a single early request for ~~admission directed to~~ **admission. The request asked** whether Meta filed a CyberTipline report regarding Plaintiff's account. The court denied the motion.

35. From that denial forward, the defendants in the 376 Action knew ~~that~~ **what Plaintiff's discovery would target:** the existence or non-existence of a CyberTipline ~~report was the specific target of Plaintiff's contemplated discovery.~~ **report.**

36. The operative complaint in the 376 Action alleged that Meta filed no CyberTipline ~~report, and its~~ **report. Its** prayer sought a declaration that no CyberTipline report was filed regarding the July 4, 2022 enforcement event.

37. ~~In its motion~~ **On April 9, 2026, Meta moved** to dismiss ~~filed April 9, 2026 in~~ the 376 Action (ECF No. ~~85),~~ **85).** Meta described Plaintiff's allegation that a CyberTipline report had been submitted and disseminated as "hypothetical (and elsewhere ~~contradicted)," and cited as~~ **contradicted)." Meta identified** the contradiction **as** Plaintiff's allegation that "Meta filed no CyberTipline report."

38. In the 286 Action, the existence or non-existence of a CyberTipline report bore on **the** claims then pending, including the falsity and factual basis of **the** statements challenged in that action.

**C.** Plaintiff's Disclosed Survivor Status

39. On September 9, 2025, Plaintiff filed a complaint in ~~the action captioned~~ Ballentine v. Meta Platforms, Inc., et al., Case No. 3:25-cv-07671-CRB (N.D. Cal.) (the "California Action").

40. That complaint contained a single footnote. The footnote states: "As a CSA survivor, Plaintiff gratefully acknowledges the unwavering support of his wife, whose steady presence made the psychological recovery, and subsequent preparation of this Complaint possible. He further acknowledges his children, especially his eldest, who endured his distance during the preparation of this filing after once celebrating his NRVTA graduation with pride. This work now returns to them, just as their father and husband does."

41. The footnote ~~states~~ **disclosed** that Plaintiff is a survivor of childhood sexual abuse and ~~describes the~~ **had undergone a** psychological recovery that made ~~the~~ preparation of the complaint possible.

42. Before April 22, 2026, **then,** Plaintiff had disclosed that he is a survivor of childhood sexual ~~abuse;~~ **abuse. He** had described ~~having undergone~~ **undergoing** psychological ~~recovery; and~~ **recovery. He** retained the functional capacity to prepare and ~~to~~ prosecute his pending actions.

43. The publicly filed pleadings in the 286 Action disclosed on their face that Plaintiff is a survivor of childhood sexual ~~abuse, and~~ **abuse. Those pleadings** alleged that ~~the placement of~~ **placing** Plaintiff's name ~~in proximity to~~ **near** child-sexual-exploitation terminology had already caused Plaintiff emotional injury.

44. Meta, Anderson, and Keegan, through their respective counsel, received and litigated against the 286 Action pleadings containing those disclosures before April 21, 2026.

45. **The** Kirkland attorneys ~~appearing~~ **who appeared** for Accenture in the 376 Action also represented Anderson and Keegan in the 286 ~~Action and~~ **Action. They** therefore possessed the 286 Action pleadings before April 21, 2026. Accenture's authorized representatives ~~were aware~~ **knew** of the disclosures before April 21, 2026.

**D.** CyberTipline Reporting by Meta-Operated Services

46. NCMEC receives CyberTipline reports from Facebook, Instagram, and WhatsApp.

**E.** Counsel Operating Across Both Actions

47. Fassbender, an attorney at Orrick, was counsel of record for Meta in the 286 Action and for Meta and Genpact Limited in the 376 Action.

48. Chapleau and Anderson, attorneys at Kirkland, were counsel of record for Accenture in the 376 Action. Kirkland, through Chapleau, also represented Anderson and Keegan in the 286 Action.

49. Anderson ~~simultaneously occupied~~ **held** two roles ~~across~~ **at once. In** the ~~two actions:~~ **286 Action he was** an individual defendant and **a** noticed deposition ~~witness in~~ **witness. In** the ~~286 Action, and~~ **376 Action he was** counsel of record for ~~Accenture in the 376 Action.~~ **Accenture.**

**F.** The Deposition Program

50. On April 7, 2026, Plaintiff served a Rule 30(b)(6) deposition notice on Accenture in the 376 ~~Action, noticing~~ **Action. The notice set** a two-day examination for April 29 and April 30, 2026. ~~The~~ **Plaintiff served the** notice ~~was served~~ on Chapleau and Anderson.

51. Matter for Examination No. 5 of ~~the Rule 30(b)(6)~~ **that** notice is captioned "CyberTipline Reporting and Reportability ~~Status" and~~ **Status." It** encompasses "whether any CyberTipline Report was Transmitted to NCMEC in connection with the Account-Level Enforcement Event."

52. On April 7, 2026, Plaintiff noticed ~~the~~ **Anderson's** deposition ~~of Anderson~~ in the 286 Action for April 28, **2026. On April 10,** 2026, ~~and~~ **Plaintiff** re-served the notice ~~on April 10, 2026~~ with logistical details.

53. Plaintiff retained a court reporter and a videographer for the noticed depositions.

**G.** The April 9, 2026 Transmissions

54. On April 9, 2026, Plaintiff transmitted to NCMEC's Legal Department a letter captioned ~~"Advanced~~ **"Advance** Notice of Intended Subpoenas — Two Separate Matters." The letter identified the 376 Action and the 286 Action by caption and case ~~number,~~ **number. It** enclosed **copies of** the ~~draft subpoenas, and~~ **signed subpoenas Plaintiff intended to serve formally on NCMEC after the notice period had run. It** stated that formal ~~service, with clerk-signed subpoenas,~~ **service** would occur after the notice period had run.

55. Schedule A to each ~~draft~~ subpoena commanded ~~a single~~ **one** item: a document sufficient to show whether NCMEC received or maintains any CyberTipline report concerning (1) Marvelle J. Ballentine, (2) Jay Ballentine, and/or (3) the account-level identifier jaychizza@icloud.com. Schedule A expressly excluded the contents of any report.

56. The **April 9, 2026** transmission ~~to~~ **gave** NCMEC ~~was a courtesy copy of a~~ **advance** notice of ~~intended~~ **the subpoenas and included copies of the signed** subpoenas. ~~It imposed no compulsory obligation~~ **Neither subpoena had been formally served** on NCMEC. Plaintiff did not request or authorize a response before formal ~~service,~~ **service. Plaintiff** did not waive ~~service, and~~ **service. Plaintiff** did not authorize NCMEC or Hall to treat **receipt of** the ~~advance notice~~ **advance-notice package** as ~~a served subpoena.~~ **formal service.**

57. On April 9, 2026, Plaintiff served the same ~~materials,~~ **materials** under Federal Rule of Civil Procedure ~~45(a)(4),~~ **45(a)(4)** on counsel for the parties in both actions, including Orrick ~~on behalf of~~ **for** Meta and Kirkland ~~on behalf of~~ **for** Accenture.

58. ~~As of~~ **On** April 9, ~~2026: NCMEC had received~~ **2026, Plaintiff transmitted** the advance notice and its ~~enclosures;~~ **enclosures to NCMEC. As of that date,** counsel for Meta and counsel for Accenture had received identical materials ~~on behalf of~~ **for** their ~~clients; and the~~ **clients. The** materials identified the same two federal actions, the same three identifiers, and the same discovery objective. Each recipient knew from the face of the materials that formal service on NCMEC was announced to occur only after the notice period had run.

59. Hall possessed or reviewed the case-specific materials no later than ~~her approval, signature,~~ **the moment she approved, signed,** and ~~authorization~~ **authorized transmission** of the April 22, 2026 letters.

60. Before preparing the two case-keyed letters, Hall either reviewed the publicly filed pleadings in the 286 Action or received from one or more participants in the two actions case-specific materials reproducing or describing those pleadings. Those materials disclosed that Plaintiff is a survivor of childhood sexual abuse and described the psychological recovery that made ~~the~~ preparation of the California Action possible. The source, transmission, and contents of the materials Hall reviewed or received are maintained ~~within~~ **in** Defendants' ~~records and are not accessible to~~ **records.** Plaintiff **cannot reach them** without discovery.

61. ~~Hall, as~~ **Hall was** Corporate Counsel of the federally designated clearinghouse for CyberTipline ~~reporting,~~ **reporting. She** knew ~~the ordinary~~ **what it ordinarily means, in** criminal and law-enforcement ~~significance of associating~~ **terms, to associate** a named individual with CyberTipline reports.

62. On the same day, April 9, 2026, Meta filed a motion to dismiss and a motion to transfer in the 376 Action.

**H.** The April 21, 2026 Filings

63. On April 21, 2026, Meta, Anderson, and Keegan filed a Joint Motion to Stay Discovery and Hold Rule 26(f) Requirements in Abeyance in the 286 Action (ECF No. 49). Chapleau signed ~~the motion on behalf of~~ **for** Anderson and ~~Keegan;~~ **Keegan.** Fassbender signed ~~on behalf of~~ **for** Meta.

64. On April 21, 2026, Anderson and Keegan filed a Time-Sensitive Motion for Protective Order in the 286 Action (ECF No. ~~50), seeking~~ **50). The motion sought** to prevent ~~the~~ **Anderson's** April 28, 2026 deposition ~~of Anderson~~ and ~~requesting~~ **requested** a ruling by April 24, 2026. ~~The motion~~ **It** stated: "This motion must be decided by April 24 because Plaintiff noticed Anderson's deposition on April 28, 2026."

65. On April 21, 2026, Meta, Accenture, TaskUs, Inc., and Genpact Limited filed a Joint Motion to Stay Discovery in the 376 Action (ECF No. 92). Fassbender signed and filed the motion ~~on behalf of~~ **for** Meta and Genpact ~~Limited;~~ **Limited.** Chapleau signed with permission ~~on behalf of~~ **for** Accenture. The motion recited that Plaintiff had sought leave to serve a Request for Admission relating to "whether Meta filed a CyberTipline report regarding Plaintiff's account." ~~The motion further~~ **It** stated that Plaintiff had served "'advance notices' and actual notices of specific discovery that Plaintiff intends to seek such as Rule 30(b)(6) depositions and third-party subpoenas."

66. On April 21, 2026, Accenture filed a Time-Sensitive Motion for Protective Order in the 376 Action (ECF No. ~~93), seeking~~ **93). The motion sought** to prevent the April 29-30, 2026 Rule 30(b)(6) deposition and ~~requesting~~ **requested** a ruling by April 27, 2026. Accenture attached

the deposition notice, including Matter for Examination No. 5, as Exhibit ~~1 to that motion.~~ **1.** The motion stated: "This time-sensitive motion must be decided by April 27 because Plaintiff noticed Accenture's deposition for April 29-30."

67. The ~~relief sought by the~~ April 21, 2026 motions ~~encompassed~~ **sought relief reaching** the Anderson deposition, the Accenture Rule 30(b)(6) deposition, and Plaintiff's contemplated third-party ~~discovery, and was sought before either~~ **discovery. Neither** court had ruled on any of ~~the motions.~~ **them.**

68. **Neither April 21, 2026 joint motion—in the 376 Action or the 286 Action—identified any forthcoming response from NCMEC.**

**I.** The April 22, 2026 Letters: Issuance ~~and the Absent Subpoena~~ **Before Formal Service**

69. On April 22, ~~2026 —~~ **2026, Hall issued two letters on NCMEC letterhead. That was** one day after the filings described in Section ~~H, and~~ **H. It was** thirteen days ~~into~~ **after Plaintiff transmitted** the ~~notice period NCMEC had been told would precede~~ **advance-notice package. It was before formal** service ~~— Hall issued two letters on NCMEC letterhead, each~~ **of either subpoena. Each letter was** keyed by caption ~~and case number~~ to one of the two federal actions. One letter ~~references~~ **bears** on its face **the caption "Marvelle Ballentine v. Meta Platforms, Inc., et al.," which identifies** Case No. ~~6:26-cv-00376-AGM-DCI; the~~ **6:26-cv-00376-AGM-DCI. The** other ~~references~~ **bears** on its face **the caption "Marvelle Ballentine v. Devin S. Anderson, et al.," which identifies** Case No. 6:26-cv-00286-AGM-DCI. ~~Hall's issuance of two~~ **Two** letters, each keyed to a separate action, ~~reflects~~ **reflect** the processing of two separate matters ~~keyed to~~ **under** two specific ~~case captions and case numbers.~~ **captions.**

70. ~~Each of the~~ **The** two letters ~~is~~ **are** identical in substantive text. ~~References in this~~ **This** Complaint **refers** to "the April 22, 2026 letter" ~~refer~~ to **mean** the content ~~shared by each of~~ the two ~~letters.~~ **letters share.** Each letter identified Plaintiff by the names "Marvelle J. Ballentine" and "Jay Ballentine" and by the email address jaychizza@icloud.com.

