FILED
11/1/2026
CLERK, U.S. DISTRICT COURT
ALEXANDRIA, VA

**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF VIRGINIA**
**ALEXANDRIA DIVISION**

MARVELLE J. BALLENTINE, **Case No.** 1:26-cv-02331

*Plaintiff,*

v.

KATIE HALL, individually;
NATIONAL CENTER FOR MISSING & EXPLOITED CHILDREN;
META PLATFORMS, INC.;
and JOHN/JANE DOES 1–6,

*Defendants.*
_____________________________________/

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S RENEWED RULE 56 MOTION FOR PARTIAL SUMMARY JUDGMENT**

## I. NCMEC AND HALL DESCRIBE THE APRIL 22, 2026 LETTERS AS HALL'S WORK FOR NCMEC

NCMEC has told this Court how the two April 22, 2026 letters came to be. "On April 22, 2026, NCMEC responded to the subpoenas without awaiting formal service via two substantively-identical letters signed by Defendant Hall, in her capacity as in-house counsel for NCMEC." ECF No. 11 at 2. Hall "adopts and joins in" that memorandum. ECF No. 45 at 1. The letters bear NCMEC's letterhead. Each carries Hall's signature above the title "Corporate Counsel." ECF No. 7-5 at 2–3. In the earlier action over the same letters, NCMEC and Hall, through the counsel who represents both of them here, told this Court that Hall "was clearly acting in the course and scope of her employment in responding to the subpoenas." ECF No. 7-4 at 7.

Plaintiff renews the request the Court denied on August 12, 2026, "without prejudice to renewal at an appropriate time." ECF No. 12 at 1. The request is narrow. Plaintiff asks the Court to determine under Rule 56(a) that Hall acted as NCMEC's employee and agent, within the course and scope of her employment, when she signed and issued the two letters on NCMEC's behalf. That determination resolves the agency-and-scope component of NCMEC's potential vicarious liability under Counts I, II, III, and VI. ECF No. 5 ¶ 21. It resolves nothing else.

If the Court does not grant that relief in full, Plaintiff asks the Court to consider, under Rule 56(g), the same determination and seventeen numbered facts. The facts concern Hall's employment, the April 9, 2026 transmission, the absence of formal service, the wording of the letters, what the letters omit, and the names under which Plaintiff operated Meta accounts. Each rests on a document in the record, a statement of NCMEC or Hall, or Plaintiff's sworn testimony about his own conduct.

The Motion does not ask what any CyberTipline report contains. It does not ask whether the letters were true, whether any privilege or immunity applies, whether Defendants agreed with one another, or what anyone intended. The submitted issue is the capacity in which Hall acted. The evidence on that issue comes from NCMEC and Hall.

## II. THE RESPONSE POSTURE AND THE EVIDENTIARY RECORD HAVE CHANGED SINCE AUGUST 12, 2026

### A. The August 12 Order.

The Court denied the original motion "without prejudice to renewal at an appropriate time." ECF No. 12 at 1. The Order identified two circumstances. Plaintiff had filed the First Amended Complaint and the motion on the same day. And "Defendants' answers or other responses to the Original Complaint are not due until August 21, 2026." *Id.* The Order found the motion premature on that basis.

**B. What has happened since.**

| Date | Development | Record |
|---|---|---|
| Aug. 6, 2026 | Original motion and supporting evidence filed | ECF Nos. 6, 7, 7-1 through 7-9 |
| Aug. 12, 2026 | NCMEC moves to dismiss; its memorandum describes Hall's capacity and states that the letters issued before formal service | ECF Nos. 10, 11 |
| Aug. 12, 2026 | Original motion denied without prejudice to renewal | ECF No. 12 |
| Aug. 21, 2026 | Meta moves to dismiss | ECF Nos. 21, 22 |
| Aug. 24, 2026 | First account-name declaration filed | ECF No. 31 |
| Sept. 2, 2026 | Hall moves to dismiss, adopting NCMEC's motion and memorandum | ECF No. 45 |
| Sept. 8, 2026 | Second account-name declaration filed (executed Sept. 7, 2026) | ECF No. 59-2 |
| Oct. 7, 2026 | ECF Nos. 15 and 54 denied as premature; ECF No. 59 denied | ECF No. 84 |
| Oct. 22, 2026 | Case reassigned to Magistrate Judge Fitzpatrick | ECF No. 96 |
| Oct. 29, 2026 | Plaintiff's scheduling and Rule 26(f) motions denied without prejudice | ECF No. 108 |

ECF No. 11 was docketed on August 12, 2026, before ECF No. 12. ECF No. 12 denied the original motion because responses were not yet due; it did not address the merits. Hall's adoption of ECF No. 11 (ECF No. 45, Sept. 2, 2026) and Plaintiff's two declarations (ECF Nos. 31, 59-2) came after ECF No. 12.