71. The ~~April 22, 2026~~ letter ~~stated, in its opening~~ **opened with this** sentence: "In response to your subpoena issued April 9, 2026, the National Center for Missing & Exploited Children ('NCMEC') provides its written responses as detailed below."

72. ~~No~~ **Neither** subpoena had been **formally** served on NCMEC in connection with Plaintiff. No process server had delivered a subpoena to NCMEC. No subpoena return, proof of service, certificate of service, or process-server affidavit **reflecting service of either subpoena on NCMEC** existed. No court order required Hall or NCMEC to respond. The announced notice period had not run.

73. When the letters issued, none of the April 21, 2026 motions had been decided. Neither court had ruled on any motion to stay discovery or any motion for protective order. The ruling dates the movants **themselves** had requested ~~in their motions for protective order — ~~**had not arrived:** April 24, 2026 in the 286 ~~Action and~~ **Action,** April 27, 2026 in the 376 ~~Action — had not arrived.~~ **Action.**

74. Hall did not ~~await~~ **wait for** formal service of any ~~subpoena before issuing the April 22, 2026 letters.~~ **subpoena.** Hall did not ~~await adjudication of~~ **wait for the courts to rule on** the pending motions.

75. ~~Each of the~~ **Every** requested ruling ~~dates~~ **date** and ~~each of the~~ **every** noticed ~~depositions~~ **deposition** fell after April 22, 2026. The **286 Action** ruling date ~~requested in the 286 Action~~ fell two days after the letters ~~issued, and the~~ **issued. The 376 Action** ruling date ~~requested in the 376 Action~~ fell five days ~~after the letters issued.~~ **after.** The Anderson deposition was ~~noticed~~ **set** for April 28, 2026, six days ~~after the letters issued.~~ **after.** The Accenture Rule 30(b)(6) deposition was ~~noticed~~ **set** for April 29 and 30, 2026, seven and eight days ~~after the letters issued.~~ **after.** No rule, order, or obligation required Hall to issue the letters before **any of** those dates.

76. On April 27, 2026, the magistrate judge in the 286 Action granted the motion for protective order and temporarily stayed discovery. On April 30, 2026, the magistrate judge in the 376 Action entered a report recommending that the joint motion to stay discovery be granted (ECF No. 103). On May 1, 2026, the magistrate judge in the 376 Action granted Accenture's motion for protective order and ordered: "Discovery is temporarily stayed pending resolution of the motion to stay discovery" (ECF No. 104).

77. The ~~April 22, 2026~~ letter did not produce the document ~~that~~ Schedule A described. It ~~substituted an assertion, stating:~~ **stated instead:** "NCMEC has received two (2) CyberTipline reports concerning (1) Marvelle J. Ballentine, (2) Jay Ballentine, and/or (3) the account-level identifier jaychizza@icloud.com between July 1, 2022 and the present."

78. The three identifiers stated in the ~~April 22, 2026~~ letter were quoted from Plaintiff's own April 9, 2026 notice.

79. Each letter was addressed to Plaintiff alone, at ~~Plaintiff's~~ **his** commercial mail-receiving address in Alexandria, ~~Virginia, and contained no~~ **Virginia. Neither letter bore any** notation ~~showing~~ that it was copied to any court or counsel of record. Neither letter was filed in either action.

80. Neither ~~of the April 22, 2026 letters~~ **letter** was a CyberTipline report. Neither ~~letter~~ was a referral or disclosure to any law-enforcement agency. ~~Neither letter was made under, or implemented, any reporting, preservation, referral, or disclosure function described in 18 U.S.C.~~

~~§§ 2258A, 2258B, or 2258C.~~ Each letter was voluntary ~~correspondence,~~ **correspondence. It** issued **after signed subpoenas existed, before formal service of either, and** in the absence of any ~~served subpoena,~~ court ~~order,~~ **order** or other legal obligation. The challenged conduct ~~did not arise from the performance of any responsibility or function described in 18 U.S.C. § 2258D(a), 18 U.S.C. §§ 2258A or 2258C, or 34 U.S.C. § 11293, and~~ was not undertaken as part of any effort to identify a child victim. ~~In the alternative, the~~ **The** conduct alleged was intentional, was undertaken with actual malice and reckless disregard of a substantial risk of injury without legal justification, and served ~~a~~ **the litigation-directed** purpose ~~unrelated to any responsibility or function identified~~ **alleged** in ~~18 U.S.C. § 2258D(a).~~ **Section Q.**

81. Hall was NCMEC's Corporate Counsel when she drafted, signed, and transmitted the ~~April 22, 2026~~ letters. ~~Hall~~ **She** signed both ~~letters~~ in the course of her work at NCMEC's Alexandria, Virginia headquarters.

82. As Corporate Counsel, Hall was responsible for legal correspondence **NCMEC** issued ~~by NCMEC~~ in response to claimed legal process.

83. On information and belief, NCMEC ~~maintains~~ **keeps** ordinary legal-intake records sufficient to ~~reflect~~ **show** whether ~~subpoenas have~~ **a subpoena has** been served on ~~NCMEC.~~ **it.**

84. On information and belief, Hall reviewed or had access to ~~NCMEC's ordinary legal-intake records~~ **those records, and they were** sufficient to ~~determine,~~ **tell her,** before issuance, that no subpoena had been served on NCMEC.

85. Hall's signature appears on each ~~of the April 22, 2026 letters.~~ **letter. Each letter identifies** Hall ~~is identified on each of the April 22, 2026 letters~~ as the sender.

86. Hall controlled or approved the wording of the ~~April 22, 2026~~ letters. Hall selected the language characterizing ~~the April 22, 2026 letters~~ **them** as a response to a subpoena. Hall authorized ~~the letters'~~ **their** transmission.

87. Hall ~~nevertheless~~ drafted and transmitted the ~~April 22, 2026~~ letters.

88. **Before drafting, signing, and transmitting the letters,** Hall reviewed or had access to the docket of Case No. 6:26-cv-00376-AGM-DCI and the docket of Case No. ~~6:26-cv-00286-AGM-DCI before drafting, signing, and transmitting the April 22, 2026 letters.~~ **6:26-cv-00286-AGM-DCI.**

89. Hall had reason to know that ~~the~~ **each** docket ~~of Case No. 6:26-cv-00376-AGM-DCI and the docket of Case No. 6:26-cv-00286-AGM-DCI each~~ contained publicly filed claims brought by ~~Plaintiff, and~~ **Plaintiff. Hall had reason to know** that the docket of Case No. 6:26-

cv-00286-AGM-DCI contained publicly filed claims predicated on the linkage of Plaintiff's name to child-sexual-exploitation terminology.

90. Hall has not withdrawn, corrected, or retracted either letter. Hall has instead affirmatively defended the letters as accurate and proper.

**J. Souras's Legal Responsibilities and Participation in the April 22 Responses**

91. **Souras was NCMEC's Chief Legal Officer before April 22, 2026 and on that date. NCMEC's biography of Souras, submitted to the House Committee on Energy and Commerce with her testimony of March 26, 2025, states that as Chief Legal Officer she manages NCMEC's legal operations relating to its mission. NCMEC's published leadership profile states that Souras is responsible for all legal affairs of NCMEC, including oversight of contractual, litigation, compliance, governance, and intellectual property matters.**

92. **The same NCMEC profile states that Souras advises NCMEC's President and Chief Executive Officer and NCMEC staff on legal issues, provides counsel to NCMEC's Board of Directors, and serves as assistant corporate secretary to the Board. The March 2025 biography states that she collaborates on civil and criminal legal issues relating to online child sexual exploitation with technology companies, prosecutors, defense counsel, and private attorneys.**

93. **Souras has performed those functions in litigation concerning CyberTipline reports. In United States v. Rosenschein, No. 1:16-cr-04571-JCH (D.N.M.), the court's memorandum opinion and order of June 18, 2020 (Doc. 251, at 8) described emails showing that a detective sent Souras, as NCMEC's general counsel, the defendant's discovery request and motion to suppress; that Souras forwarded the suppression motion to the attorney for a technology company; and that government counsel emailed Souras hash values and file names associated with the two CyberTipline reports in that case, which Souras sent to an NCMEC vice president.**

94. **On March 26, 2025, Souras testified before the House Committee on Energy and Commerce as NCMEC's Chief Legal Officer. Her written testimony addressed Meta's CyberTipline reporting, identified Meta as historically the largest reporter to the CyberTipline, addressed the information that CyberTipline reports contain, and stated that NCMEC can share elements of CyberTipline reports only with law enforcement and entities meeting statutory requirements.**

95. **On July 20, 2026, NCMEC published a description of a Senior Counsel position within its Office of Legal Counsel. The description states that the position provides strategic partnership to the Chief Legal Officer and helps ensure that written materials and**

**work product reviewed or issued by the Office of Legal Counsel are accurate, well-sourced, and consistent with NCMEC's positions.**

96. **Before joining NCMEC in 2006, Souras practiced as an associate at Orrick, Herrington & Sutcliffe LLP. Orrick represented Meta in the 376 Action and the 286 Action and received Plaintiff's April 9, 2026 materials on Meta's behalf, as alleged in Sections E and G.**

97. **On April 9, 2026, Plaintiff transmitted the advance-notice package by overnight mail to NCMEC, addressed to "Legal Department / Subpoena Compliance." The package identified the 376 Action and the 286 Action by caption and case number, enclosed signed copies of the two subpoenas, and stated that formal service would follow after the notice period had run. Section G alleges the package.**

98. **On April 22, 2026, Hall signed and issued both letters as NCMEC's Corporate Counsel, on NCMEC letterhead, purporting to state what NCMEC had received. NCMEC's own memorandum in this action describes the letters as NCMEC's responses, issued through its in-house counsel, without awaiting formal service. Section I alleges the letters.**

99. **On information and belief, Souras participated in the handling of the April 9, 2026 request before the letters issued, through review of the request, review of the proposed response, or receipt of information communicated within NCMEC's Office of Legal Counsel about the request and the proposed response.**

100. **On information and belief, Souras approved the wording that stated NCMEC had received two CyberTipline reports concerning Plaintiff's full legal name, his alternate name, and/or his email address, and authorized issuance of that statement on NCMEC's behalf.**

101. **On information and belief, Souras authorized or directed Hall to issue the responses before formal service of either subpoena. Hall signed the letters and caused their transmission.**

102. **On information and belief, Souras's review, approval, and authorization were not part of any effort to identify a child victim. On information and belief, Souras's participation was intentional, was undertaken with actual malice and reckless disregard of a substantial risk of injury without legal justification, and served the litigation-directed purpose alleged in Section Q.**

103. **The April 9 materials and the April 22 letters contained the following information. Plaintiff had supplied the three identifiers. The request sought a document**

**sufficient to show whether NCMEC received or maintains any report concerning those identifiers, and excluded report contents. Formal service was announced as a later step. The letters asserted an association between the identifiers and two reports without identifying any report-specific match.**

104. **The identities of other reviewers, the internal routing of the request and the proposed response, the communications concerning them, and any approval records are maintained in NCMEC's records. Plaintiff cannot reach them without discovery.**

**K.** The April 22, 2026 Letters: Content Defects

105. The ~~April 22, 2026~~ letter ~~did not identify any~~ **identified no** report number, **no** report date, ~~or~~ **and no** reporting electronic service provider.

106. The ~~April 22, 2026~~ letter did not state that Meta ~~Platforms, Inc.~~ submitted either ~~report,~~ **report. It did not state** that either report concerned Plaintiff's Facebook ~~account, or~~ **account. It did not state** that either report concerned Meta's July 4, 2022 contract interference.

107. The ~~April 22, 2026~~ letter ~~linked~~ **joined** Plaintiff's three identifiers ~~in the disjunctive using "and/or" without establishing~~ **with "and/or." It did not establish** that any single identifier corresponded to either report.