The change since August 12 is not the passage of time. The response posture the Order identified has changed: each appearing Defendant has responded. And the record has expanded. NCMEC's memorandum states the capacity in which Hall acted and states that NCMEC issued the letters before formal service. ECF No. 11 at 2, 5 n.2. Hall adopted those statements. ECF No.

45 at 1. Plaintiff's declarations supply testimony, on personal knowledge, about the names he used on Meta's services and the reason his legal name appears in the April 9 materials. ECF No. 31 ¶¶ 2–7; ECF No. 59-2 ¶¶ 2–10. The letters, the April 9 materials, and the earlier joint filing of NCMEC and Hall were before the Court in August and remain in the record. ECF Nos. 7-4, 7-5, 7-6.

### C. Local Civil Rule 56.

Rule 56(b) permits a motion for summary judgment "at any time until 30 days after the close of all discovery" unless "a different time is set by local rule or the court orders otherwise." Local Civil Rule 56(A) sets a different time for this District and displaces that default. "The time provisions of Fed. R. Civ. P. 56(b) shall not apply in this District." The Court's Order supplies the operative instruction here: renewal "at an appropriate time." ECF No. 12 at 1. Local Civil Rule 56(C) requires leave of Court for separate motions for summary judgment on separate grounds. This Motion renews the one ground presented in ECF No. 6. Its alternative request under Rule 56(g) concerns the same submission and is not a separate ground.

The timing argument is this. The Court reserved renewal. The parties whose relationship is at issue have since responded and have described that relationship to the Court. The record now includes those descriptions and Plaintiff's testimony. That is the record on which the submitted component can be assessed. The pending Rule 12 motions test the sufficiency of the pleading; this Motion asks the Court to determine one component on the record.

### D. The Motion rests on the operative pleading and seeks no change to any discovery or scheduling disposition.

ECF No. 5 is the operative pleading. The Motion rests on it. The declaration at ECF No. 59-2 was filed as an exhibit to a motion for leave to amend, ECF No. 59, which the Court denied. ECF No. 84. The Declaration of Marvelle J. Ballentine filed with this Motion ("Ballentine Decl.")

restates that testimony. The Motion requests no discovery. It seeks adjudication on existing evidence, and it asks the Court to modify no order concerning scheduling or discovery.

ECF No. 108 states that "the record reflects that the District Judge has chosen to refrain from beginning any discovery until resolution of the pending motions to dismiss." ECF No. 108 at 2. This Motion is consistent with ECF Nos. 84 and 108. It seeks no discovery. It rests on documents already docketed, on testimony Plaintiff has already sworn, and on statements NCMEC and Hall made in their own filings. It asks the Court to modify neither order. The Fourth Circuit has identified the risk of early summary judgment where the facts are "exclusively in the control of the opposing party." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 247 (4th Cir. 2002) (quotation marks and citation omitted); see Part VIII. The facts on the submitted component are in the control of NCMEC and Hall, and NCMEC and Hall have stated them. A party that has stated a fact in its own brief does not need discovery to learn it.

The denial of ECF No. 59 is the subject of Plaintiff's pending objections (ECF Nos. 90, 91, 102). Plaintiff also files concurrently a renewed motion for leave to file a Second Amended Complaint. The proposed pleading retains the claims against Hall and NCMEC to which the Motion's agency-and-scope request relates. Should leave be granted before determination of the Motion, Plaintiff requests consideration of the corresponding issue under the resulting operative pleading, following any supplemental briefing the Court deems necessary, rather than denial solely because the First Amended Complaint has been superseded.

## III. STATEMENT OF UNDISPUTED MATERIAL FACTS

Under Local Civil Rule 56(B), Plaintiff lists, in numbered paragraphs, the material facts as to which he contends there is no genuine issue, with citations to the parts of the record relied on. Each paragraph states a proposition Plaintiff asks the Court to establish. None asserts that the proposition has already been conclusively admitted. Citations to attachments use the page

numbering of the filed ECF document, including exhibit cover pages. ECF Nos. 7-4, 7-5, and 7-6 are re-filed with this Motion as Exhibits 3, 4, and 5 to the accompanying Declaration, and page citations to them are unchanged. Citations to declarations are to numbered paragraphs.

**A. Hall's employment and the issuance of the letters**

1. Katie Hall was an employee of NCMEC and served as NCMEC's Corporate Counsel when she signed and issued the two letters dated April 22, 2026 that appear at ECF No. 7-5 at 2–3. ECF No. 7-4 at 3, 7; ECF No. 11 at 2 (letters issued "[o]n April 22, 2026," and "signed by Defendant Hall, in her capacity as in-house counsel for NCMEC"); ECF No. 11 at 5 n.2; ECF No. 11 at 8 ("NCMEC or its employee, Defendant Hall"); ECF No. 45 at 1.

2. Hall signed each of the two letters. Each letter is on NCMEC letterhead. The signature block of each letter identifies Hall as "Corporate Counsel." ECF No. 7-5 at 2–3; ECF No. 7-1 ¶ 5 (authenticating the letters as copies reproduced from the exhibits NCMEC and Hall filed in the earlier action).