108. The ~~April 22, 2026~~ letter ~~did not include a~~ **included no** custodian-of-records declaration ~~or a~~ **and no** certification under Federal Rule of Evidence 902(11) or 902(12).

109. The name "Jay Ballentine," standing alone, ~~is~~ **does** not uniquely ~~identifying.~~ **identify anyone.** The ~~April 22, 2026~~ letter did not state that NCMEC used any disambiguation process to determine that ~~any~~ **a** CyberTipline report associated with ~~the~~ **that** name ~~"Jay Ballentine"~~ concerned Plaintiff rather than another person ~~using~~ **of** the same or similar name.

110. The ~~April 22, 2026~~ letter did not state whether ~~the identifiers~~ "Marvelle J. Ballentine," "Jay Ballentine," or jaychizza@icloud.com appeared in any CyberTipline report, ~~appeared~~ in any electronic-service-provider submission, ~~appeared~~ **or** in NCMEC's internal records, or **whether those identifiers** were derived from any source independent of the ~~April 22, 2026 letter.~~ **letter itself.**

111. The ~~April 22, 2026~~ letter did not state that NCMEC had determined that "Marvelle J. Ballentine," "Jay Ballentine," and jaychizza@icloud.com ~~referred~~ **refer** to the same person.

112. **Schedule A stated the period "July 1, 2022 through the date of compliance." The letters stated the period "July 1, 2022 and the present."**

113. **Schedule A referred to any "CyberTipline report, referral, or submission." The letters stated that NCMEC had received "two (2) CyberTipline reports."**

114. **The letters listed "Marvelle J. Ballentine," "Jay Ballentine," and jaychizza@icloud.com in the same order in which Plaintiff listed them in the April 9 materials.**

**L.** Statutory Imputation and Defamatory Meaning

115. ~~Under~~ **Section 2258A of Title** 18 ~~U.S.C. § 2258A,~~ **requires** an electronic service provider ~~must~~ **to** report to NCMEC's CyberTipline after obtaining actual knowledge of facts or circumstances from which there is an apparent violation of specified federal child-exploitation statutes. The CyberTipline also receives reports from other sources concerning suspected child exploitation.

116. The **statutes** enumerated ~~statutes referenced~~ in 18 U.S.C. § 2258A include 18 U.S.C. § 2251 (sexual exploitation of children), § 2251A (selling or buying of children), § 2252 (certain activities relating to material involving the sexual exploitation of minors), § 2252A (certain activities relating to material constituting or containing child pornography), and § 2422(b) (coercion and enticement of minors).

117. In the context alleged, a reader of the ~~April 22, 2026~~ letter would understand the statement that NCMEC had received two CyberTipline reports "concerning" Plaintiff's full legal name and identifiers to convey that NCMEC had received two reports associating Plaintiff personally with suspected child-exploitation conduct and that the reported matter could be made available to law enforcement.

118. ~~The April 22, 2026 letter, by~~ **By** linking Plaintiff's full legal name to two CyberTipline reports, **the letter** imputes to Plaintiff conduct constituting offenses involving moral ~~turpitude for which Plaintiff, if~~ **turpitude. If** the imputation were true, **Plaintiff** could be indicted and ~~punished.~~ **punished for those offenses.**

119. The imputation ~~conveyed by each of the two April 22, 2026 letters~~ is false. Plaintiff has not engaged in conduct constituting, or reasonably appearing to constitute, a violation of any statute enumerated in 18 U.S.C. § 2258A.

**M.** Transmission, Publication, and Continuing Exposure

120. Each ~~of the two April 22, 2026 letters~~ **letter** was transmitted to Plaintiff's commercial mail-receiving agency address at 1520 Belle View Blvd, Ste. #5847, Alexandria, Virginia 22307.

121. ~~The address is operated by a~~ **A** commercial mail-receiving ~~agency. In connection with the creation~~ **agency operates that address. To create** and ~~maintenance of~~ **maintain** the mailbox account, Plaintiff ~~was required~~ **had** to ~~provide~~ **supply** identifying information, including ~~Plaintiff's~~ **his** full legal name and photographic identification. USPS Form ~~1583~~ **1583,** authorizing the ~~commercial mail-receiving~~ agency to receive and process mail on Plaintiff's ~~behalf~~ **behalf,** was on file.

122. The ~~commercial mail-receiving~~ agency maintains a mail-management system. ~~The mail-management~~ **That** system associates incoming mail, scanned mail images, account records, Plaintiff's verified identity, Plaintiff's full legal name, and Plaintiff's photographic identification with Plaintiff's mailbox account.

123. ~~The commercial mail-receiving~~ **In the ordinary course of business, the** agency opens incoming envelopes, scans **the** contents, and uploads digital images to the mail-management ~~system in the ordinary course of business.~~ **system.**

124. On or about April 28, 2026, ~~a commercial mail-receiving~~ **an** agency employee opened the envelope containing the two ~~letters,~~ **letters. To perform the scan service, the employee** necessarily reviewed the contents of each ~~letter to perform the agency's scan service,~~ **letter. The employee** scanned each ~~letter,~~ **letter** and uploaded a digital reproduction of each ~~letter~~ to the mail-management system.

125. ~~The~~ **That** employee ~~who reviewed, scanned, and uploaded each letter~~ was an independent commercial mail-processing ~~employee~~ **employee,** authorized only to perform routine mail-processing services. The employee had no role in Plaintiff's litigation or legal ~~affairs and~~ **affairs. The employee** had no attorney-client, fiduciary, or personal relationship with Plaintiff.

126. The employee viewed, handled, and scanned the contents of each letter in the ordinary course of the agency's commercial mail-processing business.

127. ~~Hall, as the Corporate Counsel who~~ **Hall** selected the transmission ~~channel,~~ **channel. As Corporate Counsel, she** knew or had reason to know that ~~the address was operated by~~ a commercial mail-receiving agency **operated the address,** and that delivery through that channel ~~necessarily~~ required third-party employees to open, review, scan, digitize, and process the contents before Plaintiff could access them.

128. Hall directed transmission of the letters to the commercial mail-receiving agency address rather than to the clerk of court in either Middle District of Florida action, to any party's counsel of record, or to a secure transmission channel.

129. ~~Following the~~ **After** scanning and upload, the ~~commercial mail-receiving~~ agency forwarded the physical envelope containing both letters to Plaintiff's designated local mailbox in the ordinary course of its mail-forwarding operations.

130. The administrator of both the commercial mail-receiving agency account and the local mailbox account opened the forwarded envelope and read both letters in the ordinary course of her administrative duties.

131. **That administrator is a person distinct from Plaintiff. She read the letters while administering the two mailbox accounts.**

~~The administrator who later opened and read the forwarded letters was a person distinct from Plaintiff and did so while administering the two mailbox accounts. That additional reading was not necessary to establish the first publication in Virginia, which had already occurred when the commercial mail-receiving agency employee reviewed and scanned the letters.~~

132. The digital reproductions of the ~~April 22, 2026~~ letters remain stored in the ~~commercial mail-receiving~~ agency's mail-management ~~system~~ **system. They are** outside Plaintiff's possession ~~or~~ **and** control.

133. The mail-management system associates ~~the digital~~ **those** reproductions ~~of the April 22, 2026 letters~~ with Plaintiff's verified identity, Plaintiff's full legal name, Plaintiff's mailbox account, and Plaintiff's photographic identification.

134. On information and belief, administrators, employees, contractors, ~~or~~ **and** other persons with system-level access to the ~~commercial mail-receiving agency's~~ mail-management system can access **the** account records and scanned mail images associated with Plaintiff's mailbox account.

135. Plaintiff does not know the identities of all persons with administrative or system-level access to ~~the commercial mail-receiving agency's mail-management~~ **that** system.

136. Plaintiff does not control ~~the commercial mail-receiving agency's mail-management system, including~~ **that system. He does not control its** access permissions, administrative access, audit logs, retention practices, or internal dissemination of scanned mail images associated with ~~Plaintiff's~~ **his** mailbox account.

**N.** Receipt and Reading

137. On April 27, 2026, the magistrate judge in the 286 Action granted the motion for protective order and temporarily stayed discovery. The April 28, 2026 deposition of Anderson did not proceed.

138. On April 28, 2026, Plaintiff's commercial mail-receiving agency opened and scanned the letters, making digital images accessible to Plaintiff through the mail-management system. Plaintiff opened, viewed, and read both letters that **day. That** day ~~—~~**was** the noticed date of the Anderson ~~deposition, and~~ **deposition. It was** the eve of the noticed Accenture Rule 30(b)(6) deposition.

139. Plaintiff ~~accessed and~~ read the letters while physically present in Osceola County, ~~Florida, and~~ **Florida. He** sustained the emotional and functional consequences of the letters there.

**O.** The Agreement

140. Meta and NCMEC maintain an established ~~channel through which~~ **channel. Through it,** CyberTipline reports are ~~transmitted~~ **transmitted,** and through ~~which they~~ **it, Meta and NCMEC** communicate concerning such reports.

141. Between April 9 and April 22, 2026, Meta, acting through one or more authorized representatives or intermediaries, and Hall, acting individually and as Corporate Counsel of ~~Defendant~~ NCMEC, reached an ~~understanding that~~ **understanding. Under it,** Hall would issue correspondence asserting the existence of CyberTipline reports associated with one or more of Plaintiff's ~~identifiers~~ **identifiers. She would do so** before **formal** service of the ~~intended~~ subpoenas and while motions directed at the same discovery remained pending. ~~This allegation rests on the coordinated, case-specific sequence pleaded in the numbered facts set forth below in this Section, including the absence of any compulsory obligation, the timing of the two letters, and their precise substitution of a source-free assertion for imminent sworn examination.~~ On information and belief, one or more Doe Defendants participated in or implemented the understanding.

~~The understanding alleged in the preceding paragraph is supported by the following facts, each pleaded above and incorporated here.~~

142. ~~First: as of April 9, 2026,~~ NCMEC and counsel for Meta and Accenture ~~had~~ received identical **materials, which Plaintiff transmitted on April 9, 2026. Those** materials ~~identifying~~ **identified** the same two federal actions, the same three identifiers, and the same discovery objective.

143. ~~Second: the~~ **The** April 21, 2026 motions ~~were directed at~~ **targeted** the same discovery the April 9, 2026 materials ~~described, and the~~ **described. The** joint motion ~~filed~~ in the 376 Action expressly identified Plaintiff's advance notices of intended subpoenas and Plaintiff's CyberTipline discovery.

144. ~~Third: the~~ **The** depositions covering the report-existence question were ~~imminent,~~ **imminent. They were** noticed for April 28, April 29, and April 30, 2026.

145. **Neither subpoena had been formally served on NCMEC. No court order required Hall or NCMEC to respond.**

~~Fourth: Hall and NCMEC were under no compulsory obligation of any kind. No subpoena had been served, and no court order existed.~~

146. ~~Fifth: one~~ **One** day after the motions were filed, Hall issued ~~not one generalized communication but~~ two ~~separate instruments, each bearing~~ **letters. Each bore** the caption ~~and case number~~ of one of the two actions.

147. ~~Sixth:~~ Hall issued the letters before ~~expiration of~~ the notice period that Plaintiff had ~~stated~~ **said** would precede formal ~~service.~~ **service had expired.**

148. ~~Seventh: the~~ **The** letters ~~stated the assertion~~ **asserted** that reports ~~exist while omitting~~ **exist. They omitted** the reporting provider, report dates, report numbers, matched identifier, platform, account connection, and disposition.

149. **The letters addressed the subject scheduled for sworn examination at the noticed depositions. The letters were not sworn. They were issued outside the discovery process. They identified no source for the assertion they contained.**

~~Eighth: the letters supplied, outside the discovery process, an unsworn and source-free assertion concerning the precise subject scheduled for sworn examination, without exposing Meta, Accenture, NCMEC, or any witness to examination concerning the source, meaning, or basis of that assertion.~~

150. ~~Ninth:~~ Hall issued the letters while the April 21, 2026 motions remained ~~pending,~~ **pending** and before any court had ~~determined~~ **decided** whether the **targeted** discovery ~~those motions targeted~~ would proceed.