3. The first sentence of the body of each letter states: "In response to your subpoena issued April 9, 2026, the National Center for Missing & Exploited Children ("NCMEC") provides its written responses as detailed below." The reference line of one letter identifies the matter as "Marvelle Ballentine v. Meta Platforms, Inc., et al." The reference line of the other identifies the matter as "Marvelle Ballentine v. Devin S. Anderson, et al." ECF No. 7-5 at 2–3; see ECF No. 11 at 2–3 (quoting the first sentence).

**B. The April 9, 2026 materials and formal service**

4. On April 9, 2026, Plaintiff transmitted to NCMEC's Legal Department a letter giving advance notice of intended subpoenas in two separate matters, together with two signed subpoena forms and a Schedule A for each. The letter stated that each notice was accompanied by a signed copy of the draft subpoena "that will be formally served after the notice period has run."

NCMEC received the materials. ECF No. 7-1 ¶ 6; Ballentine Decl. ¶¶ 4–5; ECF No. 7-6 at 2–3 (letter), 4, 7 (subpoena forms), 5, 8 (Schedule A); ECF No. 7-4 at 3 (describing Hall's letters as written "shortly after receiving the letters"); ECF No. 11 at 2.

5. No subpoena had been formally served on NCMEC when NCMEC issued the April 22, 2026 letters. ECF No. 11 at 2 ("NCMEC responded to the subpoenas without awaiting formal service"); ECF No. 45 at 1 (adopting ECF No. 11); ECF No. 7-4 at 2 ("two subpoenas sent, but not formally served"); ECF No. 7-4 at 5 ("NCMEC responding without waiting to be formally served").

6. Schedule A to each subpoena form directed production of a document sufficient to show whether NCMEC received or maintains any CyberTipline report, referral, or submission concerning three identifiers. Schedule A listed the identifiers as "(1) Marvelle J. Ballentine," "(2) Jay Ballentine," and "(3) the account-level identifier jaychizza@icloud.com," and joined them with "and/or." ECF No. 7-6 at 5, 8; see ECF No. 11 at 2 (quoting Schedule A).

7. Each April 22, 2026 letter states that NCMEC has received two CyberTipline reports "concerning (1) Marvelle J. Ballentine, (2) Jay Ballentine, and/or (3) the account-level identifier jaychizza@icloud.com." The three identifiers and the connector "and/or" in that sentence are the identifiers and connector that appear in Schedule A. ECF No. 7-5 at 2–3; compare ECF No. 7-6 at 5, 8; see ECF No. 11 at 2–3 (quoting the letters and describing them as "mirroring the language utilized by Plaintiff in the Schedules").

### C. Plaintiff's account-name history

8. Before April 22, 2026, Plaintiff did not use the name "Marvelle J. Ballentine" to create, register, identify, maintain, access, or operate any account on any product or service owned or operated by Meta Platforms, Inc. that Plaintiff used. ECF No. 31 ¶ 3; ECF No. 59-2 ¶ 6; Ballentine Decl. ¶ 6.

9. Before April 22, 2026, Plaintiff did not use "Marvelle J. Ballentine" as a username, profile name, display name, account name, or other identity by which he identified himself on Facebook, Instagram, Threads, WhatsApp, Oculus, Meta Quest, or any other Meta product or service that he used. ECF No. 31 ¶ 4; ECF No. 59-2 ¶ 7; Ballentine Decl. ¶ 7.

10. Before April 22, 2026, Plaintiff did not provide "Marvelle J. Ballentine" to Meta Platforms, Inc. as the name identifying him for purposes of any Meta account that he created, maintained, or operated, or as the name identifying any such account. This fact concerns the identification of accounts. It does not concern litigation filings or other communications. ECF No. 31 ¶ 5; ECF No. 59-2 ¶ 8; Ballentine Decl. ¶ 8.

11. Plaintiff operated the Facebook account that was the subject of Meta Platforms, Inc.'s July 4, 2022 enforcement action under the name "Jay Ballentine." ECF No. 59-2 ¶¶ 3–5; Ballentine Decl. ¶¶ 9–11; see also ECF No. 31 ¶ 6; ECF No. 59-2 ¶ 9; Ballentine Decl. ¶ 12.

12. Plaintiff included "Marvelle J. Ballentine" in the April 9, 2026 correspondence and subpoena materials that he transmitted to NCMEC because it is his legal name and the name under which the underlying federal litigation was pending. He did not include that name because he had used it to identify or operate any Meta account. ECF No. 31 ¶¶ 2, 7; ECF No. 59-2 ¶¶ 2, 10; Ballentine Decl. ¶¶ 13–14.

**D. What the letters do not identify**

13. Neither letter identifies the electronic service provider or other source that submitted either report. ECF No. 7-5 at 2–3.