151. The assertion ~~supplied by~~ **in** the ~~April 22, 2026~~ letters purported to answer the ~~same~~ report-existence question ~~identified~~ **stated** in Matter for Examination No. 5 of Accenture's noticed Rule 30(b)(6) **deposition. That** deposition ~~without requiring Accenture to designate a witness, testify under oath, disclose its own knowledge, or submit to examination concerning the source and basis of the assertion supplied by NCMEC.~~ **did not occur.**

152. The identities of ~~all persons~~ **every person** who participated in any ~~communications~~ **communication** between or among Meta, Accenture, NCMEC, and their ~~respective~~ representatives concerning Plaintiff, the identifiers, the reports, the subpoenas, or the two federal ~~actions and~~ **actions, together with** the media and contents of those ~~communications~~ **communications,** are maintained ~~within~~ **in** the records of Meta, Accenture, NCMEC, and their

~~respective representatives, and are not accessible to~~ **representatives.** Plaintiff **cannot reach them** without discovery.

153. Hall knowingly joined and implemented the ~~understanding by signing~~ **understanding. She signed** the ~~April 22, 2026 letters and, on~~ **letters. On** information and belief, ~~preparing~~ **she prepared** or ~~approving~~ **approved** their wording and ~~authorizing~~ **authorized** their transmission.

154. **On information and belief, Souras knowingly participated in implementing the understanding. She did so by approving the wording that associated Plaintiff's identifiers with two CyberTipline reports and by authorizing or directing Hall to issue the letters before formal service, as alleged in Section J. On information and belief, Souras did so with knowledge that the 376 Action and the 286 Action were pending, that Plaintiff's April 9, 2026 request had been directed to NCMEC, that formal service of the subpoenas was announced to follow, and of the purpose of the understanding alleged in Section Q.**

155. On information and belief, ~~NCMEC, acting~~ **NCMEC knowingly joined and implemented the understanding. It acted** through Hall and **through** one or more additional personnel who approved the issuance of the ~~April 22, 2026 letters, knowingly joined and implemented the understanding.~~ **letters.**

**P.** Defendants' Subsequent Statements Concerning the Letters and Discovery

156. Plaintiff commenced ~~the 1341 Action~~ **Ballentine v. National Center for Missing & Exploited Children and Katie Hall, No. 1:26-cv-01341-MSN-WBP (E.D. Va.) (the "1341 Action"),** on May 19, 2026, asserting claims arising from the April 22, 2026 letters.

157. On June 16, 2026, NCMEC and Hall jointly moved to dismiss the complaint in the 1341 Action. ~~The~~ **Their supporting** memorandum ~~filed in support of that motion~~ (1341 Action, ECF No. 5) stated that NCMEC "did not await formal service of the subpoenas."

158. As of July 15, 2026, Plaintiff had served no interrogatory, no request for production, no request for admission, and no deposition notice in the 1341 Action. No discovery response was due from ~~any party.~~ **anyone.** The only discovery-related activity pending ~~in the 1341 Action~~ was planning under Federal Rule of Civil Procedure 26(f).

159. On July 15, 2026, NCMEC and Hall jointly moved to stay pre-answer discovery and Rule 26 obligations in the 1341 Action (1341 Action, ECF No. 11).

160. ~~Among the grounds~~ **The motion** stated ~~in the motion was the following:~~ **that** NCMEC "has reason to be concerned that information provided in discovery in this matter could give rise to further litigation from Mr. Ballentine."

161. **No declaration or affidavit accompanied the motion.** The motion ~~was accompanied by no declaration or affidavit. It~~ identified no specific discovery request and no particularized burden ~~associated with~~ **of** responding to any request.

162. Plaintiff ~~filed an opposition to~~ **opposed** the motion on July 16, 2026. By order dated July 17, 2026, the Court granted the motion and stayed discovery pending resolution of Defendants' motion to ~~dismiss.~~ **dismiss** (1341 Action, ECF Nos. 13, 15).

163. On July 27, 2026, Plaintiff moved in the 1341 Action for leave to file an amended and supplemental ~~complaint adding~~ **complaint. The proposed pleading added** Meta ~~Platforms, Inc.~~ and Doe Defendants and ~~asserting~~ **asserted** a claim under the first clause of 42 U.S.C. § ~~1985(2).~~ **1985(2)** (1341 Action, ECF No. ~~18.)~~ **18).**

164. Meta was not then a party to the 1341 ~~Action and~~ **Action. Meta** had not appeared in ~~that action.~~ **it.**

165. On July 29, 2026, NCMEC and Hall jointly ~~filed an opposition to~~ **opposed** that ~~motion.~~ **motion** (1341 Action, ECF No. ~~20.) The opposition was~~ **20). Counsel for NCMEC and Hall** signed and filed ~~by counsel for NCMEC and Hall.~~ **the opposition.** No attorney had appeared for Meta in the 1341 Action.

166. The opposition stated that the 1341 Action "arises out of two subpoenas sent, but not formally served."

167. The opposition stated that "NCMEC responded exactly as instructed in the ~~subpoenas," and~~ **subpoenas." It** characterized the letters as reflecting "a subpoena recipient following, to a 't,' the instructions in the subpoenas."

168. The opposition stated that Hall "was clearly acting in the course and scope of her employment in responding to the subpoenas," that Hall "was working within the course and scope of her employment," and that Hall "is entitled to the same defenses as the National Center for Missing and Exploited Children."

169. Under ~~a~~ **the** heading ~~stating~~ "There is No Basis to Include the Proposed New Defendants in this Matter," the opposition stated that, absent the alleged conspiracy, "there would be no claim asserted as to John or Jane Does, or Meta Platforms, Inc."

170. As of July 29, 2026, NCMEC and Hall had ~~represented to~~ **told** the Court, in filed papers, that the ~~April 22, 2026~~ letters followed Plaintiff's subpoena instructions exactly.

171. As of July 29, 2026, NCMEC and Hall had also ~~represented to~~ **told** the Court, in filed papers, that NCMEC "has reason to be concerned that information provided in discovery in this matter could give rise to further litigation from Mr. Ballentine."

172. Neither the July 15, 2026 motion ~~to stay~~ nor the July 29, 2026 opposition identified what information **about the letters, if** provided in ~~discovery concerning the April 22, 2026 letters~~ **discovery,** could give rise to further litigation.

173. The statements identified in this Section are alleged as facts establishing timing, notice, knowledge, coordination, and admissions, consistent with the Scope of ~~Allegations, and not as conduct on which any~~ **Allegations. No** claim for relief ~~is predicated.~~ **rests on them.**

174. Plaintiff ~~thereafter~~ **then** voluntarily dismissed the 1341 Action without prejudice under Federal Rule of Civil Procedure 41(a)(1)(A)(i).

175. **On August 12, 2026, NCMEC filed a memorandum in support of its motion to dismiss the First Amended Complaint in this action. The memorandum stated that NCMEC "responded to the subpoenas without awaiting formal service."**

176. **The August 12, 2026 memorandum stated that Plaintiff "does not have access to those reports." It described the asserted CyberTipline linkage as involving Plaintiff, "a person with the same name," or an e-mail address.**

177. **The August 12, 2026 memorandum expressly addressed Plaintiff's allegations that he is a survivor of childhood sexual abuse and the emotional effects Plaintiff alleged followed his reading of the letters.**

178. **On August 13, 2026, Plaintiff asked counsel for NCMEC and Hall a question: did either CyberTipline report referenced in the letters, as originally received by NCMEC, contain or otherwise identify (1) "Marvelle J. Ballentine"; (2) "Jay Ballentine"; or (3) jaychizza@icloud.com? Counsel did not answer.**

179. **On August 13, 2026, counsel for NCMEC and Hall wrote: "I read your email as being upset with the language used in the memorandum-I did not intend to offend you with the phrasing, but my point was you got exactly what you asked for, using the language you provided."**

180. **On August 13, 2026, Meta, Accenture, Genpact Limited, and TaskUs, Inc. jointly moved to dismiss Plaintiff's operative complaint in the 376 Action, then pending in the United States District Court for the Northern District of California as Ballentine v. Meta Platforms, Inc., No. 3:26-cv-05939-RFL (ECF No. 152). The filing cited this action by case number.**

181. **At page 4, footnote 3, the August 13, 2026 filing characterized this action as "a complaint against the National Center for Missing & Exploited Children ('NCMEC') and**

its corporate counsel in the Eastern District of Virginia based on allegedly defamatory language in a letter sent by NCMEC to Plaintiff in response to a subpoena."

182. When that filing was made, Meta was a named defendant in this action. Meta had been served in this action on July 31, 2026. The operative First Amended Complaint asserted Count IV, under the first clause of 42 U.S.C. § 1985(2), against Meta.

183. The August 13, 2026 filing identified this action. It did not identify Meta as a defendant in this action. It did not identify the claim under 42 U.S.C. § 1985(2), which alleges interference with Plaintiff's participation in the very proceeding in which the filing was made.

184. By August 13, 2026, Meta had actual knowledge that this action exists; that this action relates to the 376 Action; and that Plaintiff has alleged against Meta a claim concerning Plaintiff's participation in the 376 Action.

185. The August 13, 2026 filing is alleged as a subsequent fact bearing on Meta's knowledge, position, coordination, and litigation context, consistent with the Scope of Allegations. No claim for relief rests on it.

186. On September 2, 2026, Hall moved to dismiss the First Amended Complaint (ECF No. 45). Hall expressly "adopts and joins in" NCMEC's Motion to Dismiss and Memorandum in Support (ECF Nos. 10 and 11). She requested dismissal with prejudice on the same grounds.

187. Also on September 2, 2026, Hall opposed Plaintiff's Rule 26(d)(1) Motion (ECF No. 46), expressly adopting and joining NCMEC's opposition at ECF No. 33.

188. Hall's September 2, 2026 filings are alleged as subsequent facts. They establish Hall's express adoption of NCMEC's positions, her continuing litigation position, and her knowledge of the matters addressed in those positions, consistent with the Scope of Allegations. No independent claim for relief rests on either filing.

189. As of the filing of this Second Amended Complaint, the letters remain unretracted and uncorrected.

Q. The Objective and the Means of Intimidation

190. The purpose of the understanding was to deter Plaintiff, by intimidation, from continuing to attend the 376 Action and the 286 Action as a party, and from testifying freely, fully, and truthfully as a prospective witness in those pending federal proceedings, including ~~concerning~~ on the CyberTipline-reporting question.

191. The intimidation ~~was directed both at~~ **targeted** Plaintiff's continued attendance as a party in the two pending federal actions and ~~at Plaintiff's own~~ **his** prospective sworn testimony concerning his account, the July 4, 2022 enforcement event, the absence of any law-enforcement contact with ~~Plaintiff,~~ **him,** and his damages.

192. Defendants knew that Plaintiff was pro ~~se; that~~ **se. They knew** the noticed depositions depended on ~~Plaintiff's~~ **his** personal preparation and ~~examination; that~~ **examination. They knew** the CyberTipline issue was central to the noticed ~~examinations; and that~~ **examinations. They knew** Plaintiff was a prospective witness concerning his account, the enforcement event, and his damages.

193. The letters bore the letterhead of the federally designated clearinghouse for CyberTipline ~~reporting;~~ **reporting. They** carried the signature of its Corporate ~~Counsel; invoked and purported~~ **Counsel. They called themselves responses** to ~~respond to compulsory legal process even though no subpoena had been served;~~ **subpoenas before formal service. They** associated Plaintiff's full legal name, alternate name, and email identifier with CyberTipline ~~reports;~~ **reports. They** omitted the reporting provider, report dates, report numbers, matched identifier, platform, account connection, and ~~disposition;~~ **disposition. They** were keyed to the two federal actions by ~~caption and case number; were~~ **caption. They** issued while the depositions remained imminent and the protective motions remained ~~pending; and~~ **pending. They** were addressed to Plaintiff alone.

194. ~~The~~ **A reasonable reader would take the** letters ~~were reasonably understood~~ to communicate ~~that~~ **this:** NCMEC possessed reports generated in connection with apparent violations of federal child-exploitation ~~statutes, associating~~ **statutes; those reports associated** one or more of Plaintiff's identifiers with the reported ~~matter,~~ **matter;** and ~~that~~ those reports could be available to law enforcement.

195. Plaintiff understood the letters to mean that federal reporting records connected his identity to suspected child-exploitation conduct and that law enforcement could treat him as a subject of investigation.