14. Neither letter supplies a report number for either report. *Id.*

15. Neither letter supplies a report-specific date for either report. Each letter refers only to a period "between July 1, 2022 and the present." *Id.*

16. Neither letter states which of the three listed identifiers matched either report. *Id.*

17. Neither letter identifies any particular Facebook account as the subject of either report. *Id.*

## IV. THE GOVERNING STANDARD REQUIRES PLAINTIFF TO ESTABLISH THE SUBMITTED COMPONENT ON THE RECORD

### A. Rule 56(a) and the burden of a plaintiff-movant.

A party may move for summary judgment on "each claim or defense — or the part of each claim or defense — on which summary judgment is sought." Fed. R. Civ. P. 56(a). The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Id.* A fact is material if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The question is whether the evidence presents a sufficient disagreement to require submission to a jury or is so one-sided that one party must prevail as a matter of law. *Id.* at 251–52. Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences are jury functions, and the nonmovant's evidence is believed with justifiable inferences drawn in its favor. *Id.* at 255.

Plaintiff bears the burden on the component he submits. He must show that the record permits only one conclusion on it: that Hall was NCMEC's employee performing NCMEC's business when she signed and issued the letters. The Court assesses the record with the inferences the rule requires in Defendants' favor. *Anderson* states the general standard. It did not decide an agency question, and Plaintiff does not cite it for one.

### B. The evidentiary foundations.

Rule 56(c)(1)(A) permits a fact to be supported by citing particular parts of the record, including documents, declarations, and admissions. Rule 56(c)(4) requires a declaration to be made

on personal knowledge, to set out facts that would be admissible in evidence, and to show the declarant's competence. Plaintiff's facts rest on four foundations, and each does a different job.

First, authentication. Plaintiff's declarations identify the earlier joint filing of NCMEC and Hall, the letters, and the April 9 materials as true and correct copies obtained from identified sources. ECF No. 7-1 ¶¶ 4–6; Ballentine Decl. ¶¶ 2–4. The copies of the letters in the record are reproduced from the exhibits NCMEC and Hall themselves filed in the earlier action. ECF No. 7-1 ¶ 5; Ballentine Decl. ¶ 3. Authentication establishes what a document is. It does not establish the truth of every assertion in the document.

Second, document contents. The letters and the April 9 materials are in the record. ECF Nos. 7-5, 7-6. Their wording is a fact about them.

Third, opposing-party representations. The statements of NCMEC and Hall in ECF Nos. 11 and 45, and in the joint filing reproduced at ECF No. 7-4, are statements of the parties whose relationship is at issue.

Fourth, personal-knowledge testimony. Plaintiff's declarations state what Plaintiff did. ECF No. 31 ¶¶ 1, 8; ECF No. 59-2 ¶ 1.

### C. Virginia law supplies the substantive test and the effect of its presumption.

Counts I, II, III, and VI arise under Virginia law. Virginia law supplies the test for scope of employment. Where state law supplies the rule of decision, state law governs the effect of a presumption regarding the claim. Fed. R. Evid. 302. The Virginia presumption discussed in Part V therefore carries the effect Virginia gives it. It does not displace the summary-judgment standard, which remains federal.

## V. THE DOCUMENTS AND THE REPRESENTATIONS OF NCMEC AND HALL SUPPORT THE AGENCY-AND-SCOPE DETERMINATION

### A. Virginia law asks whether the employee was performing the employer's business within the scope of the employment.

"[A]n employer is liable for the tortious act of his employee if the employee was performing his employer's business and acting within the scope of his employment." *Parker v. Carilion Clinic*, 296 Va. 319, 335, 819 S.E.2d 809 (2018) (citation omitted). The inquiry asks whether "the service itself, in which the tortious act was done, was within the ordinary course of [the employer's] business." *Id.* at 336 (citation omitted). The act must have been "within the scope of the duties of the employment and in the execution of the service for which the employee was engaged." *Id.* at 338–39 (quotation marks and citation omitted). The employee must have committed the act "while actively engaged in a job-related service." *Id.* at 339. Presence at work, use of the employer's property, and the employer's time are not enough. *Id.*

*Parker* reviewed a demurrer. The court held that the allegations permitted the vicarious-liability claim to proceed. It did not award the plaintiff judgment on the scope of employment. Plaintiff cites *Parker* for the test it states and for the presumption it describes, not for its result.

### B. The service Hall performed was NCMEC's response to materials directed to NCMEC's Legal Department.

The question is what service Hall was performing when she signed and issued the letters. The record describes it. Plaintiff directed his April 9 materials to NCMEC's Legal Department. Fact 4; ECF No. 7-6 at 2. NCMEC received them. Fact 4; ECF No. 7-4 at 3. NCMEC then "responded." ECF No. 11 at 2. It responded "via two substantively-identical letters signed by Defendant Hall, in her capacity as in-house counsel for NCMEC." *Id.* The letters speak for NCMEC: "the National Center for Missing & Exploited Children ("NCMEC") provides its written responses as detailed below." Fact 3. They issued on NCMEC's letterhead, over the title

"Corporate Counsel." Fact 2. NCMEC calls them NCMEC's responses. ECF No. 11 at 3 ("NCMEC responded precisely as requested"); ECF No. 7-4 at 3 ("NCMEC responded exactly as instructed in the subpoenas"). Hall adopts that description. ECF No. 45 at 1. And in the earlier action, NCMEC and Hall described the same conduct as within Hall's employment. ECF No. 7-4 at 7.