196. Defendants intended that fear of investigation, arrest, or prosecution **would** cause Plaintiff to dismiss or withdraw from the two federal ~~actions and thereby~~ **actions. That would** deter Plaintiff, as a party, from continuing to attend those ~~proceedings, and~~ **proceedings. It would** deter Plaintiff, as a prospective witness, from testifying freely, fully, and truthfully. ~~The abandonment~~ **Abandonment** of the contemplated CyberTipline discovery and ~~the~~ impairment of Plaintiff's preparation were intended and foreseeable consequences of that deterrence. ~~Defendants' intent is alleged generally and rests on the facts pleaded in this Complaint.~~

**R.** Overt Acts

197. In furtherance of the understanding, Hall signed each of the two April 22, 2026 ~~letters, and, on~~ **letters. On** information and belief, **she** prepared or approved their wording and authorized their transmission.

198. In furtherance of the understanding, Hall issued ~~and caused the mailing of~~ the two case-keyed letters **and caused them to be mailed** to Plaintiff.

199. **In furtherance of the understanding, on information and belief, Souras reviewed the proposed response, approved the wording associating Plaintiff's identifiers with two CyberTipline reports, and authorized or directed Hall to issue the letters before formal service.**

200. The letters ~~were~~ issued and **were** mailed before **formal** service of ~~any~~ **either** subpoena, before the announced notice period had run, and before adjudication of the April 21, 2026 motions.

201. In furtherance of the understanding, NCMEC, acting through Hall and one or more additional personnel, approved the issuance of the two ~~April 22, 2026~~ letters and authorized the use of NCMEC's name, letterhead, and institutional identity in ~~each letter.~~ **each.**

**S.** Injury

202. Plaintiff's injury began on April 28, 2026, ~~upon reading~~ **when he read** the two letters. ~~Upon reading the letters, Plaintiff vomited and~~ **He vomited. He** wept.

203. Plaintiff understood the letters to mean that federal reporting records connected his identity to suspected child-exploitation conduct and that law enforcement could treat him as a subject of investigation. ~~Plaintiff, who~~ **Plaintiff** has engaged in no conduct constituting or appearing to constitute a violation of any statute enumerated in 18 U.S.C. § ~~2258A,~~ **2258A. He nonetheless** lived in acute fear of imminent governmental investigation, arrest, search, and ~~prosecution, and~~ **prosecution. He** believed that continuing the two actions and pressing the CyberTipline issue could expose him to those consequences. That fear persisted in acute form in the days ~~following~~ **after** April 28, 2026.

204. Plaintiff feared that Hall and NCMEC had ~~transmitted~~ **sent** copies of the letters to counsel for the defendants in the two ~~actions and~~ **actions. He feared** that the letters, each bearing a federal ~~caption and case number,~~ **caption,** would be filed on the public dockets of those ~~actions~~ **actions,** placing on a public federal docket a statement from the federally designated clearinghouse for CyberTipline reporting ~~associating Plaintiff's~~ **that associated his** legal name with two CyberTipline reports. ~~Plaintiff further~~ **He** feared that family members following ~~the~~

~~public dockets of the two actions,~~ **those dockets,** including family members with children, would distance themselves from ~~Plaintiff~~ **him** if the letters were filed.

205. ~~Because each~~ **Each** letter was created ~~specifically~~ for one pending ~~action,~~ **action. Each** bore that action's ~~caption and case number, and~~ **caption. Each** purported to answer discovery directed at the CyberTipline ~~issue,~~ **issue.** Plaintiff **therefore** understood the asserted reports as consequences connected to his continued pursuit of that issue in the two actions. ~~Plaintiff~~ **He** believed that dismissing the actions and abandoning the contemplated discovery would end the proceedings through which the asserted reports had surfaced and **would** reduce the perceived risk of further governmental attention.

206. The fear caused Plaintiff an acute psychological and functional injury ~~with onset on~~ **beginning** April 28, ~~2026, including disrupted sleep, disrupted eating,~~ **2026. His sleep was disrupted. His eating was disrupted. He suffered** intrusive fear of contact by law ~~enforcement,~~ **enforcement. He suffered** recurrent involuntary recollections of ~~Plaintiff's~~ **his** own childhood sexual ~~abuse, an inability to~~ **abuse. He could not** sustain attention on litigation ~~materials, and~~ **materials. He** lost productive and income-producing time.

207. During the acute period, Plaintiff distanced himself from his own ~~children because he~~ **children. He** expected to be taken into ~~custody by law enforcement.~~ **custody.**

208. ~~Upon~~ **On** reading the letters, Plaintiff immediately considered dismissing both federal ~~actions because he~~ **actions. He** believed that continuing to litigate the CyberTipline issue exposed him to criminal investigation or prosecution. On multiple occasions in the days ~~following~~ **after** April 28, 2026, Plaintiff refrained from dismissing the two actions only by deliberate effort.

209. During the acute period, the letters' assertion that two CyberTipline reports existed dominated Plaintiff's ~~attention, and Plaintiff~~ **attention. He** did not examine the letters' stated procedural predicate. Days later, ~~upon~~ **on** reviewing the letters again, ~~Plaintiff~~ **he** recognized that no subpoena had been ~~served and~~ **served. He** understood **then** that the letters were voluntary ~~correspondence rather than~~ **correspondence, not** responses compelled or authenticated through judicial process. From that realization, the letters' perceived official and compulsory force diminished, and Plaintiff's acute fear of imminent arrest began to subside.

210. The letters' assertion stands unretracted and uncorrected. The digital reproductions ~~of the letters~~ persist in the ~~commercial mail-receiving~~ agency's mail-management ~~system~~ **system,** outside Plaintiff's possession ~~or~~ **and** control. Apprehension concerning the asserted reports recurred while the two actions remained pending.

211. Plaintiff continued ~~prosecuting~~ **to prosecute** the two actions despite the acute ~~impairment, through~~ **impairment. He did so by** deliberate ~~effort, while performing litigation~~

~~functions~~ **effort and** at materially diminished ~~capacity, including~~ **capacity. That diminished capacity affected** his responses to the then-pending stay and protective-order motions, his evaluation and pursuit of the contemplated NCMEC discovery, and ~~the~~ **his** administration of the canceled deposition sittings, including **his** communications with the court reporter and videographer he had retained.

212. **Plaintiff ultimately refused to dismiss the two actions.**

~~Plaintiff's ultimate refusal to dismiss the two actions did not eliminate the deterrent effect of the intimidation or the injuries it caused.~~

213. The acts undertaken in furtherance of the understanding injured Plaintiff in his ~~person,~~ **person. They** materially impaired his continued attendance as a party in the federal ~~proceedings, and~~ **proceedings. They** materially impaired his ability to testify freely, fully, and truthfully as a prospective witness. The injuries alleged in this Section, including the impairment of Plaintiff's litigation preparation, are consequences of that deterrence.

214. The conduct alleged in this Complaint caused Plaintiff humiliation, embarrassment, mental suffering, injury to reputation, and severe emotional distress.

215. **As of the filing of this Complaint, Plaintiff does not know which of the three identifiers listed in the letters, if any, appears in or otherwise identifies a person in either of the two CyberTipline reports the letters reference.**

216. **The depositions noticed for April 28, April 29, and April 30, 2026 did not occur.**

217. **Plaintiff has obtained no sworn testimony answering whether Meta submitted a CyberTipline report in connection with his Facebook account or the July 4, 2022 enforcement event.**

218. **The 376 Action remains pending in the United States District Court for the Northern District of California as Ballentine v. Meta Platforms, Inc., No. 3:26-cv-05939-RFL.**

219. **The dismissal of the 286 Action remains on appeal to the United States Court of Appeals for the Eleventh Circuit, No. 26-12641. Plaintiff has filed his opening brief.**

**T. Plaintiff's Name, Meta Account, and the CyberTipline Reports**

220. **Plaintiff's legal name is Marvelle J. Ballentine.**

221. **Before April 22, 2026, Plaintiff never used "Marvelle J. Ballentine" to create, register, identify, maintain, access, or operate any account on any product or service owned or operated by Meta that Plaintiff used.**

222. **Plaintiff never used "Marvelle J. Ballentine" as a username, profile name, display name, account name, or other identity on any Meta product or service that Plaintiff used.**

223. **Plaintiff never gave "Marvelle J. Ballentine" to Meta as the name identifying Plaintiff or any Meta account he created, maintained, or operated.**

224. **Plaintiff used the name "Jay Ballentine" in connection with his Meta accounts.**

225. **The Facebook account associated with the July 4, 2022 enforcement event was maintained under the name "Jay Ballentine."**

226. **Plaintiff included "Marvelle J. Ballentine" in the April 9, 2026 materials because it is his legal name and the name under which the 376 Action and the 286 Action were pending.**

227. **From July 4, 2022 through the filing of this Complaint, no law-enforcement agency has contacted Plaintiff concerning any CyberTipline report associated with his Facebook account or the July 4, 2022 enforcement event.**

228. **On information and belief, Meta did not submit to NCMEC, in connection with the July 4, 2022 Facebook enforcement event, a CyberTipline report that contained or otherwise identified Plaintiff as "Marvelle J. Ballentine."**

229. **On information and belief, NCMEC did not receive from Meta, in connection with the July 4, 2022 Facebook enforcement event, a CyberTipline report that contained or otherwise identified Plaintiff as "Marvelle J. Ballentine."**

230. **On information and belief, neither CyberTipline report referenced in the letters, as originally received by NCMEC, contained or otherwise identified Plaintiff as "Marvelle J. Ballentine."**

231. **On information and belief, neither CyberTipline report referenced in the letters concerned Plaintiff personally.**

232. **The contents and original submitting information for the two reports referenced in the letters are maintained in records controlled by NCMEC and, to the extent Meta submitted either report, by Meta. They are unavailable to Plaintiff.**

**COUNT I**

DEFAMATION PER SE AND DEFAMATION BY IMPLICATION ~~(Letter Referencing Case No. 6:26-cv-00376-AGM-DCI) (Against Defendants Katie Hall and NCMEC)~~

**(Letter Referencing Case No. 6:26-cv-00376-AGM-DCI)**

**(Against Defendants Katie Hall, Panayiota Souras, and NCMEC)**

233. Plaintiff incorporates by reference the allegations in the Preliminary Statement, Jurisdiction and Venue, Parties, and Scope of Allegations sections, and Sections A, B, I, J, K, L, M, ~~O,~~ **N, P, S,** and ~~R~~ **T** of the Facts, as if fully set forth herein.

234. This Count is pleaded in the alternative under Federal Rule of Civil Procedure 8(d)(2).

235. On or about April ~~22,~~ **28,** 2026, Hall ~~published~~ **caused** the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI **to be published** to third parties through the transmission and processing described in Section ~~L~~ **M** of the Facts. **On information and belief, Souras participated in that publication by approving the wording of the letter and by authorizing or directing its issuance through Hall.**

236. Publication first occurred in ~~Virginia~~ **Virginia. It occurred** when the commercial mail-receiving agency employee opened, reviewed, scanned, and uploaded the letter in the ordinary course of the transmission channel ~~selected by Hall. Additional~~ **Hall selected. Further** circulation occurred when the administrator of Plaintiff's mailbox accounts later opened and read the forwarded letter.

237. The digital reproduction of the ~~April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI~~ **letter,** created by the ~~commercial mail-receiving~~ agency on April 28, ~~2026~~ **2026,** remains ~~associated~~ in the ~~commercial mail-receiving~~ agency's mail-management **system. That** system **associates the reproduction** with Plaintiff's verified identity, Plaintiff's full legal name, Plaintiff's mailbox account, and Plaintiff's photographic identification.

238. The ~~April 22, 2026~~ letter ~~referencing Case No. 6:26-cv-00376-AGM-DCI~~ is of and concerning Plaintiff. ~~The letter~~ **It** identifies ~~Plaintiff by the names~~ **him as** "Marvelle J. Ballentine" and "Jay Ballentine" and by the email address jaychizza@icloud.com.

239. The ~~April 22, 2026~~ letter ~~referencing Case No. 6:26-cv-00376-AGM-DCI~~ is defamatory per se. ~~The letter~~ **It** imputes to Plaintiff the commission of a criminal offense involving moral turpitude for which Plaintiff, if the imputation were true, could be indicted and punished.