Each of those items describes the same service: the issuance of NCMEC's legal correspondence, by NCMEC's in-house counsel, concerning materials directed to NCMEC's Legal Department. That service was NCMEC's business. The act at issue did not occur while Hall happened to be at work. The act at issue was the work.

NCMEC's immunity argument states that "Plaintiff sent subpoenas to NCMEC seeking information it received and maintains pursuant to its statutory charge, and NCMEC responded precisely as requested," and that "the complained-of activity clearly relates to NCMEC's clearinghouse role." ECF No. 11 at 8. NCMEC cannot argue that the letters were performance of its statutory functions and also that Hall acted outside NCMEC's business.

**C. The employment presumption places the burden of production on NCMEC; it does not relieve Plaintiff of his burden.**

Once the employment relationship is established, Virginia law presumes that the employee acted within the scope of employment. The presumption "shifts the burden of production to the employer to present facts sufficient to permit the factfinder to conclude that the employee was not acting within the scope of his employment at the time of his tortious conduct." *Parker*, 296 Va. at 333 n.6. The burden of persuasion remains with the plaintiff. *Id.* at 342. The presumption is rebuttable; it gives way to positive facts to the contrary. *Id.* It operates at the stages at which the sufficiency of the claim is tested, including summary judgment. *Id.* at 333 & n.6.

Plaintiff does not rest on the presumption. He rests on the letters and on the statements of NCMEC and Hall about the service Hall performed. The presumption does one thing here. It identifies NCMEC as the party that must come forward with facts of a departure from the employment if NCMEC contends that one occurred. Whether the record then presents a genuine dispute is decided under Rule 56 on the whole record.

**D. NCMEC and Hall have described the conduct as within the scope of Hall's employment, and those statements are admissible against them.**

Statements of a party's attorney concerning matters within the representation may be admitted against the client. "Generally, statements by an attorney concerning a matter within his employment may be admissible against the retaining client." *United States v. Blood*, 806 F.2d 1218, 1221 (4th Cir. 1986). *Blood* found no admission on its facts, and it did not resolve the distinctions it noted between judicial and evidentiary admissions. Plaintiff relies on it for the general proposition only. Federal Rule of Evidence 801(d)(2) treats as not hearsay a statement offered against an opposing party that was made by a person the party authorized to make a statement on the subject, or by the party's agent on a matter within the scope of that relationship and while it existed. Fed. R. Evid. 801(d)(2)(C), (D). Counsel's statements in a signed filing on behalf of a client, concerning the client's own employee and the client's own correspondence, fall within those provisions. Rule 56(c)(1)(A) lists "admissions" among the materials that may support a fact.

The earlier joint filing. Plaintiff's declaration authenticates the filing as the opposition NCMEC and Hall filed at ECF No. 20 in the earlier action. ECF No. 7-1 ¶ 4. The filing concerned the same two letters and the same April 9 materials. ECF No. 7-4 at 2–3. It stated that Hall "is and was an employee of the National Center for Missing and Exploited Children, who was clearly acting in the course and scope of her employment in responding to the subpoenas." *Id.* at 7. It

stated that Hall "was working within the course and scope of her employment, and is entitled to the same defenses as the National Center for Missing and Exploited Children." *Id.* Counsel signed it for both Defendants. *Id.* at 9. Those statements were the stated ground for an argument the filing made to the Court. *Id.* at 7. Plaintiff offers them against NCMEC and Hall, the parties who made them, as evidentiary admissions. He does not contend that they are judicial admissions binding in this action.

The current filings. NCMEC's memorandum states that the letters were "signed by Defendant Hall, in her capacity as in-house counsel for NCMEC," and that Hall "at all times relevant was an employee of NCMEC." ECF No. 11 at 2, 5 n.2. Those sentences are NCMEC's own descriptions of its employee and its correspondence. They are not recitations of Plaintiff's allegations; the memorandum marks its recitations of the First Amended Complaint separately. Compare id. at 2 ("Plaintiff alleges that on April 9, 2026 . . ."), with id. ("On April 22, 2026, NCMEC responded . . ."). Hall adopted the memorandum and described herself "as an employee of NCMEC." ECF No. 45 at 1. The same counsel signed ECF No. 45 for both Defendants. *Id.* at 2. Plaintiff does not contend that every factual sentence in a dismissal brief is a binding judicial admission. He contends that these particular sentences are statements of NCMEC and Hall about their own relationship and their own conduct, and that Rule 56(c)(1)(A) and Rule 801(d)(2) permit the Court to consider them.