240. ~~The defamatory sting of the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI is that~~ Hall, writing as NCMEC's Corporate Counsel and on NCMEC letterhead, associated Plaintiff's full legal name with two CyberTipline reports. The CyberTipline receives reports concerning suspected online child sexual exploitation, including **the** mandatory electronic-service-provider reports ~~under~~ **required by** 18 U.S.C. § 2258A. A reasonable reader would understand the association to convey that NCMEC had received reports linking Plaintiff personally to suspected child-exploitation conduct and that the reported matter could be available to law enforcement.

241. In the alternative, ~~to~~ **if** the ~~extent the April 22, 2026~~ letter ~~referencing Case No. 6:26-cv-00376-AGM-DCI~~ is not defamatory per se on its face, ~~the letter~~ **it** is defamatory by implication. Hall used the ~~verb "concerning" and~~ **word "concerning." She** placed Plaintiff's full legal name in the same sentence as "two CyberTipline reports." **She included no limiting language.** The letter does not ~~include limiting language stating~~ **state** that the reports might match only one identifier, might concern a different person, might have been submitted by a non-Meta provider, might be unrelated to Plaintiff's Facebook account, or might not have resulted in any law-enforcement referral. ~~The omission of those limitations~~ **Those omissions** caused the letter to convey that the reports concern Plaintiff personally. ~~The circumstances alleged above support a reasonable inference that~~ Hall intended the letter to convey that **meaning. On information and belief, Souras, by approving that wording, intended or endorsed** the ~~reports concerned Plaintiff personally.~~ **same meaning.** The letter conveyed that meaning to the ~~third-party recipients~~ **third parties** who reviewed and read it.

242. The ~~imputation conveyed by the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI,~~ **imputation,** whether per se or by implication, is false. Plaintiff has not engaged in conduct constituting, or reasonably appearing to constitute, a violation of any statute enumerated in 18 U.S.C. § 2258A.

243. **On information and belief, neither report referenced in the letter concerned Plaintiff personally. On information and belief, neither report, as originally received by NCMEC, contained or otherwise identified Plaintiff as "Marvelle J. Ballentine."**

244. Hall ~~acted with~~ **acted,** at ~~minimum negligence in issuing~~ **a minimum, negligently. She issued** the ~~April 22, 2026~~ letter ~~referencing Case No. 6:26-cv-00376-AGM-DCI~~ without verifying **whether** the ~~existence of the asserted~~ subpoena **had been formally served** and without an internal review process adequate to ~~detect~~ **determine the status of formal service or** the absence of ~~compulsory process.~~ **any obligation to respond at that time.**

245. Hall knowingly ~~made the false procedural representation that~~ **characterized** the letter ~~was~~ **as** issued "[i]n response to" a subpoena ~~when no subpoena had been served and~~ **before**

**formal service.** Plaintiff had not waived ~~service or~~ **service. Plaintiff had not** requested an early response. ~~That knowing falsehood is circumstantial evidence of Hall's intent in selecting and presenting the accompanying report assertion.~~

246. Hall acted with actual malice as to the defamatory implication. ~~Hall~~ **She** had obvious reasons to doubt that the information ~~available~~ **before her** established that two reports concerned Plaintiff ~~personally:~~ **personally. Plaintiff had supplied** the three ~~identifiers were supplied by Plaintiff, the~~ **identifiers. The** letter linked them ~~disjunctively, and the~~ **disjunctively. The** letter identified no report-specific match ~~or~~ **and no** disambiguation. Hall ~~nevertheless selected~~ **nonetheless chose** wording that placed Plaintiff's full legal name in the same sentence as "two CyberTipline ~~reports"~~ **reports,"** and **she** omitted any clarification that a report might match only a different identifier, person, provider, platform, or event. ~~These facts support the inference that~~ Hall knew the implication was false or recklessly disregarded whether it was ~~false, and~~ **false. Hall** intended the recipients to understand that the reports concerned Plaintiff personally. **Hall also knew, or recklessly disregarded, the falsity of the source-level and person-level allegations pleaded in Section T.**

247. **On information and belief, Souras failed to exercise reasonable care in determining whether the referenced reports concerned Plaintiff personally, as distinguished from a report matching another identifier or concerning another person, before approving the wording of the letter. Souras acted, at a minimum, negligently. Separately, on information and belief, Souras acted with actual malice as to the defamatory implication. The April 9, 2026 materials and the letter itself, as alleged in Section J, showed that Plaintiff had supplied the three identifiers, that the request sought only a document sufficient to show whether any report concerning them existed, and that formal service was announced to follow. She approved wording that placed Plaintiff's full legal name in the same sentence as "two CyberTipline reports," linked the identifiers disjunctively, and identified no report-specific match. On information and belief, Souras knew the implication was false or recklessly disregarded whether it was false.**

248. Hall performed every act alleged in this Count within the scope of her employment as NCMEC's Corporate Counsel and in performance of her responsibility for legal correspondence ~~issued by~~ NCMEC **issues** in response to claimed legal process. ~~Hall~~ **She** acted under her NCMEC title, on NCMEC letterhead, and from NCMEC's Alexandria offices. NCMEC is liable for ~~Hall's~~ **her** conduct alleged in this Count.

249. **On information and belief, Souras performed the acts alleged in this Count within the scope of her employment as NCMEC's Chief Legal Officer. NCMEC is liable for her conduct alleged in this Count.**

250. NCMEC, acting through ~~Hall~~ **Hall, through Souras,** and **through** one or more additional personnel, approved the wording of the ~~April 22, 2026~~ letter ~~referencing Case No. 6:26-cv-00376-AGM-DCI~~ and authorized its issuance and transmission.

251. ~~Under Virginia defamation~~ **Because the letter is defamatory** per ~~se doctrine,~~ **se,** Plaintiff is entitled **under Virginia law** to presumed damages without proof of actual injury. Plaintiff is a private-figure plaintiff.

252. Plaintiff has **also** suffered actual ~~damages including~~ **damages:** humiliation, embarrassment, mental suffering, and injury to reputation.

253. The digital reproduction of the ~~April 22, 2026~~ letter ~~referencing Case No. 6:26-cv-00376-AGM-DCI~~ persists in the ~~commercial mail-receiving~~ agency's mail-management ~~system~~ **system,** outside Plaintiff's possession ~~or~~ **and** control.

254. ~~The mail-management~~ **That** system associates the ~~digital~~ reproduction ~~of the April 22, 2026 letter referencing Case No. 6:26-cv-00376-AGM-DCI~~ with Plaintiff's verified identity, Plaintiff's full legal name, Plaintiff's mailbox account, and Plaintiff's photographic identification.

255. Plaintiff does not control ~~the mail-management~~ **that** system's access permissions, administrative access, audit logs, retention practices, or internal dissemination of scanned mail images associated with ~~Plaintiff's~~ **his** mailbox account.

256. Hall acted willfully, wantonly, and in conscious disregard of Plaintiff's ~~rights by issuing~~ **rights. She issued** the ~~April 22, 2026~~ letter ~~referencing Case No. 6:26-cv-00376-AGM-DCI with knowledge of the false~~ **knowing its pre-service** process characterization and ~~with knowledge~~ **knowing,** or ~~reckless disregard of the~~ **recklessly disregarding, its** defamatory implication. ~~Hall~~ **She** has refused ~~correction and~~ **to correct it. She** has ~~affirmatively~~ defended ~~the letter~~ **it** as accurate and proper. **On information and belief, Souras approved the letter's wording and authorized its issuance with the same knowledge or reckless disregard.** NCMEC approved the **letter's** issuance ~~of the letter~~ and has not withdrawn, corrected, or retracted it. NCMEC's filings in the 1341 Action are alleged only as evidence that, after ~~receiving~~ notice of Plaintiff's claims, NCMEC continued to maintain that the letter was accurate and proper. Plaintiff is entitled to punitive damages against ~~Hall~~ **Hall, Souras,** and NCMEC to the extent permitted by law, subject to Va. Code § 8.01-38.1.

**COUNT II**

DEFAMATION PER SE AND DEFAMATION BY IMPLICATION ~~(Letter Referencing Case No. 6:26-cv-00286-AGM-DCI) (Against Defendants Katie Hall and NCMEC)~~

**(Letter Referencing Case No. 6:26-cv-00286-AGM-DCI)**

**(Against Defendants Katie Hall, Panayiota Souras, and NCMEC)**

257. Plaintiff incorporates by reference the allegations in the Preliminary Statement, Jurisdiction and Venue, Parties, and Scope of Allegations sections, and Sections A, B, I, J, K, L, M, ~~O,~~ **N, P, S,** and ~~R~~ **T** of the Facts, as if fully set forth herein.

258. This Count is pleaded in the alternative under Federal Rule of Civil Procedure 8(d)(2).

259. On or about April ~~22,~~ **28,** 2026, Hall ~~published~~ **caused** the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI **to be published** to third parties through the transmission and processing described in Section ~~L~~ **M** of the Facts. **On information and belief, Souras participated in that publication by approving the wording of the letter and by authorizing or directing its issuance through Hall.**

260. Publication first occurred in ~~Virginia~~ **Virginia. It occurred** when the commercial mail-receiving agency employee opened, reviewed, scanned, and uploaded the letter in the ordinary course of the transmission channel ~~selected by Hall. Additional~~ **Hall selected. Further** circulation occurred when the administrator of Plaintiff's mailbox accounts later opened and read the forwarded letter.

261. The digital reproduction of the ~~April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI~~ **letter,** created by the ~~commercial mail-receiving~~ agency on April 28, ~~2026~~ **2026,** remains ~~associated~~ in the ~~commercial mail-receiving~~ agency's mail-management **system. That** system **associates the reproduction** with Plaintiff's verified identity, Plaintiff's full legal name, Plaintiff's mailbox account, and Plaintiff's photographic identification.

262. The ~~April 22, 2026~~ letter ~~referencing Case No. 6:26-cv-00286-AGM-DCI~~ is of and concerning Plaintiff. ~~The letter~~ **It** identifies ~~Plaintiff by the names~~ **him as** "Marvelle J. Ballentine" and "Jay Ballentine" and by the email address jaychizza@icloud.com.

263. The ~~April 22, 2026~~ letter ~~referencing Case No. 6:26-cv-00286-AGM-DCI~~ is defamatory per se. ~~The letter~~ **It** imputes to Plaintiff the commission of a criminal offense involving moral turpitude for which Plaintiff, if the imputation were true, could be indicted and punished.

264. ~~The defamatory sting of the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI is that~~ Hall, writing as NCMEC's Corporate Counsel and on NCMEC letterhead, associated Plaintiff's full legal name with two CyberTipline reports. The CyberTipline receives reports concerning suspected online child sexual exploitation, including **the** mandatory electronic-service-provider reports ~~under~~ **required by** 18 U.S.C. § 2258A. A reasonable reader would understand the association to convey that NCMEC had received reports linking Plaintiff

personally to suspected child-exploitation conduct and that the reported matter could be available to law enforcement.

265. In the alternative, ~~to~~ **if** the ~~extent the April 22, 2026~~ letter ~~referencing Case No. 6:26-cv-00286-AGM-DCI~~ is not defamatory per se on its face, ~~the letter~~ **it** is defamatory by implication. Hall used the ~~verb "concerning" and~~ **word "concerning." She** placed Plaintiff's full legal name in the same sentence as "two CyberTipline reports." **She included no limiting language.** The letter does not ~~include limiting language stating~~ **state** that the reports might match only one identifier, might concern a different person, might have been submitted by a non-Meta provider, might be unrelated to Plaintiff's Facebook account, or might not have resulted in any law-enforcement referral. ~~The omission of those limitations~~ **Those omissions** caused the letter to convey that the reports concern Plaintiff personally. ~~The circumstances alleged above support a reasonable inference that~~ Hall intended the letter to convey that **meaning. On information and belief, Souras, by approving that wording, intended or endorsed** the ~~reports concerned Plaintiff personally.~~ **same meaning.** The letter conveyed that meaning to the ~~third-party recipients~~ **third parties** who reviewed and read it.

266. The ~~imputation conveyed by the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI,~~ **imputation,** whether per se or by implication, is false. Plaintiff has not engaged in conduct constituting, or reasonably appearing to constitute, a violation of any statute enumerated in 18 U.S.C. § 2258A.