Hall's footnote. Hall's description of herself carries a footnote citing Plaintiff's allegation that she "served as Corporate Counsel of NCMEC." ECF No. 45 at 1 n.1. Hall asserted employee status as the ground for her own relief: "because Ms. Hall, as an employee of NCMEC, enjoys qualified statutory immunity under federal law." *Id.* at 1 (footnote omitted). A party that asks a court to dismiss a claim because she is an employee has taken the position that she is one. The

footnote identifies a source. It does not withdraw the position. Hall also "adopts and joins in" ECF No. 11. *Id.* That memorandum states independently of any allegation that the letters were "signed by Defendant Hall, in her capacity as in-house counsel for NCMEC," ECF No. 11 at 2, and that "she at all times relevant was an employee of NCMEC," *id.* at 5 n.2. It refers to "NCMEC or its employee, Defendant Hall." *Id.* at 8.

Motive. The First Amended Complaint alleges that Hall acted with knowledge and with actual malice. Alleged intentional wrongdoing does not itself place an employee outside the scope of employment. *Parker* nevertheless treats the employee's motive as relevant to the scope inquiry. 296 Va. at 340–41. Plaintiff therefore relies on the evidence that describes the service Hall performed: NCMEC's own responses, signed by its Corporate Counsel, concerning materials directed to its Legal Department. The First Amended Complaint alleges that NCMEC approved the letters and authorized the use of its name and letterhead. ECF No. 5 ¶¶ 168, 196. Those allegations identify Plaintiff's theory. They are not summary-judgment evidence, and Plaintiff does not offer them as such.

**E. The determination reaches employment and scope, and nothing else.**

The determination establishes that Hall was NCMEC's employee performing NCMEC's business when she signed and issued the letters. It establishes nothing else. It does not establish that any tort occurred. It does not establish that the letters were made in a judicial proceeding for purposes of the litigation privilege NCMEC asserts, ECF No. 11 at 5, or that they were not. It does not establish that the letters arose from CyberTipline responsibilities or functions under 18 U.S.C. § 2258D, or that they did not. Scope of employment under Virginia common law and statutory function under § 2258D are different questions. The determination does not establish NCMEC's direct liability for its own conduct, ECF No. 5 ¶ 21, any requirement for punitive recovery, or any

defense. It does not reach any other person's conduct. Each of those matters remains for later adjudication.

## VI. THE ACCOUNT-NAME AND DOCUMENT-HISTORY FACTS ARE MATERIAL AND WARRANT SEPARATE CONSIDERATION UNDER RULE 56(g)

### A. Plaintiff's account-name history bears on the identification dispute framed by the pleading and by NCMEC.

The First Amended Complaint alleges that the letters identify Plaintiff by two names and an email address, ECF No. 5 ¶ 70; that the name "Jay Ballentine," standing alone, is not uniquely identifying, id. ¶ 95; that the letters do not state whether any identifier appeared in any report, id. ¶ 96; and that a reader would understand the letters to associate Plaintiff personally with the reports, id. ¶¶ 100–01. Counts I, II, and VI rest on that association. *Id.* ¶¶ 187–91, 208–12, 255. NCMEC's memorandum addresses the same identifiers. It argues that Plaintiff cannot plead falsity because "he does not have access to those reports," and it describes the possibility that "they, or a person with the same name, or their e-mail address" is linked with a report. ECF No. 11 at 9. That passage identifies three possible referents. It does not establish that the reports concern different people, and it does not establish what NCMEC knows about the referents. It shows that the connection between each identifier and Plaintiff personally is in dispute.

Facts 8 through 12 bear on that dispute. They separate the name Plaintiff used to litigate from the names Plaintiff used on Meta's services. Plaintiff did not use his legal name to operate any Meta account he used. Facts 8–10. He operated the Facebook account involved in the July 4, 2022 enforcement action under the name "Jay Ballentine." Fact 11. His legal name appears in the April 9 materials because his federal actions were pending under that name. Fact 12. A fact is material if it might affect the outcome under the governing law. *Anderson*, 477 U.S. at 248. Which

identifiers can be connected to Plaintiff's own account use bears on the of-and-concerning and falsity elements of Counts I, II, and VI.

The declarations satisfy Rule 56(c)(4). Each is made on personal knowledge. ECF No. 31 ¶¶ 1, 8; ECF No. 59-2 ¶ 1; Ballentine Decl. ¶¶ 1, 15. Each states facts about Plaintiff's own conduct: the names he used, the account he operated, the materials he prepared. Plaintiff is competent to testify to his own conduct.

The facts have limits. Plaintiff's nonuse of his legal name on Meta's services does not prove that Meta never learned that name. It does not prove that the name is absent from any provider's record or from any report. It does not establish the contents of any report or the ultimate falsity of any statement. The Motion asks the Court to establish what Plaintiff did. It does not ask the Court to establish the contents of records Plaintiff has not seen.