267. **On information and belief, neither report referenced in the letter concerned Plaintiff personally. On information and belief, neither report, as originally received by NCMEC, contained or otherwise identified Plaintiff as "Marvelle J. Ballentine."**

268. Hall ~~acted with~~ **acted,** at ~~minimum negligence in issuing~~ **a minimum, negligently. She issued** the ~~April 22, 2026~~ letter ~~referencing Case No. 6:26-cv-00286-AGM-DCI~~ without verifying **whether** the ~~existence of the asserted~~ subpoena **had been formally served** and without an internal review process adequate to ~~detect~~ **determine the status of formal service or** the absence of ~~compulsory process.~~ **any obligation to respond at that time.**

269. Hall knowingly ~~made the false procedural representation that~~ **characterized** the letter ~~was~~ **as** issued "[i]n response to" a subpoena ~~when no subpoena had been served and~~ **before formal service.** Plaintiff had not waived ~~service or~~ **service. Plaintiff had not** requested an early response. ~~That knowing falsehood is circumstantial evidence of Hall's intent in selecting and presenting the accompanying report assertion.~~

270. Hall acted with actual malice as to the defamatory implication. ~~Hall~~ **She** had obvious reasons to doubt that the information ~~available~~ **before her** established that two reports

concerned Plaintiff ~~personally:~~ **personally. Plaintiff had supplied** the three ~~identifiers were supplied by Plaintiff, the~~ **identifiers. The** letter linked them ~~disjunctively, and the~~ **disjunctively. The** letter identified no report-specific match ~~or~~ **and no** disambiguation. Hall ~~nevertheless selected~~ **nonetheless chose** wording that placed Plaintiff's full legal name in the same sentence as "two CyberTipline ~~reports"~~ **reports,"** and **she** omitted any clarification that a report might match only a different identifier, person, provider, platform, or event. ~~These facts support the inference that~~ Hall knew the implication was false or recklessly disregarded whether it was ~~false, and~~ **false. Hall** intended the recipients to understand that the reports concerned Plaintiff personally. **Hall also knew, or recklessly disregarded, the falsity of the source-level and person-level allegations pleaded in Section T.**

271. **On information and belief, Souras failed to exercise reasonable care in determining whether the referenced reports concerned Plaintiff personally, as distinguished from a report matching another identifier or concerning another person, before approving the wording of the letter. Souras acted, at a minimum, negligently. Separately, on information and belief, Souras acted with actual malice as to the defamatory implication. The April 9, 2026 materials and the letter itself, as alleged in Section J, showed that Plaintiff had supplied the three identifiers, that the request sought only a document sufficient to show whether any report concerning them existed, and that formal service was announced to follow. She approved wording that placed Plaintiff's full legal name in the same sentence as "two CyberTipline reports," linked the identifiers disjunctively, and identified no report-specific match. On information and belief, Souras knew the implication was false or recklessly disregarded whether it was false.**

272. Hall performed every act alleged in this Count within the scope of her employment as NCMEC's Corporate Counsel and in performance of her responsibility for legal correspondence ~~issued by~~ NCMEC **issues** in response to claimed legal process. ~~Hall~~ **She** acted under her NCMEC title, on NCMEC letterhead, and from NCMEC's Alexandria offices. NCMEC is liable for ~~Hall's~~ **her** conduct alleged in this Count.

273. **On information and belief, Souras performed the acts alleged in this Count within the scope of her employment as NCMEC's Chief Legal Officer. NCMEC is liable for her conduct alleged in this Count.**

274. NCMEC, acting through ~~Hall~~ **Hall, through Souras,** and **through** one or more additional personnel, approved the wording of the ~~April 22, 2026~~ letter ~~referencing Case No. 6:26-cv-00286-AGM-DCI~~ and authorized its issuance and transmission.

275. ~~Under Virginia defamation~~ **Because the letter is defamatory** per ~~se doctrine,~~ **se,** Plaintiff is entitled **under Virginia law** to presumed damages without proof of actual injury. Plaintiff is a private-figure plaintiff.

276. Plaintiff has **also** suffered actual ~~damages including~~ **damages:** humiliation, embarrassment, mental suffering, and injury to reputation.

277. The digital reproduction of the ~~April 22, 2026~~ letter ~~referencing Case No. 6:26-cv-00286-AGM-DCI~~ persists in the ~~commercial mail receiving~~ agency's mail-management ~~system~~ **system,** outside Plaintiff's possession ~~or~~ **and** control.

278. ~~The mail-management~~ **That** system associates the ~~digital~~ reproduction ~~of the April 22, 2026 letter referencing Case No. 6:26-cv-00286-AGM-DCI~~ with Plaintiff's verified identity, Plaintiff's full legal name, Plaintiff's mailbox account, and Plaintiff's photographic identification.

279. Plaintiff does not control ~~the mail-management~~ **that** system's access permissions, administrative access, audit logs, retention practices, or internal dissemination of scanned mail images associated with ~~Plaintiff's~~ **his** mailbox account.

280. Hall acted willfully, wantonly, and in conscious disregard of Plaintiff's ~~rights by issuing~~ **rights. She issued** the ~~April 22, 2026~~ letter ~~referencing Case No. 6:26-cv-00286-AGM-DCI with knowledge of the false~~ **knowing its pre-service** process characterization and ~~with knowledge~~ **knowing,** or ~~reckless disregard of the~~ **recklessly disregarding, its** defamatory implication. ~~Hall~~ **She** has refused ~~correction and~~ **to correct it. She** has ~~affirmatively~~ defended ~~the letter~~ **it** as accurate and proper. **On information and belief, Souras approved the letter's wording and authorized its issuance with the same knowledge or reckless disregard.** NCMEC approved the **letter's** issuance ~~of the letter~~ and has not withdrawn, corrected, or retracted it. NCMEC's filings in the 1341 Action are alleged only as evidence that, after ~~receiving~~ notice of Plaintiff's claims, NCMEC continued to maintain that the letter was accurate and proper. Plaintiff is entitled to punitive damages against ~~Hall~~ **Hall, Souras,** and NCMEC to the extent permitted by law, subject to Va. Code § 8.01-38.1.

**COUNT III**

INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS ~~(Against Defendants Katie Hall and NCMEC)~~

**(Against Defendants Katie Hall and NCMEC)**

281. Plaintiff incorporates by reference the allegations in the Preliminary Statement, Jurisdiction and Venue, Parties, and Scope of Allegations sections, and Sections A, B, C, G, H, I, ~~J, M,~~ **K, N, P, S,** and ~~R~~ **T** of the Facts, as if fully set forth herein.

282. On April 22, 2026, Hall ~~directly targeted Plaintiff with~~ **directed** two ~~letters, each~~ **letters at Plaintiff. Each was** keyed by caption ~~and case number~~ to a pending federal ~~action, each associating~~ **action. Each associated** Plaintiff's legal name, alternate name, and account identifier with two CyberTipline ~~reports, and each falsely characterizing~~ **reports. Each called** itself ~~as~~ a response to a ~~subpoena.~~ **subpoena before formal service.** No subpoena had been ~~served,~~ **served.** Plaintiff had not requested or authorized an early ~~response, no~~ **response. No** court order required a ~~response, and a~~ **response. A** motion to stay discovery had been filed in each referenced action ~~on~~ the ~~preceding day.~~ **day before. Hall issued the letters when no rule, order, or obligation required it, before the ruling dates the movants had requested and before the noticed depositions. Hall directed the case-keyed letters to Plaintiff alone.** This Count rests on Hall's direct transmission of ~~the~~ **that** targeted correspondence to ~~Plaintiff and~~ **Plaintiff. It** does not depend on third-party publication or reputational injury.

~~Hall understood the criminal and law-enforcement significance of associating a named individual with CyberTipline reports, understood that the letters' false invocation of compulsory process would give the assertion added official force, and knew or recklessly disregarded that directing that combination at a disclosed survivor of childhood sexual abuse created a high probability of acute emotional distress.~~

283. Hall knew, before ~~issuing~~ **she issued** the letters, that Plaintiff is a disclosed survivor of childhood sexual ~~abuse, as alleged in~~ **abuse.** Section ~~C.~~ **C alleges the disclosures. Hall understood the criminal and law-enforcement significance of associating a named individual with CyberTipline reports. She understood that invoking subpoena process before formal service would lend the assertion added official force.** Hall directed at Plaintiff a communication associating his legal name with reporting concerning child sexual exploitation, the subject ~~matter~~ of the abuse ~~Plaintiff~~ **he** had disclosed. Hall **knew, or recklessly disregarded, that directing that combination at a disclosed survivor of childhood sexual abuse created a high probability of acute emotional distress. Hall** knew that ~~this~~ **the** association, ~~directed at Plaintiff,~~ **so directed,** was substantially certain to cause Plaintiff acute emotional distress. ~~Hall~~ **She** acted with ~~the~~ intent to cause that distress, or in reckless disregard of the substantial certainty that it would result.

~~Hall's conduct combined the following features. Hall knew Plaintiff was a disclosed survivor of childhood sexual abuse. Hall directed at Plaintiff a communication associating his legal name with reporting concerning child sexual exploitation. Hall presented that association as the product of compelled legal process when no subpoena had been served and no court order required a response. Hall issued the letters when no rule, order, or obligation required their issuance, before the ruling dates the movants had requested and before the noticed depositions. Hall directed the case-keyed letters to Plaintiff alone.~~

284. Directing at a disclosed survivor of childhood sexual abuse a false and unauthenticated association between that person and child-exploitation reporting offends ~~against~~ the generally accepted standards of decency and morality and exceeds the bounds of what a civilized community tolerates.

285. Hall performed every act alleged in this Count within the scope of her employment as NCMEC's Corporate Counsel and in performance of her responsibility for legal correspondence ~~issued by~~ NCMEC **issues** in response to claimed legal process. NCMEC, acting through Hall and one or more additional personnel, approved the wording of the letters and authorized their issuance and transmission. NCMEC is liable for the conduct alleged in this Count.

286. Hall's conduct directly and proximately caused Plaintiff severe emotional distress. ~~Beginning~~ **Upon reading the letters** on April 28, 2026, ~~upon reading the letters,~~ Plaintiff ~~vomited, experienced~~ **vomited. He suffered** recurrent involuntary recollections of his own childhood sexual ~~abuse,~~ **abuse. He** lived in acute fear of imminent arrest and ~~prosecution, and, expecting~~ **prosecution. Expecting** to be taken into custody, **he** distanced himself from his own children. ~~Plaintiff's~~ **His** sleep and eating were ~~disrupted, and he was unable to~~ **disrupted. He could not** sustain attention on his work. That distress persisted in acute form ~~until Plaintiff recognized,~~ **until,** days later, **he recognized** that no subpoena had been served. The distress was ~~severe and~~ **severe. It was** beyond what a reasonable person could be expected to endure.

287. The severe emotional distress on which this Count rests arises from Hall's direct transmission of the letters to Plaintiff and from their content. It does not arise from any apprehension that the letters would be published to, or read by, any other person.

288. As a direct and proximate result of the conduct alleged in this Count, Plaintiff sustained compensatory damages for mental anguish, severe emotional distress, physical manifestation, functional impairment, lost productive capacity, and loss of capacity for the enjoyment of life. Count III seeks no recovery for reputational injury.

289. **The severe emotional distress alleged in this Count continued after the filing of the First Amended Complaint. The subsequent events alleged in Section P occurred while Plaintiff's uncertainty concerning the two reports remained unresolved.**

**COUNT IV**

CONSPIRACY TO DETER A PARTY AND WITNESS, BY INTIMIDATION, FROM ATTENDING AND TESTIFYING IN COURTS OF THE UNITED STATES — 42 U.S.C. § 1985(2) ~~(Against All Defendants)~~

**(Against All Defendants)**

290. Plaintiff incorporates by reference the allegations in the Preliminary Statement, Jurisdiction and Venue, Parties, and Scope of Allegations sections, and Sections A through ~~J,~~ **K,** Sections ~~M and N,~~ **N through P,** and Sections ~~P~~ **Q** through ~~R~~ **T** of the Facts, as if fully set forth herein.

291. ~~Meta~~ **Meta, Hall, Souras,** and ~~Hall~~ **NCMEC** are separate and legally distinct persons. Meta ~~and NCMEC are separate and legally distinct entities.~~ **is a corporation.** Hall is ~~not~~ **an individual. Souras is an individual. NCMEC is a non-profit corporation. Neither Hall nor Souras is** an officer, employee, agent, or authorized representative of ~~Meta, and~~ **Meta.** NCMEC is not an affiliate, agent, or representative of Meta. The agreement alleged in Section ~~N~~ **O** was reached between Meta, acting through one or more of its own officers, employees, agents, or authorized representatives, on ~~the~~ one side, and Hall and NCMEC on the other. **On information and belief, Souras participated in implementing that agreement on the NCMEC side.** The combination alleged in this Count comprises at least two separate and legally distinct persons.