**B. The document-history facts establish what was sent and what the letters say.**

Facts 4 through 7 and 13 through 17 describe documents. The April 9 materials and the letters are in the record. Plaintiff's declarations authenticate them. ECF No. 7-1 ¶¶ 5–6; Ballentine Decl. ¶¶ 3–4. NCMEC quoted both in its memorandum. ECF No. 11 at 2–3. Fact 5 rests on the statements of NCMEC and Hall.

These facts are material. NCMEC's litigation-privilege argument describes the letters as a response to a subpoena. ECF No. 11 at 1, 5–7. Facts 4 and 5 establish what Plaintiff transmitted and that no subpoena had been formally served when NCMEC responded. NCMEC's truth and implication arguments rest on what the letters say and on what Schedule A asked. *Id.* at 8–11, 13–14. Facts 6, 7, and 13 through 17 establish the identifiers Schedule A listed, the identifiers the letters used, and what the letters do not identify. Plaintiff's defamation and insulting-words claims rest on the same words and omissions. ECF No. 5 ¶¶ 77, 91–97, 188–91, 255.

The findings establish what the documents say and when they were sent. They do not establish that the letters were prohibited, that no subpoena document existed, that no privilege applies, or that Plaintiff's materials required the details the letters omit. Those consequences remain for the parties to argue and for the Court to decide.

### C. Establishment would reduce later proof.

If these facts are established, the parties will not need to prove again what the April 9 materials contained, that formal service had not occurred when the letters issued, what the letters state and omit, or which names Plaintiff used on Meta's services. The findings narrow the identification and falsity disputes. They do not eliminate them.

## VII. THE COURT MAY TREAT PROPERLY SUPPORTED FACTS AS UNDISPUTED WITHIN THE LIMITS OF RULE 56(e)

### A. The sequence under Rule 56(c) and Rule 56(e).

Rule 56(c)(1) requires a party asserting that a fact cannot be or is genuinely disputed to support the assertion by citing particular parts of the record, or by showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact. Fed. R. Civ. P. 56(c)(1)(A)–(B). Rule 56(c)(2) permits an objection that cited material cannot be presented in a form that would be admissible in evidence. Local Civil Rule 56(B) requires an opposing brief to include a specifically captioned section listing the material facts the opponent contends are genuinely in issue, with citations to the parts of the record relied on. The local rule then provides: "In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its listing of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."

The sequence is this. First, Plaintiff must support each asserted fact. Part III does so. Second, an opposing party may challenge the evidence: its sufficiency to establish the proposition, its admissibility, or its materiality. A legal argument that the cited materials do not establish the proposition is a proper response under Rule 56(c)(1)(B). An objection under Rule 56(c)(2) is a proper response. A showing of immateriality is a proper response. Third, a bare contradiction without record support is not sufficient. Fourth, where a fact is properly supported and not properly addressed, the Court may give an opportunity to address it, consider it undisputed for purposes of the Motion, or issue another appropriate order. Fed. R. Civ. P. 56(e)(1), (2), (4). Fifth, any establishment of a fact in the action, beyond this Motion, requires separate consideration under Rule 56(g).

**B. Motion-specific treatment and case-wide treatment are different.**

Rule 56(e)(2) permits the Court to consider a fact undisputed "for purposes of the motion." Local Civil Rule 56(B) permits the same assumption in determining the Motion. Neither establishes a fact for trial. Rule 56(g) reaches further. When the Court does not grant all the relief requested by the motion, it "may enter an order stating any material fact . . . that is not genuinely in dispute and treating the fact as established in the case." Fed. R. Civ. P. 56(g). Plaintiff requests the two forms of treatment in that order and keeps them distinct.

A Defendant may accept a fact for purposes of this Motion only. Rule 56(c)(1)(A) recognizes stipulations "made for purposes of the motion only." Plaintiff's express request under Rule 56(g) gives notice that each numbered fact is offered for establishment in the action. That notice does not convert a limited acceptance into an unlimited one. A Defendant that accepts a fact for the Motion only may say so in its statement of genuine issues, and the Court may take that limitation into account in deciding whether to establish the fact under Rule 56(g). Plaintiff does

not contend that any Defendant's earlier briefing operates as a response to this Motion. The oppositions to this Motion are where each fact is to be addressed.

## VIII. ANY CLAIMED NEED FOR DISCOVERY SHOULD BE EVALUATED AGAINST THE PARTICULAR DETERMINATION IT AFFECTS

As a general rule, summary judgment is appropriate only after adequate time for discovery. *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002). Rule 56(d) supplies the mechanism. A nonmovant that cannot present facts essential to its opposition may show that by affidavit or declaration, "for specified reasons," and the Court may defer considering the motion, deny it, allow time for discovery, or issue any other appropriate order. Fed. R. Civ. P. 56(d). The Fourth Circuit gives such a showing great weight. *Harrods*, 302 F.3d at 244. The court has also recognized that a nonmovant's objections may serve as the functional equivalent of an affidavit where they adequately inform the district court of the discovery needed and the nonmovant has not been lax in pursuing it. *Id.* at 244–45; see *Pledger v. Lynch*, 5 F.4th 511, 526 (4th Cir. 2021) (applying that principle to the objections of a pro se prisoner). *Harrods* applied the predecessor of current Rule 56(d). Plaintiff does not ask the Court to hold any Defendant to a form. He asks that any claimed need be stated for the fact it affects.