292. **Defendants reached the agreement alleged in Section O of the Facts. Section O pleads the facts on which that allegation rests, including the identical materials received by NCMEC and by counsel for Meta and Accenture, the April 21, 2026 motions directed at the same discovery, and the two letters, each keyed to a separate federal action, issued the next day before formal service and before any court ruled.**

~~Defendants reached the agreement alleged in Section N of the Facts.~~

293. The purpose of the agreement was to deter Plaintiff, by intimidation, from continuing to attend the 376 Action and the 286 Action as a party, and from testifying freely, fully, and truthfully as a prospective witness in those pending federal proceedings, as alleged in Section ~~P~~ **Q** of the Facts. **The letters, on NCMEC letterhead and over the signature of its Corporate Counsel, associated Plaintiff's full legal name with two CyberTipline reports, and they issued while the noticed depositions were imminent and the protective motions were pending.**

294. **One or more Defendants committed acts in furtherance of the agreement, as alleged in Section R of the Facts. Hall signed and transmitted the letters. On information and belief, Souras approved their wording and authorized or directed their issuance. NCMEC approved their issuance and authorized the use of its name, letterhead, and institutional identity.**

~~One or more Defendants committed the acts in furtherance of the agreement alleged in Section Q of the Facts.~~

295. The acts in furtherance of the agreement injured Plaintiff in his person and materially impaired his attendance and testimony as a party and prospective witness, as alleged in

Section ~~R~~ **S** of the Facts. **He became physically ill. He feared arrest and prosecution. He distanced himself from his children. He could not sustain attention on litigation materials.**

296. Meta knowingly joined the agreement through one or more authorized representatives or intermediaries. Hall knowingly joined and implemented the agreement by preparing or ~~approving, signing,~~ **approving the letters, signing them,** and authorizing ~~transmission~~ **their transmission. On information and belief, Souras knowingly joined and implemented the agreement by approving the wording** of the ~~letters.~~ **letters and authorizing or directing their issuance before formal service, with knowledge that the 376 Action and the 286 Action were pending, that Plaintiff's April 9, 2026 request had been directed to NCMEC, that formal service of the subpoenas was announced to follow, and of the litigation-directed purpose of the agreement alleged in Section Q.** NCMEC knowingly joined and implemented the agreement, acting through ~~Hall~~ **Hall, through Souras,** and **through** one or more additional personnel who approved the issuance of the letters. Each Doe Defendant is liable only to the extent the evidence establishes that the Doe knowingly joined or implemented the common plan.

297. **Meta's August 13, 2026 filing in the 376 Action, alleged in Section P, is pleaded as a subsequent fact bearing on Meta's knowledge, Meta's state of mind, Meta's awareness of the relationship between this action and the 376 Action, and the circumstantial allegations supporting this Count. It is not an independent basis for liability. Liability under this Count rests on the conduct alleged in Sections O, Q, and R of the Facts.**

298. Defendants' conduct directly and proximately caused the injuries alleged in this Complaint.

299. Defendants acted intentionally and with conscious disregard for Plaintiff's federally protected status as a party and prospective witness, warranting punitive damages.

**COUNT V**

COMMON-LAW CONSPIRACY ~~(Against All Defendants)~~

**(Against All Defendants)**

300. Plaintiff incorporates by reference the allegations in the Preliminary Statement, Jurisdiction and Venue, Parties, and Scope of Allegations sections, and Sections A through ~~N~~ **O** and Sections ~~P~~ **Q** through ~~R~~ **T** of the Facts, as if fully set forth herein.

301. This Count arises under the common law of Virginia.

302. Hall, **Souras,** NCMEC, Meta, and one or more Doe Defendants combined ~~together~~ through the understanding alleged in Section ~~N~~ **O** of the Facts. Meta is separate and legally distinct

from ~~Hall~~ **Hall, from Souras,** and from NCMEC, as ~~alleged in~~ this ~~Complaint.~~ **Complaint alleges.** The combination comprised at least two separate and legally distinct persons.

303. The ~~means by which the~~ combination was carried out ~~included~~ **through** the preparation, approval, issuance, transmission, and publication of the two April 22, 2026 letters. **On information and belief, Souras approved their wording and authorized or directed their issuance.** The publication of each letter constituted the defamation alleged in Counts I and II.

304. The participants understood and intended that the letters would ~~be transmitted~~ **travel** through the selected commercial mail ~~channel~~ **channel. They understood** and **intended** that the third-party publication alleged in Counts I and II would occur in carrying out the understanding.

305. ~~In furtherance of the combination, the~~ **The** participants committed the overt acts alleged in Section ~~Q~~ **R** of the ~~Facts, and the~~ **Facts. The** publications alleged in Counts I and II occurred.

306. The participants acted intentionally, purposefully, and without lawful justification.

307. As a direct and proximate result of the combination and the acts in furtherance of it, Plaintiff sustained the damages alleged in Section ~~R~~ **S** of the Facts and in Counts I and ~~II, including~~ **II:** presumed damages, humiliation, embarrassment, mental suffering, and injury to reputation. Each participant is jointly and severally liable for those damages.

308. The participants acted willfully, wantonly, and in conscious disregard of Plaintiff's rights, warranting punitive damages subject to Va. Code § 8.01-38.1.

**COUNT VI**

INSULTING WORDS — VA. CODE § 8.01-45 ~~(Against Defendants Katie Hall and NCMEC)~~

**(Against Defendants Katie Hall, Panayiota Souras, and NCMEC)**

309. Plaintiff incorporates by reference the allegations in the Preliminary Statement, Jurisdiction and Venue, Parties, and Scope of Allegations sections, and Sections A, B, C, G, H, I, J, K, ~~M,~~ **L, N, P, S,** and ~~R~~ **T** of the Facts, as if fully set forth herein.

310. This Count is pleaded in the alternative under Federal Rule of Civil Procedure 8(d)(2). ~~This Count~~ **It** does not depend on publication of either ~~April 22, 2026~~ letter to any third ~~party, and it~~ **party. It** incorporates no allegation from Section ~~L~~ **M** of the Facts.

311. Hall directed each of the two April 22, 2026 letters to Plaintiff ~~personally~~ **personally,** at Plaintiff's mailing address. **On information and belief, Souras approved the words of each letter and authorized or directed that they be communicated to Plaintiff.**

312. The words of each letter ~~associating~~ **associated** Plaintiff's full legal name, alternate name, and email identifier with two CyberTipline reports, on NCMEC letterhead, over the signature of NCMEC's Corporate Counsel, and framed as a response to ~~compulsory legal~~ **subpoena** process ~~are,~~ **before formal service. Those words,** in their usual construction and common ~~acceptance,~~ **acceptation, are** insults that tend to violence and breach of the peace. In the context alleged in Section ~~K~~ **L** of the Facts, the words convey the imputation described in that Section.

313. The imputation ~~conveyed by~~ each letter **conveys** is false. Plaintiff has not engaged in conduct constituting, or reasonably appearing to constitute, a violation of any statute enumerated in 18 U.S.C. § 2258A.

314. **On information and belief, neither report referenced in the letters concerned Plaintiff personally. On information and belief, neither report, as originally received by NCMEC, contained or otherwise identified Plaintiff as "Marvelle J. Ballentine."**

315. Hall selected the words of each ~~letter,~~ **letter. She** knowingly ~~made the false representation~~ **selected language stating** that each letter responded to a subpoena **before formal service,** when ~~no subpoena~~ **Plaintiff** had ~~been served, and~~ **not waived service or requested an early response. She** acted with knowledge or reckless disregard of the falsity of the imputation each letter conveyed.

316. **On information and belief, Souras approved the words of each letter with knowledge that Plaintiff had supplied the identifiers, that the request sought only a document sufficient to show whether any report existed, and that formal service had not occurred, and acted with knowledge or reckless disregard of the falsity of the imputation each letter conveyed.**

317. Hall performed every act alleged in this Count within the scope of her employment as NCMEC's Corporate Counsel. **On information and belief, Souras performed the acts alleged in this Count within the scope of her employment as NCMEC's Chief Legal Officer.** NCMEC, acting through ~~Hall~~ **Hall, through Souras,** and **through** one or more additional personnel, approved the wording of the letters and authorized their issuance and transmission. NCMEC is liable for the conduct alleged in this Count.

318. As a direct and proximate result of the conduct alleged in this Count, Plaintiff sustained the damages alleged in Section ~~R~~ **S** of the ~~Facts, including~~ **Facts:** humiliation, embarrassment, mental suffering, and severe emotional distress.

319. ~~Hall~~ **Hall, Souras,** and NCMEC acted willfully, wantonly, and in conscious disregard of Plaintiff's rights, warranting punitive damages subject to Va. Code § 8.01-38.1.

PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment in his favor and against Defendants and grant the following relief:

A. On Counts I and II, against Defendants ~~Hall~~ **Hall, Souras,** and NCMEC, jointly and severally: (1) compensatory damages in the amount of $42,820,260, including presumed damages and actual damages; and (2) punitive damages to the extent supported by actual malice findings, subject to the cap established by Va. Code § 8.01-38.1.

B. On Count III, against Defendants Hall and NCMEC, jointly and severally: compensatory damages.

C. On Count IV, against all Defendants, jointly and severally: compensatory damages in an amount to be determined by the jury; and punitive damages.

D. On Count V, against all Defendants, jointly and severally: compensatory damages in an amount to be determined by the jury; and punitive damages subject to Va. Code § 8.01-38.1.

E. On Count VI, against Defendants ~~Hall~~ **Hall, Souras,** and NCMEC, jointly and severally: compensatory damages; and punitive damages subject to Va. Code § 8.01-38.1.

F. Costs of suit.

G. Pre-judgment and post-judgment interest at the legal rate.

H. Such other and further relief as the Court deems just and proper.

DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury on all issues so ~~triable.[1]~~ **triable.**

Date: ~~August 3,~~ **November 1,** 2026 Respectfully submitted,

Marvelle J. Ballentine

Plaintiff, pro se 1520 Belle View Blvd, Ste. #5847

Alexandria, Virginia 22307

(407) 794-6503 jayballentine@protonmail.com

~~[1] Nomination of Judge Clarence Thomas to be Associate Justice of the Supreme Court of the United States: Hearings Before the S. Comm. on the Judiciary, 102d Cong. (1991) (statement of Judge Clarence Thomas, Oct. 11, 1991):~~

~~"...It's a national disgrace. And from my standpoint as a black American, as far as I'm concerned, it is a high-tech lynching..."~~

**Nomination of Judge Clarence Thomas to be Associate Justice of the Supreme Court of the United States: Hearings Before the S. Comm. on the Judiciary, 102d Cong. (1991) (statement of Judge Clarence Thomas, Oct. 11, 1991): "...It's a national disgrace. And from my standpoint as a black American, as far as I'm concerned, it is a high-tech lynching..."** "I would have preferred an assassin's bullet to this kind of living hell that they have put me and my family through... I would rather die than withdraw."

~~CERTIFICATE OF SERVICE~~

~~I hereby certify that on August 6, 2026, I caused a true and correct copy of the foregoing First Amended Complaint to be served upon the following by United States Mail, first-class postage prepaid, addressed as follows:~~

~~Katie Hall 333 John Carlyle Street, Suite 125~~

~~Alexandria, Virginia 22314~~

~~National Center for Missing & Exploited Children 333 John Carlyle Street, Suite 125~~

~~Alexandria, Virginia 22314~~

~~Meta Platforms, Inc. c/o CSC Lawyers Incorporating Service, Registered Agent 2710 Gateway Oaks Drive, Suite 150N~~

~~Sacramento, California 95833~~

~~The John/Jane Doe Defendants 1-6 are presently unidentified and are not served.~~

~~Date: August 6, 2026 Respectfully submitted,~~

~~Marvelle J. Ballentine~~

~~Plaintiff, pro se 1520 Belle View Blvd, Ste. #5847~~

~~Alexandria, Virginia 22307~~

~~(407) 794-6503 jayballentine@protonmail.com~~