*Harrods* identified circumstances in which early summary judgment carries particular risk: where the relevant facts are exclusively in the control of the opposing party, and where the case involves complex factual questions about intent and motive. 302 F.3d at 246–47. The agency-and-scope component should be evaluated against those circumstances. The facts concern Hall's employment, the capacity in which she acted, and the service she performed when she signed NCMEC's correspondence. NCMEC and Hall have described those matters themselves, in this action and in the earlier one. The Motion asks the Court to consider those descriptions and the letters. If NCMEC or Hall contends that discovery is needed before the Court can assess the

relationship they have already described, that contention should identify what discovery is needed and why.

The document facts rest on the authenticated documents. ECF Nos. 7-5, 7-6; ECF No. 7-1 ¶¶ 5–6. Their wording is before the Court now.

The account-name facts rest on Plaintiff's testimony about his own conduct. A Defendant may contend that it needs discovery to test that testimony. If so, Rule 56(d) is the vehicle, and the showing should identify the fact affected and the discovery needed. A showing concerning one fact does not reach the others.

Plaintiff requests separate treatment where the facts are separable. The Court may defer ruling to an identified event, whether under Rule 56(d)(1) on any Defendant's showing or under the Court's authority to manage its docket, rather than deny the Motion without prejudice. Rule 56(g) permits the Court to establish any material fact not genuinely in dispute. Plaintiff does not ask the Court to establish under Rule 56(g) a fact as to which a Defendant has made a sufficient Rule 56(d) showing. He asks that the showing be matched to the fact it affects, and that the facts it does not affect be decided.

## IX. REQUESTED DISPOSITION

Plaintiff requests the following disposition. First, a determination under Rule 56(a) of the agency-and-scope component of NCMEC's potential vicarious liability under Counts I, II, III, and VI, in the form of Proposed Order A. Second, if that relief is not granted in full, consideration under Rule 56(g) of the same determination and of Facts 1 through 17, each separately, in the form of Proposed Order B. Third, within the Court's discretion under Rule 56(e)(2) and Local Civil Rule 56(B), treatment of any fact properly supported by Plaintiff and not properly addressed under Rule 56(c) as undisputed for purposes of the Motion. Fourth, separate consideration of separable facts where a Defendant shows a need for discovery concerning one of them. Fifth, if the Court

elects to postpone its ruling, deferral to an identified event, whether under Rule 56(d)(1) on any Defendant's showing or under the Court's authority to manage its docket, rather than denial without prejudice. Sixth, a statement on the record of the reasons for the Court's ruling, consistent with Rule 56(a).

## X. CONCLUSION

NCMEC and Hall have described the April 22, 2026 letters as Hall's work for NCMEC. The letters say the same on their face. Plaintiff requests partial summary judgment in the form of Proposed Order A, determining that Hall acted as NCMEC's employee and agent, within the course and scope of her employment, when she signed and issued the letters on NCMEC's behalf, and that the agency-and-scope component of NCMEC's potential vicarious liability under Counts I, II, III, and VI is established. In the alternative, Plaintiff requests an order under Rule 56(g) in the form of Proposed Order B, with each fact considered separately.

Date: November 1, 2026

Respectfully submitted,

Marvelle J. Ballentine
*Plaintiff, pro se*
1520 Belle View Blvd, Ste. #5847
Alexandria, Virginia 22307
(407) 794-6503
jayballentine@protonmail.com

**CERTIFICATION PURSUANT TO LOCAL CIVIL RULE 83.1(N)**

Pursuant to Local Civil Rule 83.1(N), I declare under penalty of perjury that no attorney has prepared, or assisted in the preparation of, the Memorandum in Support of Plaintiff's Renewed Rule 56 Motion for Partial Summary Judgment, including this Certification and the Generative Artificial Intelligence Disclosure and Citation Certification accompanying it.

Name of Pro Se Litigant: Marvelle J. Ballentine

Signature of Pro Se Litigant
Executed on: November 1, 2026

## <u>GENERATIVE ARTIFICIAL INTELLIGENCE DISCLOSURE AND CITATION CERTIFICATION</u>

Plaintiff prepared this filing in part using generative AI-assisted agentic motion drafting through a proprietary methodology under development by Plaintiff. Plaintiff certifies that he has reviewed all citations to legal authorities and the record for accuracy.

Date: November 1, 2026

Marvelle J. Ballentine
Plaintiff, *pro se*